**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL BECKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, and ROBINHOOD MARKETS, INC.,<br><br>Defendants. | Case No. 5:20-cv-01626<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1)  Breach of Contract**<br><br>**(2)  Breach of the Implied Covenant of Good Faith and Fair Dealing**<br><br>**(3)  Breach of Fiduciary Duty**<br><br>**(4)  Negligence**<br><br>**(5)  Gross Negligence**<br><br>**(6)  California's Consumer Legal Remedies Act, Civ. Code §§ 1750, et seq.;**<br><br>**(7)  California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq.;**<br><br>**(8)  Unjust Enrichment; and**<br><br>**(9)  Declaratory Relief**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiff Daniel Beckman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendants Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), and Robinhood Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood"), demanding a trial by jury. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.  Accordingly, Plaintiff alleges as follows:

2.      Robinhood is an online brokerage firm founded in 2013 that touts itself as "a pioneer in commission-free investing."  Robinhood's customers place securities trades through the firm's website, by using a web-based application (or "app")[1], or by calling the firm's help center. Unfortunately for Robinhood's customers, including Plaintiff, Robinhood's trading systems completely crashed on Monday, March 2, 2020, and experienced a total outage of its operating systems (the "Outage").  Throughout the *entire* trading day, Robinhood's customers were prevented from making any securities trades through the firm's website, app, or call center.

3.      As a result of the Outage, Plaintiff brings this class action on behalf of Robinhood customers who were denied access to their Robinhood trading accounts during the Outage and for the many, including himself, who suffered losses in their trading Robinhood accounts specifically as a result of their inability to place any securities trades during the Outage.  Plaintiff asserts putative class action claims generally including breach of contract, negligence, breach of fiduciary duty, and violations of California consumer protection laws, on behalf of himself and all other Robinhood customers who are similarly situated.  He seeks damages, restitution, and injunctive relief.

**PARTIES**

4.      Plaintiff Beckman is a citizen of Florida and is over the age of 18.

5.      Defendant Robinhood Financial is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025.  It is a wholly-owned subsidiary of

---

[1]  In exchange for using the app, Robinhood collects personal data about its users (including financial information), and sells this data to third parties.

1 │ Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S.

2 │ Securities & Exchange Commission ("SEC").   Defendant Robinhood Financial acts as an

3 │ introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood

4 │ Securities.

5 │       6.       Defendant Robinhood Securities is a Delaware corporation with its principal place

6 │ of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746.  It is a wholly-

7 │ owned subsidiary of Defendant Robinhood Markets.  Defendant Robinhood Securities is registered

8 │ as a broker-dealer with the SEC.  Defendant Robinhood Financial acts as a clearing broker and

9 │ clears trades introduced by its affiliate Defendant Robinhood Financial.

10 │       7.       Defendant Robinhood Markets is a Delaware corporation with its principal place of

11 │ business at 85 Willow Road, Menlo Park, California 94025.  Defendant Robinhood Markets is the

12 │ corporate parent of Defendants Robinhood Financial and Robinhood Securities.

13 │ **JURISDICTION AND VENUE**

14 │       8.       This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

15 │ § 1332(d)(2).  The aggregate claims of all members of the proposed class and subclasses are in

16 │ excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class

17 │ members.  Plaintiff, as well as many members of the proposed class, are citizens of a state different

18 │ from Defendant.

19 │       9.       Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

20 │ a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

21 │ District where Robinhood is headquartered and where it developed, distributed, marketed,

22 │ advertised, and sold the financial services which are the subject of the present complaint.  Finally,

23 │ venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood is

24 │ headquartered in Menlo Park and a substantial part of the acts and omissions that gave rise to this

25 │ Complaint occurred or emanated from this District.  Additionally, Robinhood's Terms of Service

26 │ select courts in Santa Clara County as a venue for legal disputes.

27 │       10.     This Court has personal jurisdiction over Robinhood because it is headquartered in

28 │ and authorized to do business and does conduct business in California, and because it has

1  specifically marketed, advertised, and made substantial sales in California, and has sufficient

2  minimum contacts with this state and/or sufficiently avails itself of the markets of this state through

3  its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this

4  Court permissible.

5  ## INTRADISTRICT ASSIGNMENT

6  11.    Pursuant to Civil Local Rule 3-2(c), an intradistrict assignment to the San Jose

7  Division is appropriate because a substantial part of the events or omissions which give rise to the

8  claims asserted herein occurred in this Division, including that Defendants reside in this division

9  and Robinhood's Terms of Service require claims be brought in Santa Clara County.

10  ## FACTUAL ALLEGATIONS

11  12.    Robinhood has experienced significant growth as a startup.   In 2019,

12  Robinhood raised $323 million in funding at a $7.6 billion valuation.   The firm markets itself

13  primarily to younger investors and claims over 10 million users of its trading app.

14  13.    Robinhood's systems woes continued into the following day.  On Tuesday, March 3,

15  2020, a Robinhood spokesperson admitted that the cause of the Outage was "instability in a part of

16  our infrastructure that allows our systems to communicate with each other."[2]   At some point later

17  that day, Robinhood's systems were restored.

18  14.    Later, in a blog post on Robinhood's website dated March 3, 2020, Robinhood's

19  founders stated:

20  
21  > Our team has spent the last two days evaluating and addressing this
> issue. We worked as quickly as possible to restore service, but it took
> us a while. Too long. We now understand the cause of the outage was
22  > stress on our infrastructure—which struggled with unprecedented
> load. That in turn led to a "thundering herd" effect—triggering a
> failure of our DNS system.
23  
24  > Multiple factors contributed to the unprecedented load that
> ultimately led to the outages. The factors included, among others,
25  > highly volatile and historic market conditions; record volume; and
> record account sign-ups.

26  _____

27  [2] "Robinhood Trading App is Back Up After a Second Crash," *Barron's* (Mar. 3, 2020 (available at: https://www.barrons.com/articles/robinhood-trading-app-returns-only-to-crash-again-on-tuesday-51583249601) (last accessed Mar. 5, 2020).

28

> Our team is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing. We're simultaneously working to reduce the interdependencies in our overall infrastructure. We're also investing in additional redundancies in our infrastructure.

*See*: https://blog.robinhood.com/ (last accessed Mar. 5, 2020).

15.     Under federal and state securities laws, securities industry rules, and industry best practices, brokerage firms that offer online trading services to their customers are required to, among other things, ensure that customers receive best execution of trades and that the firm has adequate operational capability to handle customer trading volume.

16.     More specifically, the Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning."  Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully."  By failing to respond at all to customers' placing timely trades, and in fact preventing them from doing so altogether, Robinhood has breached these obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure.

17.     Moreover, Robinhood has a history of flouting these obligations.  Just a few months before the outage, on December 19, 2019, FINRA announced it fined Defendant Robinhood Financial $1.25 million for best execution violations related to its customers' equity orders and related supervisory failures that spanned from October 2016 to November 2017.[3]  As part of the settlement, Robinhood also agreed to retain an independent consultant to conduct a comprehensive review of the firm's systems and procedures related to best execution.  *Id.*

### PLAINTIFF'S EXPERIENCE

18.     Plaintiff is a customer of Robinhood and entered into a Customer Agreement, as discussed further below, in order to use Robinhood's online trading systems. In addition, Plaintiff subscribes to Robinhood's Gold service that provides him with premium features including research reports and market information.

---

[3]  See  https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last accessed March, 4, 2020).

19.     On Friday, February 28, 2020, Plaintiff purchased certain SPY options in his Robinhood trading account.  SPY is an exchange traded fund ("ETF") that tracks the performance of the S&P 500.  SPY options are American-style options that may be exercised at any time after the trader buys them before they expire.

20.     More specifically, Plaintiff established a position known as a "SPY put debit spread," which is a "bearish" option position that is established by an investor who is anticipating a decline in the S&P 500.  To establish this position, an investor purchases a specific number of SPY puts at a higher strike price and sells the same number of SPY puts with the same expiration at a lower strike price.

21.     The specific SPY options that Plaintiff utilized as part of his debit spread had expiration dates of Monday, March 3, 2020.

22.     Throughout the entire day of Monday, March 3, 2020, Plaintiff repeatedly attempted to access his Robinhood account through the Robinhood app, via the website, and by calling the help center.  However, because of the Outage, Plaintiff was denied any access to his account and thus was unable to close out the option position in his account, while the S&P 500 rose in value throughout the day.  Moreover, because the options that Plaintiff used in his spread expired on that day, the contracts expired at zero value.

23.     As a result of the Outage, Plaintiff was unable to mitigate losses in his Robinhood account and suffered losses of approximately $15,000.

## **CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

All Robinhood customers within the United States.[4]

25.     Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

---

[4] The "Class Period" for each claim is provisionally intended to be the respective statute of limitations for each claim, with Plaintiff reserving the right to invoke the equitable tolling doctrine based on the discovery rule or other bases as discovery and the case progresses.

Case No. 5:20-cv-01626
CLASS ACTION COMPLAINT

All Robinhood customers within the United States who were not able to execute trades on options that expired during the Outage.

26.     Excluded from the Class[5] are the Robinhood entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

27.     This action has been brought and may properly be maintained as a class action against Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

28.     **Numerosity**: The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable.  Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million. Subclass members are likely in the thousands.  All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

29.     **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class.  These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to the following:

a.     Whether Robinhood's technology was inadequate to provide the financial services that were needed to handle reasonable consumer demand;

b.     Whether Robinhood failed to provide contingencies to customers to execute timely trades in the event of an Outage;

c.     Whether Robinhood violated FINRA Rule 5310;

d.     Whether Robinhood violated state consumer protection laws in failing to disclose that its technology-based financial services were inadequate and unable to perform for substantial periods of time;

e.     Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services in a timely manner;

---

[5] The term "Class" as used throughout includes both the Class and Subclass unless otherwise specified.

f.     Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services in a timely manner;

g.     Whether Robinhood was negligent or grossly negligent by failing to provide financial services in a timely manner due to its substandard and inadequate technology platform and lack of timely response to customers requesting to place trades;

h.     Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services in a timely manner;

i.     Whether Robinhood was unjustly enriched by its conduct;

j.     Whether Plaintiff and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

k.     Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

30.     **Typicality**: The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to access his accounts and place time-sensitive trades and sustained damages as a result of Robinhood's wrongful conduct.

31.     **Adequate Representation**: Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members.  Plaintiff has retained competent counsel experienced in prosecuting complex class actions, including those involving financial services, and they will vigorously litigate this class action.

32.     **Predominance and Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy.  Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.  Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class

members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

33. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

34. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

35. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

36. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

37.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a classwide basis.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**Breach of Contract**
**(Alleged solely against Defendants Robinhood Financial and Robinhood Securities)**

38.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

39.     In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood, which is attached as **Exhibit A**.[6]

40.     Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

41.     As such, Robinhood breached its Customer Agreement with Plaintiff and Class members.

42.     Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement.  These losses reflect

---

[6] Robinhood's Customer Agreement selects California law to apply and its Terms of Service requires claims be filed in courts within Santa Clara County. Ex. A at 37.

damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

### <u>COUNT II</u>

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Alleged solely against Robinhood Financial and Robinhood Securities)**

43.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

44.     Plaintiff and Class members entered into the contract identified as the Customer Agreement with Robinhood.  Ex. A.

45.     Plaintiff and Class members fulfilled their obligations under the Customer Agreement by adhering to its terms and using Robinhood's services for the provision of financial services.

46.     Robinhood was obligated under the Customer Agreement to timely provide the financial services required under the Customer Agreement at all times, including but not limited to when Plaintiff and Class members attempted to use the service during the Outage.

47.     Robinhood unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the Customer Agreement by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

48.     Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to fail to perform

1    under the Customer Agreement.  These losses reflect damages to Plaintiff and Class members in an

2    amount to be determined at trial or separate proceedings as necessary.

3                                         **COUNT III**

4                                   **Breach of Fiduciary Duty**

5           49.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

6           50.    As a licensed provider of financial services, Robinhood at all times relevant herein

7    was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity

8    in performing its financial services on their behalf.  Robinhood also acted as a fiduciary to each and

9    every customer who agreed to the Customer Agreement.

10          51.    Robinhood breached its fiduciary duties to Plaintiff and Class members by, among

11   other things, failing to disclose that its platform was inadequately built and maintained to handle

12   consumer demand; that Robinhood failed to provide adequate technological systems necessary to

13   perform under the contract; that Robinhood failed to provide services when an Outage occurred

14   due to a lack of infrastructure and alternate means for customers to place timely trades; that

15   Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's

16   platform was subject to and did experience substantial Outage(s) that prohibited the Parties from

17   performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with

18   all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise

19   trades and actions requested by customers in a complete and timely manner (also required by

20   FINRA Rule 5310).

21          52.    Robinhood's conduct has caused Plaintiff and Class members' harm, losses, and

22   damages and continues to expose them to harm because Robinhood continues to breach its fiduciary

23   duties.  These losses reflect damages to Plaintiff and Class members in an amount to be determined

24   at trial or separate proceedings as necessary.

25                                         **COUNT IV**

26                                        **Negligence**

27          53.    Plaintiff hereby incorporates by reference the factual allegations contained herein.

28

54. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

55. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

56. Robinhood's negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT V

### Gross Negligence

57. Plaintiff hereby incorporates by reference the factual allegations contained herein.

58. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

59. Robinhood unlawfully breached its duties by, among other things, failing to disclose that its platform was inadequately built and maintained to handle consumer demand; that Robinhood failed to provide adequate technological systems necessary to perform under the contract; that Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely

manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

60.     Robinhood's conduct as set forth in this Complaint was want of even scant care and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct.  Indeed, Robinhood essentially abandoned its customers altogether during the Outage, a standard of care so far below what is required for business engaging in time sensitive financial services that it amounts to a complete abandonment of its duties.  Essentially no other conduct than that committed by Robinhood could be more grossly negligent than abandoning its customers altogether for substantial periods of times during which they incurred substantial losses and were unable to contact anyone at Robinhood.

61.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care.  These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT VI

**Violations of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.**

62.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

63.     The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

64.     The CLRA applies to Robinhood's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

65.     At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

66.     Robinhood practices in connection with the marketing and sale of its financial services violate the CLRA in at least (but not limited to) the following respects:

      a.     In violation of section 1770(a)(5), Robinhood knowingly misrepresented services;

      b.     In violation of section 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but were not; and

      c.     In violation of section 1770(a)(9), Robinhood's knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

67.     As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because it failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract; because Robinhood failed to provide services when an Outage occurred due to a lack of infrastructure and alternate means for customers to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's platform was subject to and did experience substantial Outage(s) that prohibited the Parties from performing in a timely manner (or at all) under the contract; because Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

68.     Robinhood's conduct described herein was undertaken in transactions intended to result in, and which did result in, the purchase of its financial services by consumers, which caused harm to Plaintiff and Class members who would not have used Robinhood's services had they known the truth.  Plaintiff was in fact injured by losses incurred because of Robinhood's deceptive conduct.

69.     The CLRA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or

common law remedies, such as those alleged in the other Counts of this Complaint. *See* Cal. Civ. Code § 1752.

70.     In accordance with Civil Code section 1780, Plaintiff and Class members seek injunctive and equitable relief for Robinhood's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, disclosing that its services are substandard and unable to fulfill reasonable consumer demand, by correcting its services so that its platform can perform as necessary to comply with its legal, regulatory and contractual obligations, and making customers whole for their losses.

71.     In accordance with Civil Code section 1780, the Plaintiff served a notice pursuant to Civil Code section 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about March 6, 2020.  Should Robinhood fail to respond to Plaintiff' CLRA demand in a satisfactory manner, Plaintiff will amend this Complaint to seek damages after the expiration of the notice period.

## COUNT VII

**Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

72.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

73.     Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because Robinhood's conduct is unlawful, unfair, and fraudulent as herein alleged.

74.     Plaintiff, the members of the Class, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

75.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its services.

76.     Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described within, violated the UCL's unlawful, unfair, and fraudulent prongs.

77.     **Unlawful prong:**  Robinhood's conduct, as described within, violated the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing, (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) it violates FINRA Rule 5310 which requires best execution of orders fully and promptly; and (6) has unlawfully and unjustly enriched Robinhood.

78.     **Unfair prong:**  Robinhood's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and by FINRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit.  At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts regarding its faulty infrastructure and refusal to timely perform from the Plaintiff and consumers caused them injury by inducing them to use Robinhood's services they would not have otherwise, causing losses to them.  The utility of Robinhood's conduct in misrepresenting and concealing material facts from the Plaintiff and the Class is far outweighed by the gravity of harm to consumers who have now incurred losses they would not have otherwise.

79.     **Fraudulent prong:**  Robinhood's conduct, as described within, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiff and the Class to be deceived into using Robinhood's services they would not have otherwise.  At all times Robinhood has had exclusive knowledge of its substandard infrastructure that led to the Outage.  Plaintiff and the Class have been harmed and sustained injury as a result of Robinhood's fraudulent conduct in violation of the UCL as explained herein.

80.     Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth, though he has an interest in continuing to use the service in the future should Robinhood fix the problems set forth in this Complaint.  As

a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made; and lost their ability to make informed and reasoned purchasing decisions.

81.     The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.  *See* Cal. Bus. & Prof. Code § 17205.

82.     As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, Plaintiff and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT VIII

### Unjust Enrichment

83.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

84.     By its wrongful acts and omissions described herein, Robinhood has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

85.     Robinhood, prior to and at the time Plaintiff and the members of the Class decided to use Robinhood's services and make financial transactions, knew and had knowledge and information that it could not withstand reasonable consumer demand and would be unable to execute trades in a complete and timely manner.

86.     Robinhood was aware or should have been aware that reasonable consumers would have wanted to know the facts pertaining to its financial services before deciding whether or not to use them.

87.     Robinhood was unjustly enriched at the expense of Plaintiff and Class members. Robinhood received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members.

88.     Since Robinhood's profits, benefits, and other compensation were obtained by improper means, Robinhood is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized.

89.     Plaintiff and Class members seek an order of this Court requiring Defendants to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Robinhood from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT IX

### Declaratory Relief

90.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

91.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and which violate the terms of the federal and state statutes described in this Complaint.

92.     An actual controversy has arisen.  Plaintiff allege that Robinhood is not complying with its obligations under the Customer Agreement, FINRA Rule 5310, and does not maintain sufficient infrastructure to provide the financial services it must do so in a complete and timely manner.

93.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.     Robinhood owed and continues to owe a legal duty to comply with its agreements as well as regulatory requirements to maintain adequate infrastructure to handle consumer demand and execute trades in a complete and timely manner;

b.      Robinhood continues to breach this legal duty by failing to employ reasonable measures to prevent Outages and provide alternative means for customers to make timely financial transactions.

94.    The Court also should issue corresponding injunctive relief requiring Robinhood to employ adequate quality control consistent with industry standards and the parties' contracts.

## PRAYER FOR RELIEF

**THEREFORE,** Plaintiff seeks judgment against Robinhood, as follows:

A.      Certifying the Class and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

B.      Declaring the Robinhood's conduct violates the statutes referenced herein;

C.      Finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      Granting damages, restitution, or disgorgement to Plaintiff and the Class;

E.      Granting declaratory and injunctive relief to enjoin Robinhood from engaging in the unlawful practices described in this Complaint;

F.      Granting compensatory damages, the amount of which is to be determined at trial;

G.      Granting punitive damages;

H.      Granting pre- and post-judgment interest on all amounts awarded;

I.      Granting restitution and all other forms of equitable monetary relief;

J.      Granting injunctive relief as pleaded or as the Court may deem proper;

K.      Awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

L.      Granting further relief as this Court may deem proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## JURY TRIAL DEMAND

2

Plaintiff demand a trial by jury on all issues so triable.

3

4

Respectfully submitted,

5

DATED: March 5, 2020        **KAPLAN FOX & KILSHEIMER LLP**

6

By: /s/ *Matthew B. George*
            Matthew B. George

7

8

Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*

9

10

11

12

**MEYER WILSON CO., LPA**
David P. Meyer (to be admitted *pro hac vice*)
Matthew R. Wilson (SBN 290473)
Chad Kohler (to be admitted *pro hac vice*)
Michael J. Boyle, Jr. (SBN 258560)
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
*dmeyer@meyerwilson.com*
*mwilson@meyerwilson.com*
*ckohler@meyerwilson.com*
*mboyle@meyerwilson.com*

13

14

15

16

17

18

19

**EREZ LAW**
Jeffrey Erez (to be admitted *pro hac vice*)
SunTrust International Center
1 SE 3rd Ave., Suite 1670
Miami FL 33131
Telephone: (305) 728-3320
Facsimile: (786) 842-7549

20

21

22

*Counsel for Plaintiff and the Proposed Class and Subclass*

23

24

25

26

27

28