C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Eric D. Monek Anderson (State Bar No. 320934)
emonekanderson@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Maeve L. O'Connor (appearance *pro hac vice*)
Elliot Greenfield (appearance *pro hac vice*)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE ROBINHOOD OUTAGE LITIGATION | Master File 3:20-cv-01626-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO (1) DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND (2) STRIKE THE CLASS ALLEGATIONS**<br><br>Date:  January 7, 2021<br>Time:  10:00 a.m.<br>Judge:  Hon. James Donato<br>Ctrm:  11, 19th Floor |

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF RELIEF SOUGHT ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 2

PRELIMINARY STATEMENT ............................................................................................... 2

BACKGROUND ....................................................................................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.    PLAINTIFFS FAIL TO PLEAD AN INJURY-IN-FACT. ..................................... 5

    II.    PLAINTIFFS' PROPOSED CLASS IS IMPERMISSIBLY OVERBROAD. .......... 6

    III.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ROBINHOOD MARKETS. ............................................................................................................. 8

    IV.    PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF. ........................................................................................ 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*City of L.A. v. Lyons*,
 461 U.S. 95 (1983) .................................................................................................................. 9, 10

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ................................................................................................................... 6, 9

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ......................................................................................................................... 6

*Lyons v. Bank of Am., NA*,
 No. 11-cv-01232, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ............................................. 7

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ......................................................................................................... 7

*Melegrito v. CitiMortgage Inc.*,
 No. 11-cv-01765, 2011 WL 2197534 (N.D. Cal. June 6, 2011) ............................................... 8

*Nelsen v. King Cty.*,
 895 F.2d 1248 (9th Cir. 1990) ...................................................................................................... 10

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015) ........................................................................................................ 9

*Rasmussen v. Apple Inc.*,
 27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................................................ 7

*Rivers v. Wachovia Corp.*,
 665 F.3d 610 (4th Cir. 2011) ......................................................................................................... 6

*Sandoval v. Ali*,
 34 F. Supp. 3d 1031 (N.D. Cal. 2014) ....................................................................................... 7

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) .................................................................................................................. 6

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ......................................................................................................................... 9

*Tietsworth v. Sears*, 720
 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................................................ 7

*United States v. Bestfoods*,
 524 U.S. 51 (1998) .......................................................................................................................... 9

*Updike v. Multnomah Cty.*,
 870 F.3d 939 (9th Cir. 2017) ......................................................................................................... 9

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .................................................................................................... 5, 6

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................................... 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ............................................................................................................. 8

Fed. R. Civ. P. 12(b) ....................................................................................................... 1, 2

Fed. R. Civ. P. 12(f) ........................................................................................................ 1, 2

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................................. 1, 2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 7, 2021, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11 of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, United States District Judge, Defendants Robinhood Financial LLC ("Robinhood Financial"), Robinhood Markets, Inc. ("Robinhood Markets") and Robinhood Securities, LLC ("Robinhood Securities") (collectively, "Robinhood" or "Defendants") will and hereby do move to dismiss the Consolidated Amended Complaint ("CAC") for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike the class allegations pursuant to Federal Rule of Procedure 12(f) or, in the alternative, Federal Rule of Civil Procedure 23(d)(1)(D). Defendants' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and all pleadings and papers filed in this matter, and upon such other matters as may be presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Robinhood seeks an order dismissing the CAC and striking Plaintiffs' class allegations.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants submit this memorandum in support of their motion to dismiss the CAC for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and to strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f) and, in the alternative, Federal Rule of Civil Procedure 23(d)(1)(D).

## STATEMENT OF ISSUES TO BE DECIDED

The following issues are before the Court in this motion:

(1) Whether the CAC should be dismissed because Plaintiffs have failed to plead Article III standing, given that an inability to make trades does not equate to an injury-in-fact.

(2) Whether the class allegations should be stricken as impermissibly overbroad, given that the class definitions encompass countless individuals who suffered no injury and thus lack standing and the class period bears no rational relationship to Plaintiffs' claims.

(3) Whether the CAC should be dismissed as against Robinhood Markets for failure to state a claim.

(4) Whether Plaintiffs' claims for prospective declaratory and injunctive relief should be dismissed, given that they have not alleged a real and immediate threat of future injury.

## PRELIMINARY STATEMENT

In pursuit of the broadest possible class, Plaintiffs made the strategic – but ultimately self-defeating – choice to file a complaint devoid of any allegations about their own circumstances that might highlight the inherently individual nature of each of their claims. The result is a complaint so free of detail that it fails even to plead an injury-in-fact, as required for Article III standing. Plaintiffs allege only that they were unable to "make trades" because of outages suffered by Robinhood's trading platform, but that does not equate to an injury for the simple reason that all investments involve risk and not all "trades" are profitable. Plaintiffs then propose a class consisting of "all Robinhood customers within the United States" – a definition that is absurdly overbroad and should be summarily rejected because it includes vast numbers of prospective class members who were entirely unaffected by the outages. The reason for Plaintiffs' "shoot for the moon" approach is clear: any workable, non-fail-safe class definition properly limited to those

harmed by the outages – if one exists – would be far narrower.  The CAC should be dismissed for lack of Article III standing and failure to state a claim, and the class allegations should be stricken.

*First*, Plaintiffs do not plead an injury-in-fact sufficient to confer Article III standing. Plaintiffs fail to identify any of the trades that they allegedly attempted to make – or even specify whether they were attempting to close out existing positions or open new ones.  As trading in the stock market always involves risk, the mere allegation of an inability to "make trades" does not plead an injury-in-fact for purposes of Article III standing.  Some trades result in a gain; others in a loss.  The absence of any information regarding any specific trades at issue also renders Plaintiffs' alleged loss speculative.  For example, to the extent that Plaintiffs were allegedly prevented from buying shares of stock during an outage, there is no way to know if or when those shares would have been sold and for what price.  Plaintiffs know what trades they allegedly attempted to make, and the Court should require them to allege that basic information and establish Article III standing if they are able to plead a non-speculative injury.

*Second*, Plaintiffs' class allegations should be stricken because the proposed classes and class period are deficient on their face.  The proposed class of "all Robinhood customers within the United States" is absurdly overbroad and includes prospective class members – likely millions – who did not even attempt to access their account or place orders during the outages, much less experience a cognizable injury as a result.  Plaintiffs make no attempt to explain how each and every Robinhood customer in the United States was injured by temporary outages to Robinhood's trading platform, nor can they.  Plaintiffs' proposed subclasses – customers (*i*) "who were subscribers to Robinhood's Gold membership service," (*ii*) "owned a position in an options contract" or (*iii*) "had margin accounts" – suffer from the same defect.  They reflect categories that are somewhat narrower than "all Robinhood customers" but no more focused on those who suffered a cognizable injury as a result of the outages.  Plaintiffs' overreach is further highlighted by their proposed class period, which Plaintiffs "provisionally" define only by reference to the statute of limitations for each claim and suggest might be extended even further based on the doctrine of equitable tolling.  That proposed class period has no connection to Plaintiffs' claims, which are expressly limited to outages that occurred on March 2-3 and 9, 2020.  The Court should

1  require Plaintiffs to propose a non-fail-safe class limited to individuals who suffered a cognizable

2  injury due to the outages and have standing to assert a claim.  Plaintiffs have made no attempt to

3  do so.  Indeed, their proposed class definition represents a giant step backwards from those

4  proposed in some of the initial complaints – *e.g.*, customers "who were not able to execute trades

5  on options that expired during the Outage."

6      *Third*, all claims against Defendant Robinhood Markets should be dismissed for the

7  additional reason that Plaintiffs do not allege the existence of a contractual or other relationship

8  with Robinhood Markets that could possibly support a claim, or any basis to extend liability to

9  Robinhood Markets based on its status as the parent company of Robinhood Financial and

10 Robinhood Securities.

11     *Fourth*, Plaintiffs' claims for prospective declaratory and injunctive relief also should be

12 dismissed for failure to plead a real and immediate threat of repeated injury.  Plaintiffs do not even

13 plead standing as to the outages in March 2020, much less standing as to hypothetical future injury

14 from a hypothetical future outage.

15     The Court should dismiss the CAC in its entirety and strike the class allegations.

16     **BACKGROUND**[1]

17     Robinhood Financial is a registered broker-dealer with the U.S. Securities and Exchange

18 Commission.  (CAC ¶ 28.)  It acts as an introducing broker and has a clearing arrangement with

19 Robinhood Securities.  (CAC ¶ 28.)  When customers open accounts with Robinhood, they enter

20 into a customer agreement with Robinhood Financial and Robinhood Securities.  (CAC ¶ 48.)  As

21 to Robinhood Markets, Plaintiffs allege only that it is the parent corporation of Robinhood

22 Financial and Robinhood Securities.  (CAC ¶ 30.)

23     Robinhood offers customers the ability to invest, commission-free, in stocks, ETFs and

24 options through an electronic, self-directed trading platform, both online and through an app.

25 (CAC ¶¶ 36-37.)  Robinhood also offers customers the option of enrolling in a "Gold"

26 membership for a monthly fee of $5, which provides "faster deposit processing, access to

27

28 [1]    Allegations from the CAC are assumed to be true for purposes of this motion only.

Farella Braun + Martel LLP

4

DEFENDANTS' MOTION TO DISMISS AND STRIKE – 20-cv-01626-JD

professional research, the ability to see additional information about stock prices, and the ability to invest on margin." (CAC ¶ 50.) "A margin account is a brokerage account in which the broker lends the investor money to buy more securities than what they could otherwise buy with the balance in their account." (CAC ¶ 50 n.25.)

Plaintiffs allege that Robinhood's trading platform suffered an outage on March 2-3, 2020 and again on March 9, 2020 (collectively, the "Outages"). (CAC ¶¶ 3-4, 54, 65.) Plaintiffs allege that, during the Outages, customers were unable "to buy or sell securities or to exercise option contracts through Robinhood's website and app." (CAC ¶ 5.) Based on their alleged inability to "make trades" during the Outages, Plaintiffs assert various state common law claims, as well as a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and a claim for declaratory and injunctive relief.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD AN INJURY-IN-FACT.

Plaintiffs fail to plead an injury-in-fact sufficient to confer Article III standing because they do not allege what trades they purportedly attempted to make during the Outages or how they were harmed by the inability to make those trades. In nearly identical fashion, each of the sixteen Plaintiffs alleges that he or she "attempted to make trades" or "attempted to trade options" but "was prevented from making those trades as a result of the outages." (CAC ¶¶ 87-175.) Because trading securities is inherently risky and uncertain, however, the mere allegation of an inability to "make trades" does not establish harm. Plaintiffs' conclusory assertions that they "estimate" that their losses exceed certain amounts also do not establish an injury-in-fact, as Plaintiffs provide no explanation of how they arrived at those supposed "estimates." (*See*, *e.g.*, CAC ¶ 91.)

Plaintiffs' carbon copy allegations fail to "clearly and specifically set forth facts sufficient" to plead an injury-in-fact. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Plaintiffs do not identify the alleged trades at issue or explain how the inability to make those trades resulted in financial harm. Indeed, Plaintiffs do not even specify whether they were attempting to sell an existing position or open a new one. To the extent that Plaintiffs were seeking to open new trading positions, it is entirely speculative that they would have profited from those new positions.

Would they have subsequently sold those positions? When, and for what price? Such alleged harm is far too speculative to confer Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing cannot rest on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *see also Rivers v. Wachovia Corp.*, 665 F.3d 610, 619 (4th Cir. 2011) (claim for "lost profit opportunity" would require court to take its "best guess at when [plaintiff] would have sold his stock").

The lack of detail in the CAC is particularly glaring in light of the far more specific allegations that several Plaintiffs included in their initial complaints, which identified with varying degrees of specificity the securities and trading activity that they allegedly attempted to execute during the Outages. For example, Plaintiff Beckman alleged that he "established a position known as a SPY put debit spread" and that "the specific SPY options that Plaintiff utilized as part of his debit spread had expiration dates of Monday, March 3 [*sic*], 2020."[2] Plaintiff Riggs alleged that he "held VXX call options and had submitted in-the-money sell orders at the open on March 9, 2020," and Plaintiff Xia alleged that she held "'bullish' option position[s]" in Facebook and Google and was unable to close out those positions during the Outages.[3]

The allegations that each Plaintiff "estimates" his or her losses to be "in excess of" some amount does nothing to remedy Plaintiffs' failure to plead an injury-in-fact, because those purported "estimates" are unsupported by factual allegations and appear to be plucked out of thin air. (*See*, *e.g.*, CAC ¶ 91.) *See Whitmore*, 495 U.S. at 155. If Plaintiffs have a factual basis supporting a cognizable, non-speculative injury, they should allege those specific facts.

## II. PLAINTIFFS' PROPOSED CLASS IS IMPERMISSIBLY OVERBROAD.

The Court should strike Plaintiffs' class allegations because the proposed class definition is

---

[2] *See Beckman v. Robinhood Financial, LLC*, No. 3:20-cv-01626 (N.D. Cal., filed March 5, 2020) (Compl., Dkt. No. 1, ¶¶ 20-21).

[3] *See Riggs v. Robinhood Financial, LLC*, No. 3:20-cv-01800 (N.D. Cal., filed March 13, 2020) (Compl., Dkt. No. 1, ¶ 23); *Xia v. Robinhood Financial, LLC*, Case No. 3:20-cv-02352 (N.D. Cal., filed April 7, 2020) (Compl., Dkt. No. 1, ¶¶ 20, 23).

wildly overbroad and not rationally related to their claims.  A class action cannot be maintained on the basis of Plaintiffs' class definition – "all Robinhood customers within the United States" – because it includes individuals who were completely unaffected by the Outages and lack Article III standing.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing.").  Plaintiffs make no attempt to explain why mere status as a Robinhood customer is sufficient to confer standing to assert claims related to the Outages.  (CAC ¶ 176.)  It is fair to presume that large numbers of Robinhood customers made no attempt to access the application or execute trades during the Outages, much less suffered a cognizable injury.  Plaintiffs' proposed Gold, options and margin subclasses do not remedy this fundamental flaw, as they do not limit these classes to those allegedly injured by the Outages.  (CAC ¶ 177.)

Courts have regularly granted motions to strike in circumstances where plaintiffs put forward similarly overbroad class definitions that encompassed individuals who were not alleged to have suffered any injury.  *See*, *e.g.*, *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1046 (N.D. Cal. 2014) (striking nationwide class consisting of consumers who purchased allegedly defective product because the class included members "who never experienced any defects" and thus lacked standing); *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014) (striking class allegations because the proposed class was "inconsistent with [p]laintiffs' theory of the case" and included members differently situated than the named plaintiff); *Lyons v. Bank of Am., NA*, No. 11-cv-1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (striking class allegations because the "proposed class includes many members who have not been injured"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) (striking classes consisting of consumers who purchased allegedly defective product because "they include members who have not experienced any problems" and thus lacked standing to sue).

Plaintiffs' overbroad proposed class period further supports striking the class allegations.  Plaintiffs "provisionally" propose a class period equal in length to "the respective statute of limitations for each claim," which in some cases is several years long, while "reserving the right to invoke the equitable tolling doctrine."  (CAC ¶ 176 n.56.)  Plaintiffs make no attempt to justify the

extraordinary length of the proposed class period when they allege only the inability to "make trades" on March 2-3 and 9, 2020. (CAC ¶¶ 87-175.) To the extent that a class can be certified at all, the class period must be limited to the dates on which Plaintiffs allegedly suffered a cognizable injury.

Plaintiffs' task at the pleading stage is not impossible, though it may be unpalatable. A similar lawsuit recently filed in this District against E*TRADE in connection with an outage to that company's trading platform is illustrative. In that case, the named plaintiffs allege in detail the crude oil futures contracts they purchased and appropriately propose a class of similarly situated E*TRADE customers: "All persons and entities within the United States who, on April 20, 2020, held a futures contract for NYMEX e-mini crude oil expiring May 2020 in an E*TRADE trading account, but were unable to sell, said futures contract."[4] Here, an analogous class definition would encompass Robinhood customers who held options contracts expiring on March 2-3 or 9, 2020 in their Robinhood accounts, and were unable to sell or exercise those contracts due to the Outages. Indeed, some of the Plaintiffs had proposed class definitions along those lines in their initial complaints.[5] Although such a class ultimately might not be certifiable, it would at least be a definition appropriately tailored to Plaintiffs' claims and not invalid on its face.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ROBINHOOD MARKETS.

Plaintiffs fail to state a claim against Robinhood Markets because they do not allege any contractual or other relationship with that entity or any basis to hold Robinhood Markets liable for the alleged wrongdoing of its subsidiaries. Throughout the CAC, Plaintiffs lump together all three Defendants under the term "Robinhood," ignoring that they are separate corporate entities. Rule 8(a) prohibits "grouping multiple defendants together" in this manner. *Melegrito v. CitiMortgage Inc.*, No. 11-cv-01765, 2011 WL 2197534, at *6 (N.D. Cal. June 6, 2011).

The CAC is entirely devoid of any allegations specific to Robinhood Markets, aside from

---

[4] *See Whitesides v. E*TRADE Sec., LLC*, No. 3:20-cv-05803 (N.D. Cal., filed Aug 18, 2020) (Compl., Dkt. No. 1, ¶¶ 35-51).

[5] *See*, *e.g.*, *Prendergast v. Robinhood Financial, LLC*, No. 5:20-cv-01877 (N.D. Cal., filed March 17, 2020) (Compl., Dkt. No. 1, ¶ 34) ("All persons within the United States who, on March 2, 2020, held an option contract expiring on that date in a Robinhood trading account.").

1  identifying it as the corporate parent of the other Robinhood entities.  (CAC ¶ 30.)  Plaintiffs do

2  not – and cannot – allege that they have a contractual or other relationship with Robinhood

3  Markets or that Robinhood Markets is a broker-dealer.  The customer relationship allegedly giving

4  rise to liability in this case exists with Robinhood Financial and/or Robinhood Securities.

5        Nor does the allegation that Robinhood Markets is the parent corporation of Robinhood

6  Financial and Robinhood Securities provide a basis for liability.  *See United States v. Bestfoods*,

7  524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our

8  economic and legal systems that a parent corporation . . . is not liable for the acts of its

9  subsidiaries.") (internal quotations omitted); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir.

10 2015) ("As a general principle, corporate separateness insulates a parent corporation from liability

11 created by its subsidiary, notwithstanding the parent's ownership of the subsidiary.").

12       The Court should dismiss the CAC as against Robinhood Markets.

13 **IV.**    **PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY OR INJUNCTIVE**
14         **RELIEF.**

15       Plaintiffs' claims for prospective declaratory and injunctive relief (CAC ¶¶ 212, 217, 226,

16 231-35) also should be dismissed for lack of Article III standing because Plaintiffs fail to

17 demonstrate a threat of future injury from a possible future outage that is "actual and imminent,

18 not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  The

19 "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of

20 *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotations and

21 alteration omitted) (emphasis in original).  Where, as here, plaintiffs seek declaratory and

22 injunctive relief based on allegations of past harm, they must demonstrate "a real and immediate

23 threat of repeated injury." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotations

24 omitted); *see also Updike v. Multnomah Cty.*, 870 F.3d 939, 948 (9th Cir. 2017) (plaintiff's "past

25 injury is insufficient to establish that the risk of recurring injury is more than speculative") (citing

26 *Lyons*, 461 U.S. at 103).

27       As discussed above, Plaintiffs fail even to plead an injury-in-fact in connection with the

28 March 2020 Outages, let alone "a real and immediate threat of repeated injury" from a potential

future outage.  *Lyons*, 461 U.S. at 102.  Under Article III, Plaintiffs cannot base a claim on speculation that whatever caused the March 2020 Outages will recur and cause a future outage, and that Plaintiffs will suffer hypothetical future harm from that hypothetical future outage based on hypothetical future trading activity.  Such an "extended chain of highly speculative contingencies" is plainly insufficient to confer standing.  *Nelsen v. King Cty.*, 895 F.2d 1248, 1252 (9th Cir. 1990).

## CONCLUSION

For the reasons set forth herein, the Court should dismiss the CAC in its entirety and strike the class allegations.

Dated:  October 5, 2020                              FARELLA BRAUN + MARTEL LLP

By:  /s/ C. Brandon Wisoff
     C. Brandon Wisoff

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC