**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (SBN 239322)
Maia C. Kats (*pro hac vice*)
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*mgeorge@kaplanfox.com*
*mkats@kaplanfox.com*
*lking@kaplanfox.com*
*mchoi@kaplanfox.com*

**COTCHETT, PITRE & MCCARTHY, LLP**
Anne Marie Murphy (SBN 202540)
Mark C. Molumphy (SBN 168009)
Noorjahan Rahman (SBN 330572)
Tyson C. Redenbarger (SBN 294424)
Julia Q. Peng (SBN 318396)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
*amurphy@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*nrahman@cpmlegal.com*
*tredenbarger@cpmlegal.com*
*jpeng@cpmlegal.com*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re: Robinhood Outage Litigation* | Case No. 3:20-cv-01626-JD |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Judge:   Hon. James Donato. |
| | Courtroom: 11, 19th Floor |
| | Date:   January 7, 2021 |
| | Time:   10:00 a.m. |

Case No. 3:20-cv-01626-JD

1
2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS............................................................. 1

III.    LEGAL STANDARDS ................................................................................................ 4

IV.     ARGUMENT............................................................................................................ 5

        A.      Plaintiffs Have Suffered Injury-In-Fact ..................................................... 5
        B.      Plaintiffs' Proposed Class Definition is Appropriately Tailored................ 8
        C.      It Is Premature to Dismiss Robinhood Markets....................................... 12
        D.      Plaintiffs Are Entitled to Declaratory and Injunctive Relief .................... 13

V.      CONCLUSION......................................................................................................... 15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001).............................................................................................. 11

*Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*,
  648 F.3d 986 (9th Cir. 2011).............................................................................................. 5

*Barrous v. BP P.L.C.*,
  No. 10–cv–2944–LHK, 2010 WL 4024774, (N.D. Cal. Oct. 13, 2010)................................ 12

*Blair v. Infineon Technologies AG*,
  720 F. Supp. 2d 462 (D. Del. 2010)..................................................................................... 12

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) .............................................................................. 11

*Ctr. for Biological Diversity v. Envtl. Prot. Agency*,
  316 F. Supp. 3d 1156 (N.D. Cal. 2018) .............................................................................. 5

*Davidson v. United Servs. Auto. Ass'n.*,
  No. 20-cv-00527-CJC (MAAx), 2020 WL 4390379 (C.D. Cal. Mar. 10, 2020)..................... 14

*Fleming v. Charles Schwab Corp.*,
  878 F.3d 1146 (9th Cir. 2017)....................................................................................... passim

*Friends of Del Norte v. Cal. Dept. of Transp.*,
  No. 3:18-cv-00129-JD, 2020 WL 1812175 (N.D. Cal. Apr. 9, 2020)...................................... 4

*Hall v. Diamond Foods, Inc.*,
  No. C–14–2148 MMC, 2014 WL 5364122 (N.D. Cal. Oct. 21, 2014) .................................... 7

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................................. 14

*In re Capacitors Antitrust Litig. (No. III)*,
  No. 14-cv-03264-JD, 2018 WL 5980139, (N.D. Cal. Nov. 14, 2018) .................................... 11

*In re Facebook Biometric Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ........................................................................................ 11

*Lyons v. Bank of Am., NA*,
  No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ....................................... 11

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012).............................................................................................. 10

*Melegrito v. CitiMortgage Inc.*,
  No. 11-cv-01765-LB, 2011 WL 2197534 (N.D. Cal. June 6, 2011)................................. 12, 13

**TABLE OF AUTHORITIES**
(cont.)

**Page**

*Milan v. Clif Bar & Co.*,
   No. 18-CV-02354-JD, 2020 WL 5760450, (N.D. Cal. Sept. 28, 2020) ............................ 11, 14

*Ranza v. Nike, Inc.*,
   793 F. 3d 1059 (9th Cir. 2015) ............................................................................................. 13

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) .................................................................................. 10

*Reniger v. Hyundai Motor Am.*,
   122 F. Supp. 3d 888 (N.D. Cal. 2015) .................................................................................. 11

*Rivers v. Wachovia Corp.*,
   665 F.3d 610 (4th Cir. 2011) ................................................................................................... 7

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ........................................................................................................... 6, 7

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   No. C-13-1803 EMC, 2014 WL 1048710, (N.D. Cal. Mar. 14, 2014) ................................... 11

*Thankur v. Betzig*,
   No. 3:17-cv-06603-JD, 2019 WL 2211323 (N.D. Cal. May 22, 2019) ................................... 5

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................. 10

*United States v. Bestfoods*,
   524 U.S. 51 (1998) .................................................................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................................. 9

*Werdebaugh v. Blue Diamond Growers*,
   No. 12–CV–02724–LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ................................... 7

**STATUTES**

42 U.S.C. § 9601 *et seq.* ............................................................................................................... 13

California Business and Professions Code § 17200, *et seq.* ........................................... 2, 7, 12, 14

1

**TABLE OF AUTHORITIES**
**(cont.)**

2

**Page**

3

**RULES**

4

Federal Rules of Civil Procedure
    Rule 9(b)..................................................................................................................... 13
    Rule 12(b)(1) ............................................................................................................... 4
    Rule 12(b)(6) ............................................................................................................... 5
    Rule 12(f) ................................................................................................................... 11
    Rule 23 ................................................................................................................... 9, 11
    Rule 23(b)(2) ............................................................................................................. 10
    Rule 23(b)(3) ............................................................................................................... 9
    Rule 23(d)(1)(D)........................................................................................................ 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        Case No. 3:20-cv-01626-JD

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   **I.     INTRODUCTION**

2         Robinhood lodged its Motion to Dismiss ("Motion") (ECF No. 76) simultaneously with its

3   Motion to Stay Discovery (ECF No. 77), which has already been denied without hearing (ECF No.

4   81).  Robinhood's Motion to Dismiss offers four arguments, each of which should be rejected.

5         *First*, Robinhood claims that Plaintiffs' allegations of thousands of dollars in damages

6   directly attributable to Robinhood's service outages, which shut down all trading activity on its

7   platform are insufficient to confer Article III standing.  The Ninth Circuit has already rejected this

8   argument in the context of disputes between investors and broker-dealers in *Fleming v. Charles*

9   *Schwab Corp.*, 878 F.3d 1146 (9th Cir. 2017), and Robinhood's position runs counter to case law

10  holding that injury to property is sufficient to confer standing in federal court.

11        *Second*, Robinhood argues that the scope of the class definition is overbroad, but that

12  argument fails because it is derivative of Robinhood's faulty standing analysis and because it is

13  also premature.  As this Court has recognized in prior complex class actions, the scope of the

14  ultimate class definition is subject to refinement through class certification proceedings and trial

15  and should be determined on a full record.

16        *Third*, Robinhood requests that Defendant Robinhood Markets be dismissed from the

17  litigation at this early stage, but improperly relies on case law specific to fraud-based claims, foreign

18  subsidiaries, and complex statutory schemes that are simply not at issue in this case.  The extent

19  and nature of Robinhood Markets' culpability is a question of fact unsuitable for resolution on the

20  pleadings.

21        *Last*, Robinhood tries to knock out Plaintiffs' claims for injunctive and declaratory relief.

22  But both these claims and forms of relief are appropriate under Ninth Circuit authority when the

23  Parties have an ongoing, live dispute and where the threat of future harm is very real as Robinhood

24  continues to have dozens of outages that perpetually put Plaintiffs' property, accounts, and

25  securities at risk.

26        Robinhood's Motion should be denied.

27  **II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS**

28        In this putative class action, Plaintiffs are 16 investors throughout the United States who

allege the losses of thousands of dollars because Defendants Robinhood Financial, LLC, Robinhood Markets, Inc., and Robinhood Securities, LLC ("Robinhood" or "Defendants") disregarded industry norms and standards that resulted in preventable outages of their online securities trading services in March 2020 (the "Outages").  Plaintiffs' Consolidated Amended Complaint ("CAC") (ECF No. 74), filed August 21, 2020, asserts eight causes of action primarily on negligence, fiduciary duty, and contractual breach theories, as well as a statutory claim for violation of California's Unfair Competition Law, Bus. & Prof. Code. §§ 17200, *et seq*. ("UCL").  Plaintiffs seek relief including damages, restitution, injunctive, and declaratory relief.

As set forth in the CAC, Robinhood offers people the ability to invest in stocks, ETFs, and options through an electronic trading platform, both online and through an app.  CAC ¶ 36.  Robinhood competes with traditional financial institutions by offering more user-friendly digital services, which has made Robinhood very popular, especially with younger traders.  CAC ¶¶ 37, 39.  In July of 2020, Robinhood said it had over 13 million users on its platform.  *Id*.

Robinhood's original product was commission-free trades of stocks and exchange-traded funds but as Robinhood grew, it added more risky and complex products—like options and margin trading.  CAC ¶ 38.  According to the New York Times, Robinhood's "success appears to have been built on a Silicon Valley playbook of behavioral nudges and push notifications, which has drawn inexperienced investors into the riskiest trading. . . And the more that customers engaged in such behavior, the better it was for the company."  CAC ¶ 42.  Robinhood makes money in a variety of ways, including through $5 per month "Gold" subscription plans that allow faster deposit processing, access to professional research, the ability to see additional information about stock prices, and the ability to invest on margin.  CAC ¶ 50.  Robinhood earns money through "payment for order flow" fees that are paid to Robinhood from electronic market makers for passing on customer orders.  CAC ¶¶ 51-52.  In fact, payment for order flow fees are reportedly Robinhood's primary revenue stream—greatly exceeding what it earns from Robinhood Gold, or from the interest it makes on cash balances in customer accounts.  *Id*.

But as Robinhood has increased its user base dramatically in the seven years since its founding, Robinhood's digital platform app has been beset by technology glitches that have been

significant and ongoing.  CAC ¶ 44.  Robinhood's lack of infrastructure and technological failings came to a head on March 2, 2020, when its trading platform completely stopped functioning.  CAC ¶ 54.  At that moment, the platform stopped processing orders entered by customers prior to the Outage and customers were unable to enter new orders.  *Id.*  The majority of users were also prevented from accessing their account and funds altogether.  *Id.*  Robinhood was unable to restore full functionality until Tuesday, March 3, 2020 at 11:54 a.m.  *Id.*  In total, Robinhood's systems were nonfunctional or inaccessible to all customers for 26 hours and 21 minutes.  *Id.*  On March 9, 2020, Robinhood once again experienced outages with customers unable to access their accounts and transact on the public markets.  CAC ¶ 65.  Services were completely unavailable at the start of the trading day and not fully restored until more than five hours later.  *Id.*

Robinhood has admitted that the Outages were self-inflicted wounds, making a public statement on March 3, 2020 that "the cause of the outage was stress on our infrastructure—which struggled with unprecedented load."  CAC ¶ 64.  Robinhood also said that it "is continuing to work to improve the resilience of our infrastructure to meet the heightened load we have been experiencing.  We're simultaneously working to reduce the interdependencies in our overall infrastructure.  We're also investing in additional redundancies in our infrastructure."  *Id.*  Essentially, Robinhood admits that it was beta testing its technology on actual traders with reckless disregard for its contractual, fiduciary, and regulatory obligations—and Robinhood continues to experience regular outages, including 47 separate incidents between March and July 2020 alone.  CAC ¶¶ 20, 76-83.

Robinhood's technological failings were compounded by its lack of contingency plans and failure to even maintain rudimentary customer service.  CAC ¶ 81.  During the Outages and since, there is no way to get in touch with a live person, and the phone number Robinhood provided was useless.  *Id.*  Nevertheless, during the Outages, many Plaintiffs and Class members attempted to seek support by calling the number provided by Robinhood, with no success whatsoever.  *Id.*  Plaintiffs also attempted to contact support.robinhood.com, again to no avail.  Emails were not responded to at all, or not for several days until long after the Outages had done their damage.  *Id.*  Additionally, during the Outages, attempts to contact Robinhood through its website at

robinhood.com were also futile as the website was completely down for the duration of the Outages. *Id*. Following the Outages, employees at Robinhood confirmed that the Company did not offer any phone support. *Id.*

Abandoning its customers and locking them out of their accounts during the Outages has had immediate and injurious impacts to Plaintiffs and other putative Class members. The loss of access to Robinhood's trading platform and absence of contingency plans and customer service support caused concrete, particularized, and actual harm and associated damages for Robinhood customers. CAC ¶ 8. Plaintiffs and members of the class were unable to monitor their accounts, make trades, or exercise their option contracts to capitalize on gains or to mitigate losses at a crucial time during the market's historic upheavals. CAC ¶¶ 6, 8. Many Plaintiffs and Class members held options contracts that expired, worthless, during the Outages. CAC ¶ 8. And some of those contracts, such as the contracts held by certain Plaintiffs herein, were exercised by Robinhood during the Outages at a loss, without express authorization or approval from its customers. *Id*. Other Plaintiffs and Class members were subjected to forced margin calls as a result of the Outages, which they otherwise would have been able to avoid if they had access to their accounts. *Id*. Plaintiffs, many of whom were Gold subscribers, experienced losses estimated between $1,000 and $50,000 each and allege that all of those losses are directly a result of the Outages. CAC ¶¶ 91, 98, 103, 109, 114, 121, 128, 133, 134, 141, 145, 150, 155, 159, 165, 170, 175. Shortly after the Outages, a series of class action lawsuits were filed throughout state and federal courts, with all of the federal cases now consolidated before this Court. ECF Nos. 59, 65.

## III.    LEGAL STANDARDS

It is well settled that where a "motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(1) asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact), the attack on jurisdiction is made on the face of the complaint, and the Court takes the allegations in the plaintiff's complaint as true." *Friends of Del Norte v. Cal. Dept. of Transp.*, No. 3:18-cv-00129-JD, 2020 WL 1812175, at *1 (N.D. Cal. Apr. 9, 2020) (citing *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005)) (internal

quotation marks omitted).  Similarly, under a Rule 12(b)(6) challenge, "[t]he Court treats the plaintiffs' factual allegations as true and draws all reasonable inferences in plaintiffs' favor." *Thankur v. Betzig*, No. 3:17-cv-06603-JD, 2019 WL 2211323, at *4 (N.D. Cal. May 22, 2019) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).  "Generally, a plaintiff's burden at the pleading stage is relatively light." *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, 316 F. Supp. 3d 1156, 1163 (N.D. Cal. 2018).  Dismissal is only proper "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (internal quotation marks and citation omitted).  "If the complaint is dismissed, an opportunity to amend will be provided unless the Court determines that no cure is possible by new allegations of fact." *Id.*, at *4 (citing *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000)).

## IV.    ARGUMENT

### A.    Plaintiffs Have Suffered Injury-In-Fact

Robinhood's primary challenge to Plaintiffs' CAC is a credulity straining argument that Plaintiffs' thousands of dollars in monetary damages are insufficient to confer Article III standing. To concoct this argument Robinhood ignores the repeated, central allegations that all of Plaintiffs' damages are directly attributable to Robinhood's conduct that caused the Outages.  CAC ¶¶ 91, 98, 103, 109, 114, 121, 128, 133, 134, 141, 145, 150, 155, 159, 165, 170, 175.  Robinhood incorrectly claims that Plaintiffs' only complaints are that they were not permitted to trade, and that any losses were speculative and attributable to subsequent market events beyond Robinhood's control. Robinhood's assertions are a purposeful misreading of Plaintiffs' CAC.  Plaintiffs' claims do not arise from the inherently risky nature of the stock market as Robinhood suggests. Instead, they arise from Robinhood's multiple failures to timely perform as a broker-dealer during the Outages when it left Plaintiffs and class members with no ability to access their accounts and had no contingency plan when Robinhood's systems failed.  Indeed, the Ninth Circuit has already rejected Robinhood's Article III standing argument asserted by a broker-dealer in *Fleming*.  *Id.*, 878 F.3d, at 1150-51.

"Article III requires that a plaintiff 'show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.*, 878 F.3d at 1150 (quoting *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 868–69 (9th Cir. 2002)). The seminal inquiry is whether the alleged injury "is both 'concrete and particularized.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1545, (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, (2000)). "Although related, concreteness and particularity are distinct concepts." *Fleming*, 878 F.3d at 1151 (citing *Spokeo*, 136 S.Ct. at 1548). "Particularized injuries affect the plaintiff in a personal and individual way, while a concrete injury must be de facto; that is, it must actually exist." *Id.* (citing *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992))) (internal quotation marks omitted).

   The Ninth Circuit's opinion in *Fleming* dispenses with Robinhood's claim that a consumer-investor's damages attributable to broker-dealer misconduct does not confer Article III standing, even where the damages are much more minimal than they are in this case. In *Fleming*, the brokerage-defendant also argued that Article III was "not satisfied because Plaintiffs have not identified particular trades that caused them losses." *Id.*, 878 F.3d at 1151. Robinhood's argument for dismissal is almost verbatim the same the defendant made in *Fleming*: "Plaintiffs fail to plead an injury-in-fact sufficient to confer Article III standing because they do not allege what trades they purportedly attempted to make during the Outages or how they were harmed by the inability to make those trades." ECF No. 76, Mot. at 5:14-16. But the Ninth Circuit disagreed with that assertion, noting, "[w]hether the Plaintiffs can identify those trades at a later stage of litigation does not deprive them of standing to sue. At the motion to dismiss stage, 'we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Fleming*, 878 F.3d at 1151 (quoting *Lujan*, 504 U.S. at 561). In *Fleming*, the plaintiffs alleged injury stemmed from "missed opportunities to profit when…trades failed to be executed or failed to obtain the best price" and because the broker's practice did not allow them to "receive the most advantageous prices for their trades." *Id.* Here, Plaintiffs provide much more specificity as to the amount of their individual damages "as a result of the Outages" due to Robinhood's misconduct, ranging from $1,000 to $50,000. CAC ¶¶ 91, 98, 103, 109, 114, 121, 128, 133, 134, 141, 145, 150, 155, 159,

1    165, 170, 175.  Per the Ninth Circuit's guidance, nothing more is required at this stage.

2           Robinhood's reliance on *Spokeo* fails for the same reason it failed the brokerage defendant

3    in *Fleming*—plaintiffs do not need to identify specific trades at the pleading stage in order to satisfy

4    Article III standing.  In *Fleming*, the defendant also cited *Spokeo* for the rule that injury sufficient

5    to satisfy Article III must be "concrete and particularized" and "actual or imminent, not conjectural

6    or hypothetical."  *Compare* Consol. Answering Brief for Appellees, *Fleming v. Charles Schwab

7    Corp.*, Nos. 16-15179, 16-15189, 2016 WL 4425973, at *14 (9th Cir. Aug. 15, 2016) (citing

8    *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547-48 (2016)) *with* ECF No. 76, Mot. at 6:2-5 (same).  The

9    *Fleming* court held:

10          Contrary to the defendants' assertions, *Spokeo* does not require a contrary result.
            *Spokeo* merely reiterated longstanding Article III jurisprudence requiring both
11          concrete and particularized harms.  *See* 136 S.Ct. at 1548 ("We have made it clear
            time and time again that an injury in fact must be both concrete *and* particularized."
12          (italics in original)).  Thus, "a bare [statutory] procedural violation," such as an
            improperly reported zip code by a consumer reporting agency, cannot by itself give
13          rise to concrete harm.  *Id.* at 1550.  But here, Plaintiffs alleged more—overpaying
            for securities trades and losses from trades not executed promptly. Those concrete
14          injuries, if proved, are redressable through monetary damages.

15   *Fleming*, 878 F.3d at 1151.  Robinhood's citation to *Rivers v. Wachovia Corp.*, 665 F.3d 610 (4th

16   Cir. 2011), is no more persuasive, as that case found the plaintiff did not have standing to sue for

17   losses in his individual capacity because under the North and South Carolina laws at issue,

18   "shareholders may pursue such claims as a derivative suit on behalf of the corporation."  *Id.* at 614-

19   15.  This is not a derivative case and it is not brought under the laws of the Carolinas.  Robinhood's

20   form contracts specify a California choice of law—a point Robinhood does not contest.  CAC ¶

21   207, Ex. B., ¶ 36(K) (ECF No. 74-2, at 37).

22          Indeed, it is well settled under California law that where a plaintiff has "lost money or

23   property" as a result of the defendant's business conduct, that injury is sufficient to confer Article

24   III standing on claims under California's UCL, as Plaintiffs here have alleged.  CAC ¶¶ 218-226

25   ("Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering

26   a loss of money and/or property as a result of the wrongful conduct alleged herein.");  *Hall v.

27   Diamond Foods, Inc.*, No. C–14–2148 MMC, 2014 WL 5364122, at *1 (N.D. Cal. Oct. 21, 2014);

28   *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724–LHK, 2013 WL 5487236, at *12

1    (N.D. Cal. Oct. 2, 2013).

2          Similarly, Plaintiffs have pleaded the necessary element of damages for their common law

3    claims by pointing out their estimated losses and injuries predicated on Robinhood's negligence as

4    well as breaches of contract and its fiduciary duties.  For example, Plaintiffs allege that Robinhood

5    breached its fiduciary duties by, "among other things, failing to maintain a reliably functioning

6    electronic trading platform with sufficient operating capability and adequate infrastructure to

7    process customer transactions." CAC ¶ 204.  Plaintiffs also allege that "Robinhood's conduct has

8    caused Plaintiffs' and Class members' harm, losses, and damages." CAC ¶ 205.  Additionally,

9    Plaintiffs allege that Robinhood had a duty under its Customer Agreement to provide customers

10   "access to Robinhood's online trading platform, enabling them to trade securities and options listed

11   on U.S. securities exchanges."  CAC ¶¶ 207-08.  And, "Robinhood breached its contracts with

12   customers by … failing to maintain a reliably functioning electronic trading platform with sufficient

13   operating capability and adequate infrastructure to process customer transactions, including during

14   volatile and high-volume trading sessions."  CAC ¶ 209.  "Robinhood's failure to perform and its

15   breaches of the Customer Agreement and applicable contracts resulted in damages and losses to

16   Plaintiffs and Class members," and the amount of these losses will be determined at trial.  CAC ¶

17   211.

18         Robinhood does not cite a single case holding that Plaintiffs' specified damages predicated

19   on routine common law negligence, contract and fiduciary duty theories is not sufficient to confer

20   Article III standing.  Rather, Robinhood just complains that particular allegations omitted from

21   prior complaints in this consolidated proceeding (and even those wholly unrelated to this

22   proceeding) would better demonstrate standing. ECF No. 76, Mot. at 6:9-17, 8:5-16, n.4.  Such

23   arguments are better suited for Rule 12(e) motion, which Robinhood has not raised.

24        **B.**    **Plaintiffs' Proposed Class Definition is Appropriately Tailored**

25         Robinhood's second argument that the class definition is overbroad is derivative of its

26   flawed Article III analysis dispelled above because Robinhood claims Plaintiffs' CAC "includes

27   individuals who were completely unaffected by the Outages and lack Article III standing."  ECF

28   No. 76 at 7:1-4.  This argument fails for the same reasons already addressed, and additionally

because it relies on Robinhood's bare speculation that: "It is fair to presume that large numbers of Robinhood customers made no attempt to access the application or execute trades during the Outages, much less suffered a cognizable injury." *Id*. at 7:7-9.  Robinhood's presumption of facts not in the record (yet purportedly in its favor) is inappropriate on a Rule 12 motion, particularly when Robinhood already publicly admitted that Outages resulted from "stress on [their] infrastructure" due to "unprecedented load," and "record volume."  CAC ¶¶ 45, 64.  Plaintiffs' CAC also alleges that Robinhood customers trade at volumes unprecedented in the industry, more than 40 times the average Charles Schwab customer, and that they buy and sell time-sensitive options trades at 88 times the rate of Charles Schwab customers. *Id*. ¶ 46.  Robinhood's decision to publicly blame the Outages on its own customers' voluminous demands on critical trading days unravels its now unsupported assertion those same customers were *not* trading those very same days.

Even assuming that discovery bears out that some Class members were not attempting to trade on the days of the Outages, Plaintiffs' CAC shuts down Robinhood's claims of overbreadth by operating under Rule 23's separate provisos for damages and equitable relief.  At the outset of Plaintiffs' CAC, they make clear that "Plaintiffs and the Class seek damages related to the Outages on March 2, 3, and 9, 2020."  CAC ¶ 4, n.3.  Moreover, right after the proposed class definition Plaintiffs specify that they will be seeking Rule 23(b)(3) certification, which is the appropriate mechanism for obtaining damages.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3).").  Robinhood's unsupported speculation that some Class members may not have damages at the pleading stage is too tenuous to support striking the class definition now.  Moreover, Plaintiffs also have pleaded harm and sought compensatory relief in other forms apart from trading losses, such as damages and restitution arising from Robinhood receiving payments from third-parties for order flow, maintaining inaccessible deposited funds and securities, charging and/or receiving interest on accounts and margin balances, charging and/or receiving fees, commissions and Gold Membership dues, and increased capital fundraising due to the high number of new and continuing users of its platform, which also drives up Robinhood's valuation.  CAC ¶¶ 219-230.  Robinhood's Motion

1    does not address or seek to dismiss any of these additional theories of harm (and vehicles for
2    compensatory relief) that Class members have suffered and cannot do so for the first time in its
3    reply.

4          Robinhood is also incorrect that the proposed class definition is overbroad because Plaintiffs
5    are also seeking declaratory and injunctive relief.  All of Robinhood's customers are subject to its
6    Customer Agreement, Terms & Conditions, and Business Continuity Plan Summary, under which
7    Plaintiffs seek injunctive and declaratory relief, and sub-class members are subject to additional
8    terms and agreements for trading options and on margin.  CAC ¶ 207, Exs. B, C, D, E, F, G, H, &
9    I (ECF Nos. 74-2-74-9).  Plaintiffs' CAC ties their claims for declaratory and injunctive relief to
10   the class definition by specifying that certification under Rule 23(b)(2) will be sought because
11   "Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby
12   making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a
13   whole."  CAC ¶ 187; *see also*, CAC ¶¶ 212, 217, 226, 230, 232-35.  Plaintiffs seek equitable relief
14   because they allege Robinhood is not performing under its contracts and it is failing to comply with
15   its regulatory obligations, and because Robinhood's app has gone down 47 times between March
16   and July 2020.  CAC ¶¶ 4, 70.  Simply put, as currently pleaded all Robinhood customers in the
17   United States have been harmed and may be entitled to relief in this case because Robinhood either
18   owes them damages and compensation, or because they are entitled to equitable relief—or both.
19   Plaintiffs' class definition appropriately reflects these bases for eventual certification and forms of
20   available relief.

21         None of Robinhood's citations support its position, as they arise from disanalagous product
22   defect suits in which purported class members had not experienced the products' defects, lacked
23   required showings of reliance, were not seeking injunctive or declaratory relief, or addressed the
24   issue in the context of class certification motions. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,
25   596 (9th Cir. 2012); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045–46 (N.D. Cal. 2014);
26   *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010); ECF No. 76 at 7:1-24.
27   Robinhood's only case citation involving financial services struck an overly broad class of
28   mortgagees who did not demonstrate monetary injury and did not plead entitlement to equitable

relief, a situation much different from the case here.  *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at \*7 (N.D. Cal. Dec. 16, 2011); ECF No. 76 at 7:19-21.

"While defendant cites several cases for the proposition that class allegations can be stricken at the pleadings stage, it is in fact rare to do so in advance of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases).  Motions to strike "are not favored and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 907 (N.D. Cal. 2015). (internal citations omitted).  "[T]he Court is not inclined to grant motions to strike under Fed. R. Civ. P. 12(f) or 23(d)(1)(D)."  *Id.* at 908.  "[M]ore recent district courts have stated that Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations."  *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at \*3 (N.D. Cal. Mar. 14, 2014).

Robinhood's attempt to rely on Rule 23(d)(1)(D) to strike Plaintiffs' class allegations "in the alternative" also would require some factual showing and opportunity for discovery to properly determine all the Rule 23 criteria, and should be disregarded on that deficient procedural basis alone.  Indeed, this Court has previously rejected attempts "to raise premature Rule 23 arguments that are not suited for resolution on a Rule 12(f) motion."  *Milan v. Clif Bar & Co.*, No. 18-CV-02354-JD, 2020 WL 5760450, at \*3 (N.D. Cal. Sept. 28, 2020).  Rather, this Court has previously used Rule 23(d)(1)(D) appropriately at the class certification stage on a full record to evaluate any alternative class definitions to address issues with the proposed class definition.  *In re Facebook Biometric Privacy Litig.*, 326 F.R.D. 535, 543 (N.D. Cal. 2018) ("This definition modestly refines plaintiffs' alternative class proposal, and will be used for the remaining Rule 23 analysis."); *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) ("district court may redefine the class"), *cert. denied*, 537 U.S. 812, *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).  This Court has also noted that class definitions can be revised by "altering or amending the class definition in response to developments at trial."  *In re Capacitors Antitrust Litig. (No. III)*, No. 14-CV-03264-JD, 2018 WL 5980139, at \*9 (N.D. Cal. Nov. 14, 2018) (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at \*63 (E.D.N.Y.

Oct. 15, 2014)).  Accordingly, it is simply premature to alter or amend Plaintiffs' proposed class and sub-class definitions without a full record when Robinhood will still have all of its rights to challenge any perceived defects, including those related to overbreadth or damages, at the class certification and trial stages.

### C.    It Is Premature to Dismiss Robinhood Markets

Plaintiffs have properly pleaded Defendant Robinhood Markets into the case, as it is a parent corporation of the other two Defendants.  CAC ¶ 30.  Plaintiffs have already cabined their claims against Robinhood Markets by not asserting either the breach of contract or the breach of the implied covenant of good faith and fair dealing claims (Counts IV and V) because it was not a party to the pertinent Customer Agreements.  CAC ¶¶ 206-17.  However, Plaintiffs have properly asserted the balance of their claims, such as negligence and violations of the UCL, against Robinhood Markets because it was an entity that is jointly responsible and liable for the infrastructure failings of its subsidiaries, Robinhood Financial and Robinhood Securities, that resulted in the Outages.  Whether Robinhood Markets had no involvement in the oversight or control of its subsidiaries is a complex question of fact unsuitable for resolution on a motion to dismiss.  *Barrous v. BP P.L.C.*, No. 10–cv–2944–LHK, 2010 WL 4024774, at *3 n.3 (N.D. Cal. Oct. 13, 2010) (denying motion to dismiss parent entity where "exact relationship among these entities, and their responsibility under the Access Agreement, is a question of fact that cannot be determined on a motion to dismiss."); *Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 473 (D. Del. 2010) ("The nature and extent of the dominion and control exercised by the [parent corporation] over the [subsidiaries] is a question of fact, not subject to resolution on a motion to dismiss.").  Robinhood is incorrect that Plaintiffs have failed to meet their pleading standards in that regard, as the CAC makes clear all factual allegations are attributable to each Defendant.

Robinhood's reliance on *Melegrito v. CitiMortgage Inc.*, No. 11-cv-01765-LB, 2011 WL 2197534 (N.D. Cal. June 6, 2011) (ECF No. 76 at 8:21-23), is misplaced because in that matter the court took plaintiff to task for filing a bevy of identical cases that were dismissed by many judges where "even if [plaintiff] differentiated between defendants, many of his claims are merely recitations of the elements of the claims with little to no factual support."  2011 WL 2197534, at

*4.  The boilerplate, scattershot complaint in *Melegrito* also named 50 "Doe" defendants and was held to the heightened pleading standard for fraud-based claims under Rule 9(b), which is not required here because Plaintiffs do not assert any fraud-based claims.  *Id*. at *6.  Robinhood's citation to *United States v. Bestfoods*, 524 U.S. 51 (1998), is also unhelpful because that case dealt with a specific issue of corporate parent liability under the unique statutory scheme of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* an environmental protection statute not implicated in Plaintiffs' CAC. Similarly, *Ranza v. Nike, Inc*., 793 F. 3d 1059 (9th Cir. 2015), only dealt with the issue of parent-subsidiary liability involving a foreign subsidiary based on wrongful employment discrimination conduct that took place outside the United States.   By contrast, here all of the Robinhood Defendants are part of the same domestic-based corporate conglomerate and all of the harm emanated from the United States.

### D.       Plaintiffs Are Entitled to Declaratory and Injunctive Relief

Robinhood's final argument that Plaintiffs' claims for injunctive and declaratory relief should be dismissed is also derivative of its arguments that Plaintiffs have not alleged standing. This argument has been addressed and rejected by the Ninth Circuit in *Fleming* as well:

> UBS also argues that Fleming lacks standing to pursue injunctive relief because he did not allege future harm. Although "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," *City of L.A. v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)), Fleming alleged that the challenged practices continue. A plaintiff alleging "continuing, present adverse effects" of challenged conduct has standing to pursue injunctive relief. *Id.*

*Fleming*, 878 F.3d at 1151, n.1.

Plaintiffs' CAC is replete with allegations of the ongoing harm attributable to Robinhood's unlawful conduct.   As referenced above, Plaintiffs seek declaratory and equitable relief because Robinhood has experienced dozens of further outages upwards of 47 times between March and July 2020 alone.  CAC ¶¶ 4, 70.  Plaintiffs and Class members also allege Robinhood is not performing under their contracts and regulatory obligations without sufficient infrastructure to handle their accounts which entitles them to declaratory and injunctive relief.  CAC ¶¶ 211-12 ("…Robinhood

1   continues to fail to perform under the Customer Agreement…"), ¶¶ 216-17 (same).  Plaintiffs and

2   Robinhood have a live, ongoing dispute over Robinhood's contractual and legal obligations in that

3   regard, which is more than sufficient to demonstrate standing and maintain a claim for declaratory

4   relief.  CAC ¶¶ 231-35 ("Plaintiffs allege that Robinhood is not complying with its fiduciary duties

5   and obligations under the Customer Agreement and regulatory requirements, and has not and does

6   not maintain sufficient infrastructure necessary to provide the financial services it must do so in a

7   complete and timely manner."); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1220-

8   23 (N.D. Cal. 2014); *Davidson v. United Servs. Auto. Ass'n.*, No. 20-cv-00527-CJC (MAAx), 2020

9   WL 4390379, at *3 (C.D. Cal. Mar. 10, 2020).

10          Plaintiffs' claim under the UCL also entitles them to equitable relief to prevent future harm.

11  "Additionally, because Plaintiffs and Class members continue to have accounts and investments

12  with Robinhood and intend to use Robinhood's services in the future, injunctive relief is

13  warranted."  CAC ¶ 226; *see Milan,* 2020 WL 5760450, at *3 ("Defendant [] cannot so easily thwart

14  plaintiffs from seeking an injunction, which is 'the primary form of relief available under the UCL

15  to protect consumers from unfair business practices.'") (citing *Machlan v. Procter & Gamble*

16  *Company*, 77 F. Supp. 3d 954, 961 (N.D. Cal. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th

17  298, 319 (2009))).  If Robinhood has taken any meaningful action to remedy the calamitous stream

18  of malfeasance that has led to its current litigation posture and could nullify Plaintiffs' entitlement

19  to equitable relief, it can present those facts and defenses on the merits at summary judgment or

20  trial.  But until then, so long as Robinhood fails to provide Plaintiffs and Class members with the

21  services and protections they are contractually and legally obligated to provide, Plaintiffs are

22  entitled to pursue all forms of relief necessary to make them whole for the losses they have already

23  sustained and to ensure Robinhood does not cause them and other consumers continuing harm now

24  and in the future.

25  / / /

26  / / /

27  / / /

28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.  CONCLUSION

Plaintiffs respectfully request that the Court deny Robinhood's Motion in its entirety.  To the extent the Court grants any part of Robinhood's Motion, Plaintiffs request leave to amend.


DATED: November 20, 2020                    Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**          **COTCHETT, PITRE & MCCARTHY, LLP**


/s/ *Matthew B. George*                       /s/ *Anne Marie Murphy*
Matthew B. George (SBN 239322)            Anne Marie Murphy (SBN 202540)
Maia C. Kats (admitted *pro hac vice*)        Mark C. Molumphy (SBN 168009)
Laurence D. King (SBN 206423)            Noorjahan Rahman (SBN 330572)
Mario M. Choi (SBN 243409)               Tyson C. Redenbarger (SBN 294424)
1999 Harrison Street, Suite 1560           Julia Peng (SBN 318396)
Oakland, CA 94612                         San Francisco Airport Office Center
Telephone: 415-772-4700                   840 Malcolm Road, Suite 200
Facsimile: 415-772-4707                    Burlingame, CA 94010
*mgeorge@kaplanfox.com*                    Telephone: (650) 697-6000
*mkats@kaplanfox.com*                      Facsimile: (650) 697-0577
*lking@kaplanfox.com*                      *amurphy@cpmlegal.com*
*mchoi@kaplanfox.com*                      *mmolumphy@cpmlegal.com*
                                          *nrahman@cpmlegal.com*
                                          *tredenbarger@cpmlegal.com*
                                          *jpeng@cpmlegal.com*