C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Eric D. Monek Anderson (State Bar No. 320934)
emonekanderson@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Maeve L. O'Connor (appearance *pro hac vice*)
Elliot Greenfield (appearance *pro hac vice*)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE ROBINHOOD OUTAGE LITIGATION | Master File 3:20-cv-01626-JD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO (1) DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND (2) STRIKE THE CLASS ALLEGATIONS** <br><br> Date: January 7, 2021 <br> Time: 10:00 a.m. <br> Judge: Hon. James Donato <br> Ctrm: 11, 19th Floor |

Farella Braun + Martel LLP

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE – 20-cv-01626-JD

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ................................................................................................................................... 3

I.     PLAINTIFFS FAIL TO PLEAD AN INJURY-IN-FACT. ............................................... 3

     A.     Plaintiffs Fail to Allege How They Were Injured by the Outages. ....................... 3

     B.     Fleming Does Not Support Standing in This Case. .............................................. 5

II.    PLAINTIFFS' PROPOSED CLASS IS IMPERMISSIBLY OVERBROAD. ................... 7

III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ROBINHOOD MARKETS. ..................................................................................................................... 8

IV.   PLAINTIFFS LACK STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF. ................................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 3

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................ 2, 9, 10

*Corazon v. Aurora Loan Servs., LLC*,
    No. 11-cv-00542, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ............................................. 9

*Davidson v. United Servs. Auto. Ass'n*,
    No. 20-cv-00527, 2020 WL 4390379 (C.D. Cal. Mar. 10, 2020) ......................................... 10

*Feitelberg v. Credit Suisse First Boston, LLC*,
    134 Cal. App. 4th 997 (2005) ............................................................................................... 10

*Fleming v. Charles Schwab Corp.*,
    878 F.3d 1146 (9th Cir. 2017) ............................................................................... 1, 5, 6, 7, 10

*Henry v. Adventist Health Castle Med. Ctr.*,
    970 F.3d 1126 (9th Cir. 2020) ................................................................................................ 3

*In re Adobe Systems, Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) .................................................................................. 10

*In re Atossa Genetics Inc Sec. Litig.*,
    868 F.3d 784, 799 (9th Cir. 2017) .......................................................................................... 4

*In re Sagent Tech., Inc. Derivative Litig.*,
    278 F.Supp.2d 1079 (N.D. Cal. 2003) .................................................................................... 9

*Lim v. Charles Schwab & Co.*,
    No. 15-cv-02074, 2015 WL 7996475 (N.D. Cal. Dec. 7, 2015) ......................................... 5, 6

*Maa v. Carnival Corp. & PLC*,
    No. 20-cv-06341, 2020 WL 5633425 (C.D. Cal. Sept. 21, 2020) ...................................... 8, 9

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005) ................................................................................................. 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................................................................. 7

*Ogala v. Chevron Corp.*,
    No. 14-cv-173, 2014 WL 2089901 (N.D. Cal. May 19, 2014) ................................................. 9

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................................. 1, 4, 6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................................ 3

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ................................................................................................................ 8

*Updike v. Multnomah Cty.*,
    870 F.3d 939 (9th Cir. 2017) ................................................................................................ 9

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .............................................................................................................. 3

## PRELIMINARY STATEMENT

Plaintiffs' Opposition entirely misses the point. With respect to Plaintiffs' failure to plead Article III standing, it is not enough for Plaintiffs to assert – unsupported by any factual allegations in the CAC – that they suffered "thousands of dollars in damages directly attributable to Robinhood's service outages." (Opp'n 1.) Plaintiffs must state the basis of their alleged losses in the CAC so that the Court can determine whether those claimed losses are "concrete and particularized," as required by Article III, or instead too "conjectural or hypothetical" to confer standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Plaintiffs' allegations that they were unable to "make trades," without more, are not sufficient because trades in the stock market can result in gains or losses. If Plaintiffs attempted to open a new position by, say, purchasing shares of stock, they are not entitled to a presumption for purposes of standing that the trade would have been profitable. When would those shares have been sold and for what price? If Plaintiffs attempted to close an existing position by, say, selling shares of stock, were those shares subsequently sold and for what price? By failing to allege *any* information regarding the trades that they purportedly would have placed, Plaintiffs fail to satisfy their burden of pleading an injury-in-fact. That information is in the exclusive possession of Plaintiffs, and there is no reason they could not allege it in the CAC to establish standing.

The Opposition completely ignores this central point. Instead, Plaintiffs rely almost entirely on *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146 (9th Cir. 2017), but that decision does not support standing in this case. The plaintiffs in *Fleming* alleged that Schwab executed their trade orders at less than optimal prices, and they sought to recover the difference between the executed price and the best price available at the time. The injury-in-fact in *Fleming* was the price difference on trades that were actually executed. Here, by contrast, Plaintiffs seek purported losses from *unidentified* trades that they allegedly *would have placed* during the Outages, and they allege no facts indicating *how* they were harmed by their alleged inability to place those trades.

Plaintiffs' attempt to defend their overbroad proposed class – consisting of all Robinhood customers within the United States over a multi-year period – is equally problematic. Plaintiffs do not dispute that a class cannot contain members lacking Article III standing, yet they offer no

1 reason why mere status as a Robinhood customer would confer standing.  Plaintiffs' proposed
2 class includes vast numbers of customers who made no attempt to access their accounts or place
3 orders during the Outages and certainly suffered no cognizable injury.  It includes customers who
4 attempted to open a new position during the Outages but cannot show that they would have
5 profited from that investment.  And it includes customers who attempted to close an existing
6 position but cannot show that they were harmed by their inability to close that position during the
7 Outages.  With the narrow exception of options that expired during the Outages – limited to
8 options tracking the S&P 500 – customers attempting to close an existing position during the
9 Outages might well have done so at a later date at a more favorable price.  Nor do Plaintiffs offer
10 any justification for proposing a class spanning several years when their claims arise out of
11 outages occurring during three days in March 2020.  The proposed class is facially deficient and
12 should be rejected; Plaintiffs are required to allege a non-fail-safe class definition properly limited
13 to those individuals harmed by the Outages – if one exists.

14       With respect to their claims against Robinhood Markets, Plaintiffs rely on the incorrect
15 assertion that a parent company is "jointly responsible and liable" for alleged wrongful conduct of
16 its subsidiaries – an assertion that is contrary to fundamental principles of corporate law.
17 (Opp'n 12.)  Plaintiffs acknowledge that Robinhood Markets is not a party to the Customer
18 Agreement, and they do not dispute their failure to allege any facts indicating direct involvement
19 by Robinhood Markets or any facts that would support piercing the corporate veil.

20       As to the claims for prospective declaratory and injunctive relief, Plaintiffs identify no
21 allegations in the CAC supporting a conclusion that they face "a real and immediate threat of
22 repeated injury" from a potential future outage.  *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983).
23 Plaintiffs' ongoing contractual relationship with Robinhood is insufficient to meet that standard.
24 And Plaintiffs' allegation that Robinhood's trading platform has suffered additional outages (of
25 unspecified duration) since March 2020 undermines – rather than supports – Plaintiffs' position
26 because Plaintiffs do not allege any injury stemming from any of those subsequent outages.

27       The Court should dismiss the CAC in its entirety and strike the class allegations.
28

# ARGUMENT

As a threshold matter, Plaintiffs misstate the standard of review for a motion to dismiss for failure to state claim (Opp'n 5), as the Supreme Court has abrogated the "no set of facts" standard. *See Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1132 (9th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Furthermore, on a motion to dismiss, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## I. PLAINTIFFS FAIL TO PLEAD AN INJURY-IN-FACT.

### A. Plaintiffs Fail to Allege How They Were Injured by the Outages.

Plaintiffs have no response to the fact that an alleged inability to "make trades" does not plead an injury-in-fact sufficient to confer standing under Article III. (Opp'n 5-8; Mot. 5-6.) Instead, Plaintiffs simply point to conclusory allegations in the CAC that they suffered "thousands of dollars in monetary damages," and that those losses "are directly attributable" to the Outages. (Opp'n 5; *see also* Opp'n 7-8.) Those conclusory allegations are insufficient. Plaintiffs must "clearly and specifically set forth facts sufficient" to plead an injury-in-fact. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The mere fact that Robinhood's trading platform suffered outages, in and of itself, does not create any injury. Plaintiffs fail to meet their burden of pleading an injury-in-fact supporting their damage allegations because they do not allege what trades they attempted to make, much less how they were injured by their inability to make those trades.

Any purported injury stemming from the Outages necessarily relates to profits Plaintiffs allegedly *would have received* or losses they allegedly *would have avoided*. Without identifying the trades at issue – information in the exclusive possession of Plaintiffs – there is no basis for the Court to conclude that any alleged harm satisfies the constitutional requirement of an injury-in-

fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548.  To the extent that a Plaintiff attempted to open a new position during the Outages – for example, by purchasing shares of stock – Plaintiff's allegation of loss is speculative because whether that investment would have been profitable depends on whether and when the stock would subsequently have been sold, and at what price.  To the extent that a Plaintiff attempted to close an existing position during the Outages – for example, by selling shares of stock already owned – Plaintiff's allegation of loss is equally speculative in the absence of facts indicating whether and when the stock was subsequently sold, and at what price.

Consider, for example, the common stock of Apple, Inc. for the period of March through June 2020.[1]  The closing price of Apple common stock is shown below:



On March 2, 2020, during the first Outage, Apple stock traded in the range of $277.72 to $301.44 per share, closing at $298.81.  Had an investor purchased a share of Apple stock on March 2, she might have sold it for a loss later that month, when the stock price dipped down to a low of $224.37 per share, sold it for a profit in May or June, or continued to hold it.  If the investor was unable to purchase Apple stock on March 2, she would have had two months to do so at a better price.  In a different scenario, an investor who already owned Apple stock and was unable to sell that stock on March 2 might have sold at a lower price in March or April or a higher price in May

---

[1] The Court may take judicial notice of historical stock prices.  *See In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017).  Stock prices were obtained from Bloomberg L.P.  Apple stock underwent a 4-for-1 split in August 2020.

or June. In either case – opening a new position or closing an existing position – the inability to trade during the Outages does not itself establish an injury-in-fact. Even in this simple example, innumerable individual trading scenarios are possible, and merely alleging a loss of "thousands of dollars" purportedly "attributable" to the Outages provides no clue as to the basis of that claimed loss and no basis for the Court to determine if Plaintiffs suffered an injury-in-fact sufficient to confer Article III standing. (Opp'n 1.)

The closest that Plaintiffs get to pleading an injury-in-fact is the general allegation that some of them "held options contracts that expired, worthless, during the Outages." (Opp'n 4 (citing CAC ¶ 8).) Presumably, Plaintiffs are referring to options that track the S&P 500, as they are the only options that expired on March 2. To the extent that any of the Plaintiffs attempted but were unable to sell an existing options position that expired during the Outages and suffered an injury, nothing prevented those specific Plaintiffs from alleging those facts in the CAC.

### B.     *Fleming* Does Not Support Standing in This Case.

Plaintiffs rely almost entirely on the Ninth Circuit's decision in *Fleming*, but that decision does not support standing in this case. (Opp'n 5-7.) Critically, *Fleming* was not about hypothetical trades that might or might not have been profitable for the trader if executed. Instead, the court found standing based on the allegedly sub-optimal prices of trades that were *actually* placed and executed. The plaintiffs in *Fleming* alleged that Charles Schwab & Co, Inc. ("Schwab"), a securities brokerage firm, violated its duty of "best execution" when determining the trade execution venue to which customer orders would be routed. *Lim v. Charles Schwab & Co.*, No. 15-cv-02074, 2015 WL 7996475, at *1 (N.D. Cal. Dec. 7, 2015), *aff'd sub nom. Fleming v. Charles Schwab Corp.*, 878 F.3d 1146 (9th Cir. 2017). For a placed order, the duty of best execution "requires brokers to use reasonable diligence to ascertain the trading venue that will secure the most favorable possible price for the customer." *Id.* Schwab allegedly entered into an agreement with UBS Securities LLC ("UBS") that obligated Schwab to send 95% of its non-directed customer orders – those in which a customer did not specify an execution venue – to UBS without regard to whether UBS was a favorable venue for a particular trade. *Id.* at *2. The plaintiffs alleged that Schwab's failure to prioritize its duty of best execution meant that they

"fail[ed] to receive the most advantageous prices for their trades" because UBS executed trades "at prices less favorable than the best price available" in the market. *Id.* The district court noted that the "standing inquiry" presented a "close question," but it concluded that the plaintiffs had alleged an injury-in-fact. *Id.* at *4. Although the plaintiffs did not – because they could not – specify which of their trades were executed at sub-optimal prices, they did allege that their trades were subject to Schwab's execution practices and routed to UBS. *Id.*

The Ninth Circuit affirmed the district court's standing determination, holding that the "particularized and concrete" injury giving rise to standing was allegedly "higher execution prices than might have occurred with a different market center." *Fleming*, 878 F.3d at 1151.[2] The Ninth Circuit held that the plaintiffs were not required to identify the "particular trades that caused them losses" among the actually executed trades because "the complaints alleged at least some of the Plaintiffs' trades were more costly and less expeditious than they would have been if not routed to UBS" – objective facts subject to proof via discovery. *Id.* The Ninth Circuit held that those allegations satisfied the requirement reiterated in *Spokeo* that a plaintiff plead a "concrete and particularized" injury-in-fact. *Id.*

Contrary to Plaintiffs' assertion, the *Fleming* decision does not support standing in this case because the nature of the alleged injury is fundamentally different. *First*, *Fleming* addressed an injury arising from the price at which trades were executed rather than alleged losses arising from an alleged inability to make trades. The plaintiffs in *Fleming* sought to recover the difference between the price received and the best price available at the time for *actually executed* trades. Here, by contrast, Plaintiffs seek purported losses from *unidentified* trades that they allegedly *would have placed* during the Outages, and they do not allege how they were harmed by their alleged inability to make those trades.

*Second*, the injury in *Fleming* was concrete because the plaintiffs allegedly received prices that were less favorable than what was available at the time the trades were executed. Here, Plaintiffs' alleged injuries are speculative to the extent they depend on events subsequent to the

---

[2] Although one plaintiff alleged that he "missed opportunities to profit" when his trades failed to be executed, the court did not find standing based on that allegation. *Fleming*, 878 F.3d at 1151.

Farella Braun +
Martel LLP

6
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE – 20-cv-01626-JD

1  Outages, including movements in the price of the relevant securities and Plaintiffs' subsequent
2  trading.  For example, if Plaintiffs attempted to buy stock during the Outages, their claim of lost
3  investment profits would be entirely speculative.  Alternatively, if Plaintiffs attempted to sell stock
4  during the Outages and the stock price subsequently rose, they had an opportunity to sell at a
5  higher price and would not be injured.
6        *Third*, there was no need for the plaintiffs in *Fleming* to identify at the pleading stage
7  which of their executed trades did or did not receive best execution because all of their trades were
8  subject to the same allegedly unfair arrangement between Schwab and UBS.  Nor would it even
9  have been possible for the *Fleming* plaintiffs to allege that information, as it could be determined
10 only through discovery and a comparison of the price paid and the best price reasonably available
11 to a broker at the time.  Here, only Plaintiffs know what trades they allegedly attempted to place
12 and when they tried to place them, as well as the purported basis for their alleged losses.
13       Accordingly, nothing in *Fleming* addresses the standing arguments made here or supports a
14 conclusion that Plaintiffs have adequately pleaded an injury-in-fact.  Plaintiffs' reliance on
15 *Fleming* is misplaced.

16 **II.   PLAINTIFFS' PROPOSED CLASS IS IMPERMISSIBLY OVERBROAD.**

17       Having failed to plead standing even as to themselves, Plaintiffs are unable to justify their
18 absurdly overbroad class definition, which includes *all* Robinhood customers in the United States
19 over a multi-year time period – a group more than 10 million in number.  (Opp'n 8-12.)  Plaintiffs
20 do not dispute that "no class may be certified that contains members lacking Article III standing,"
21 *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), yet they fail to explain why
22 mere status as a Robinhood customer is sufficient to confer standing to assert claims related to the
23 Outages.  And Plaintiffs fail to respond entirely regarding their proposed class period – "the
24 respective statute of limitations for each claim" – when their claims relate only to the Outages on
25 March 2-3 and 9, 2020.  (CAC ¶¶ 87-175, 176 n.56.)  Plaintiffs' proposed class bears no rational
26 relationship to their claims and should be stricken.
27       Plaintiffs' proposed class undoubtedly includes large numbers of Robinhood customers
28 who made no attempt to access the trading application or place trades during the Outages – a

conclusion based not on "speculation" but on common sense – as well as many who might have attempted to place trades but did not suffer any cognizable injury. (Opp'n 8-9.) Whether Plaintiffs ultimately seek to certify a class under Rule 23(b)(3) or Rule 23(b)(2) is of no moment, as putative class members who did not suffer any cognizable injury do not have standing to seek money damages and Plaintiffs have not alleged any basis for declaratory and injunctive relief. (Opp'n 9-10; Mot. 9-10.) Plaintiffs' recitation of various types of damages that they purportedly might seek are not "additional theories of harm" subject to a different standing analysis. (Opp'n 9.) A Plaintiff who cannot articulate an injury-in-fact caused by the Outages does not have standing to seek any of those amounts – whether they are speculative trading losses, "Gold Membership dues" or Robinhood's alleged "increased capital fundraising." (Opp'n 9.)

Nor is it premature, at this stage of the litigation, to require Plaintiffs to propose a class that is limited to those with standing to assert claims related to the Outages. (Opp'n 10-12.) Courts have regularly granted motions to strike in similar circumstances, and Plaintiffs' attempt to distinguish those cases based on the particular claims at issue or other irrelevant factors falls flat. (Mot. 7 (citing cases granting motions to strike class allegations); Opp'n 10-11.) Any non-fail-safe class definition properly limited to those harmed by the Outages would be far narrower.[3] (Mot. 8.) Such a class definition would not only comport with the law but would serve to streamline this litigation should the case proceed beyond the pleading stage, including the scope of discovery, expert reports and class certification.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ROBINHOOD MARKETS.

Plaintiffs' argument concerning Robinhood Markets is based entirely on the incorrect premise that a parent corporation is "jointly responsible and liable" for the alleged actions of its subsidiaries. (Opp'n 12.) To the contrary, it is a bedrock principle of corporate law that a parent corporation is not liable for the actions of its subsidiaries absent some basis upon which to pierce the corporate veil. (Mot. 8-9.) *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Maa v.*

---

[3] Whether such a class – *e.g.*, customers who attempted but were unable to sell S&P options that expired during the Outages and suffered an injury – ultimately could be certified remains to be seen, but it would at least be appropriately tailored to Plaintiffs' claims and not invalid on its face.

1  *Carnival Corp. & PLC*, No. 20-cv-06341, 2020 WL 5633425, at *9-11 (C.D. Cal. Sept. 21, 2020)
2  (holding that "the mere fact that Carnival Corporation is the corporate parent of Princess is
3  insufficient by itself to impose any duty on Carnival" and dismissing claims against parent
4  corporation); *Ogala v. Chevron Corp.*, No. 14-cv-173, 2014 WL 2089901, at *2-3 (N.D. Cal. May
5  19, 2014) (stating that plaintiffs "must plead facts which, if true, would plausibly render [parent
6  corporations] liable for [subsidiary's] acts" and dismissing claims against parent corporations).
7  Plaintiffs' half-hearted attempt to limit this core principle to cases involving fraud, foreign
8  subsidiaries or environmental claims is utterly without merit.  (Opp'n 12-13.)

9      Plaintiffs do not dispute their failure to allege any basis upon which to pierce the corporate
10  separateness between Robinhood Markets and its subsidiaries, Robinhood Financial and
11  Robinhood Securities, and Plaintiffs' conclusory assertion that "all factual allegations are
12  attributable to each Defendant" is insufficient to state a claim against Robinhood Markets, with
13  which they have no contractual or other relationship.  (Opp'n at 12.)  *See Corazon v. Aurora Loan*
14  *Servs., LLC*, No. 11-cv-00542, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011)
15  ("Undifferentiated pleading against multiple defendants is improper.") (internal quotations
16  omitted); *In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003)
17  ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual
18  defendant or defendants were responsible for which alleged wrongful act.").

### IV.  PLAINTIFFS LACK STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF.

21      Contrary to Plaintiffs' assertion, neither the mere existence of an ongoing contractual
22  relationship with Robinhood nor an allegation of past harm is sufficient to confer standing as to
23  claims for prospective declaratory and injunctive relief.  (Opp'n 13-14; Mot. 9-10.)  Instead,
24  Plaintiffs must demonstrate that they face "a real and immediate threat of repeated injury." *Lyons*,
25  461 U.S. at 102; *see also Updike v. Multnomah Cty.*, 870 F.3d 939, 948 (9th Cir. 2017) (holding
26  plaintiff lacked standing because "past injury is insufficient to establish that the risk of recurring
27  injury is more than speculative"); *see also Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 465
28  (2005) (prospective injunctive relief under UCL "requires a threat that the misconduct to be

Farella Braun +
Martel LLP

9
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND STRIKE – 20-cv-01626-JD

1  enjoined is likely to be repeated in the future"); *Feitelberg v. Credit Suisse First Boston, LLC*, 134
2  Cal. App. 4th 997, 1012 (2005) (same). Plaintiffs bear the burden to establish these elements;
3  there is no such thing as an "entitlement to equitable relief." (Opp'n 14.)[4]

4  Plaintiffs' conclusory assertions of "ongoing harm" are insufficient to satisfy their burden,
5  and they are not entitled to a presumption that Robinhood has not remedied the causes of the
6  Outages. (Opp'n 13-14.) Nor can Plaintiffs satisfy their burden based on the allegation that
7  Robinhood's trading platform has suffered 47 additional outages since March 2020. (Opp'n 13
8  (citing CAC ¶¶ 4, 70).) The *New York Times* article on which Plaintiffs base that allegation relies
9  on data from Downdetector.com, which is described as tracking *website* reliability, not the
10 functionality of Robinhood's trading platform. (CAC ¶¶ 4, 70.) Notably, Plaintiffs do not allege
11 whether any of those supposed outages were widespread or significant in duration. If anything,
12 the allegation of additional outages undermines their position because none of the 16 Plaintiffs
13 allege that they were harmed by any of them.

14 Plaintiffs turn again to *Fleming*, but that decision does not help them. (Opp'n 13.) In
15 *Fleming*, the Ninth Circuit held that the plaintiffs had standing to seek injunctive relief because
16 they "alleged that the challenged practices continue" – *i.e.*, any future trade orders submitted by
17 the plaintiffs necessarily would be subject to the same allegedly unfair arrangement between
18 Schwab and UBS. *Fleming*, 878 F.3d at 1151 n.1. Here, by contrast, Plaintiffs do not – and
19 cannot – allege "continuing, present adverse effects" arising out of the Outages. *Id.* Plaintiffs
20 offer only speculation of hypothetical future trading losses from a hypothetical future outage and
21 not, as required, "a real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102.

## **CONCLUSION**

23 For the reasons set forth herein, the Court should dismiss the CAC in its entirety and strike
24 the class allegations.

---

[4] The cases cited by Plaintiffs are not to the contrary. (Opp'n 14.) *See In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1220-23 (N.D. Cal. 2014) (holding that plaintiffs demonstrated "that they face a substantial risk of future harm"); *Davidson v. United Servs. Auto. Ass'n*, No. 20-cv-00527, 2020 WL 4390379, at *3 (C.D. Cal. Mar. 10, 2020) (not addressing the standing requirement but only whether declaratory relief was duplicative of contract claim).

| | | |
|---|---|---|
| 1 | Dated: December 21, 2020 | FARELLA BRAUN + MARTEL LLP |
| 2 | | |
| 3 | | By: */s/ C. Brandon Wisoff* |
| | | C. Brandon Wisoff |
| 4 | | |
| 5 | | Attorneys for Defendants |
| | | ROBINHOOD MARKETS, INC.; |
| 6 | | ROBINHOOD FINANCIAL LLC; |
| | | ROBINHOOD SECURITIES, LLC |