Karen P. Kimmey (State Bar No. 173284)
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
kkimmey@fbm.com

Maeve L. O'Connor (appearance pro hac vice)
Elliot Greenfield (appearance pro hac vice)
Brandon Fetzer (appearance pro hac vice)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ROBINHOOD OUTAGE LITIGATION | Master File No. 3:20-cv-01626-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE PORTIONS OF THE TESTIMONY OF PETER U. VINELLA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  May 12, 2022<br>Time: 10:00 a.m.<br>Judge:  Hon. James Donato<br>Ctrm:  11, 19th Floor |

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 2

STATEMENT OF ISSUES TO BE DECIDED ................................................................................. 2

PRELIMINARY STATEMENT ......................................................................................................... 2

ARGUMENT ......................................................................................................................................... 4

I.     LEGAL STANDARD. ............................................................................................................ 4

II.    VINELLA'S OPINION CONCERNING ROBINHOOD'S RESPONSIBILITY FOR THE OUTAGES SHOULD BE EXCLUDED. ................................................................... 4

III.   VINELLA'S OPINIONS CONCERNING "ROBINHOOD'S VISION OF THE COMPANY" SHOULD BE EXCLUDED. ........................................................................... 6

       A.   Vinella Is Wholly Unqualified to Offer an Opinion on Robinhood's Corporate Form. ......................................................................................................... 6

       B.   Vinella's Opinions About Robinhood's Business Objectives and Corporate Culture Are Unreliable and Should Be Excluded. ................................................... 7

            1.   Vinella's Opinions About the Supposed Goals of Robinhood and its Investors Are Unreliable and Should be Excluded. ........................................ 7

            2.   Vinella's Opinions About Robinhood's Culture Are Unreliable and Should be Excluded. ......................................................................................... 8

       C.   Vinella's Opinions as to Robinhood's Status as an Innovator and on its "Go It Alone Strategy" Are Unreliable and Should Be Excluded. ......................... 9

IV.    VINELLA'S OPINIONS AS TO ROBINHOOD'S MANAGEMENT AND STAFF'S EXPERIENCE SHOULD BE EXCLUDED. ...................................................... 11

V.     VINELLA'S OPINION THAT THE OUTAGES COULD HAVE BEEN PREVENTED SHOULD BE EXCLUDED. ....................................................................... 12

VI.    VINELLA'S OPINIONS REGARDING THE CONSEQUENCES OF THE OUTAGES SHOULD BE EXCLUDED. ............................................................................ 14

VII.   VINELLA'S NARRATION OF THE FACTS SHOULD BE EXCLUDED. .................... 14

VIII.  VINELLA'S REMEDIATION PLAN IS UNRELIABLE AND SHOULD BE EXCLUDED. ......................................................................................................................... 15

CONCLUSION .................................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Airbus DS Optronics GmbH v. Nivisys LLC*,
2017 WL 1197105 (D. Ariz. Mar. 31, 2017) ......................................................................... 6

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
2020 WL 2553181 (S.D. Cal. May 20, 2020),
*aff'd,* 9 F.4th 1102 (9th Cir. 2021) ............................................................................... 14, 15

*Baker v. SeaWorld Entm't, Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) ................................................................................ 5

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) ...................................................................... 6

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ...................................................................................................... 4, 7

*Erhart v. BofI Holding, Inc.*,
445 F. Supp. 3d 831 (S.D. Cal. 2020) ................................................................................ 4

*Est. of Gonzales v. Hickman*,
2007 WL 3237727 (C.D. Cal. May 30, 2007) .................................................................. 10

*Fontem Ventures, B.V. v. NJOY, Inc.*,
2015 WL 12743861 (C.D. Cal. Oct. 22, 2015) .................................................................. 9

*Garity v. APWU-AFL-CIO*,
2017 WL 3496464 (D. Nev. Aug. 15, 2017) .................................................................... 14

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......................................................................................... 9, 10, 11

*Grodzitsky v. Am. Honda Motor Co.*,
957 F.3d 979 (9th Cir. 2020) ............................................................................................ 4

*Highland Cap. Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ............................................................................. 15

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015) ................................................................................ 7

*In re Novatel Wireless Sec. Litig.*,
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) .................................................................... 5

*In re Rezulin*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ......................................................................... 5, 15

*Jinro Am. Inc. v. Secure Invs., Inc.*,
   266 F.3d 993 (9th Cir. 2001), *amended on*
   *denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) ........................................................................... 8

*Johns v. Bayer Corp.*,
   2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ................................................................. 14, 15

*Krys v. Aaron*,
   112 F. Supp. 3d 181 (D.N.J. 2015) ................................................................................. 7, 12

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................... 4

*Lassalle v. McNeilus Truck & Mfg., Inc.*,
   2017 WL 3115141 (N.D. Cal. July 21, 2017) ..................................................................... 10

*Lust v. Merrell Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996)...................................................................................................... 4

*Mariscal v. Graco, Inc.*,
   2014 WL 4245949 (N.D. Cal. Aug. 27, 2014)........................................................................ 9

*McClellan v. I-Flow Corp.*,
   710 F. Supp. 2d 1092 (D. Or. 2010)...................................................................................... 13

*Michaels v. Taco Bell Corp.*,
   2012 WL 4507953 (D. Or. Sept. 27, 2012)........................................................................... 14

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008)................................................................................................. 6

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ................................................................. 7, 13

*Recreational Devs. of Phoenix, Inc. v. City of Phoenix*,
   220 F. Supp. 2d 1054 (D. Ariz. 2002), *aff'd sub nom. Recreational*
   *Devs. of Phoenix v. City of Phoenix*, 77 F. App'x 983 (9th Cir. 2003)............................8-9, 13

*S.E.C. v. Daifotis*,
   2012 WL 2051193 (N.D. Cal. June 7, 2012) ....................................................................... 12

*Samuels v. Holland Am. Line-USA Inc.*,
   656 F.3d 948 (9th Cir. 2011)........................................................................................... 6, 15

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   2012 WL 8134012 (C.D. Cal. Apr. 27, 2012)...................................................................... 15

*Stone Brewing Co., LLC v. MillerCoors LLC*,
   2020 WL 907060 (S.D. Cal. Feb. 25, 2020) .......................................................................... 5

iii

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA

38567\14637175.2                  20-cv-01626-JD

*Thompson v. Dignity Health*,
364 F. Supp. 3d 1046 (D. Ariz. 2019), *aff'd and remanded on other grounds*, 823 F. App'x 527 (9th Cir. 2020) .............................................................. 11

*Young v. Cree Inc.*,
2021 WL 292549 (N.D. Cal. Jan. 28, 2021) .......................................................... 9

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 ......................................................................... 1, 2, 4, 13

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD
38567\14637175.2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 12, 2022, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 11, Nineteenth Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, United States District Judge, Defendants Robinhood Financial LLC, Robinhood Markets, Inc. and Robinhood Securities, LLC (collectively, "Robinhood" or "Defendants") will and hereby do move to exclude the testimony of Peter U. Vinella as it relates to Sections III, IV, VI, VII and Exhibit D of his June 25, 2021 report (the "Vinella Report") pursuant to Federal Rule of Evidence 702. Defendants' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Brandon Fetzer, filed concurrently, and all pleadings and papers filed in this matter, and upon such other matters as may be presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Robinhood seeks an order excluding Vinella's testimony as it relates to Sections III, IV, VI, VII and Exhibit D of the Vinella Report.

38567\14637175.2

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants respectfully submit this memorandum in support of their motion to exclude portions of Vinella's testimony pursuant to Federal Rule of Evidence 702.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Vinella's testimony relating to Sections III, IV, VI, VII and Exhibit D of the Vinella Report should be excluded pursuant to Federal Rule of Evidence 702.

## PRELIMINARY STATEMENT

The Vinella Report is riddled with opinions that invade the fact-finding role of the jury, are unsupported by sufficient facts or data and exceed Vinella's supposed area of expertise.  While Vinella is offered as an expert in generally accepted practices in the financial services industry as they relate to the outages to Robinhood's trading platform in March 2020 (the "Outages"), his report dramatically exceeds this purported expertise – speculating on the mindset of Robinhood and its employees, opining on the qualifications of those employees and needlessly and unhelpfully providing his own interpretation of deposition testimony, documents and other public statements.  These opinions should be excluded for multiple reasons.

*First*, Vinella's opinion that "Robinhood Was Solely Responsible for the Occurrence and Severity of the Outages" should be excluded because it is based solely on his subjective interpretation of public statements and deposition testimony.  The jury does not need expert testimony to understand those materials, let alone the facially incorrect interpretation that Vinella offers.

*Second*, Vinella's opinion that "Robinhood's Vision of the Company Was (and Is) Skewed Toward the Big Payoff Following an Initial Public Offering Rather Than on Providing Quality Services to its Customers" is filled with assertions that either exceed the bounds of his expertise or that are based on insufficient facts or data.  Vinella is plainly unqualified to offer an opinion on Robinhood's corporate form or motives, neither of which are the appropriate subjects for expert testimony.  And Vinella's opinions about Robinhood's corporate culture are no more than sweeping generalizations drawn from anecdotal evidence and his own subjective beliefs about Silicon Valley culture.

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

*Third*, Vinella's opinion that "Robinhood's Management and Staff Lacked (and Continues to Lack) the Necessary Experience, Knowledge, and Skill to Operate an Online Retail Brokerage" is not based on a reliable methodology or sufficient facts and data.  Vinella has never met or spoken with anyone at Robinhood and thus has no basis for passing judgment on management and staff's qualifications or job performance.

*Fourth*, Vinella's opinion that "The Outages Could (and Most Likely Would) Have Been Prevented Had Robinhood Followed Generally Accepted Brokerage Industry Customs, Practices, and Standards of Care" is an impermissible legal conclusion.  Vinella is also unqualified to offer such an opinion because he did not investigate the causes of the Outages or examine Robinhood's technology "in any depth."

*Fifth*, Vinella's opinion that "The Outages Resulted in Negative Consequences and Outcomes to Robinhood's Customers" contains improper legal conclusions and is unhelpful to the jury, which can easily read the reports that Vinella cuts and pastes into his report and draw its own conclusions about the severity of the Outages.  Vinella is neither an economist nor a psychologist and thus his opinions regarding whether any customer was harmed by the Outages are inappropriate.

*Sixth*, Vinella's narration of the facts in the background section of the Vinella Report should be excluded as unhelpful to the jury, which is capable of construing the facts presented to it through testimony and documentary evidence.

*Seventh*, Vinella's proposed remediation plan should be excluded because he admitted during his deposition that he has no knowledge regarding how Robinhood and its technology operate today, which renders his opinions on the changes Robinhood should supposedly make irrelevant and unhelpful.

The Court should exclude Vinella's testimony as it relates to Sections III, IV, VI, VII and Exhibit D of his report.

## ARGUMENT

## I.    LEGAL STANDARD.

Trial courts are charged with serving as gatekeepers to exclude unreliable, irrelevant or unnecessary expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984-85 (9th Cir. 2020).  "[U]nder the Rules the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable."  *Daubert*, 509 U.S. at 589.  *Daubert*'s admissibility standard applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  *Kumho Tire Co.*, 526 U.S. at 141.

The admissibility of expert testimony is governed primarily by Federal Rule of Evidence 702, which allows expert testimony to be admitted only if the trial court determines that several requirements have been met:  (1) the witness must be sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge must "assist the trier of fact" either "to understand the evidence" or "to determine a fact in issue"; (3) the testimony must be "based on sufficient facts and data"; (4) the testimony must be "the product of reliable principles and methods"; and (5) the expert must reliably apply the principles and methods to the facts of the case.  *Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020); Fed. R. Evid. 702.  As the parties offering the testimony, Plaintiffs bear the burden of establishing that their proposed expert and his testimony meet the requirements of Rule 702.  *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## II.    VINELLA'S OPINION CONCERNING ROBINHOOD'S RESPONSIBILITY FOR THE OUTAGES SHOULD BE EXCLUDED.[1]

Testimony relating to Section VI(A) of Vinella's Report – "By Its Own Admission, Robinhood Was Solely Responsible for the Occurrence and Severity of the Outages" – should be excluded because it is also based on nothing more than Vinella's subjective interpretation of

---

[1]    Section III of Vinella's Report summarizes the opinions he provides in Sections IV, VI and VII and should be excluded for the same reasons discussed throughout.

4

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

public statements and deposition testimony.  *See In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at \*4-5 (S.D. Cal. Nov. 17, 2011) (excluding expert testimony because "no specialized or technical knowhow is required to read and draw conclusions from . . . internal documents and testimony").  These conclusions are findings of fact that are within the domain of a jury, not an expert opinion.

The jury does not need Vinella's help understanding Robinhood's public statements, and it certainly does not need an expert opinion as to what those statements mean or whether they constitute an "admission" of "responsibility."  (Ex. O ("Vinella Rep.") ¶ 60(a), (b).)[2]  Allowing Vinella to offer his interpretation of these materials would run the risk of "unduly influencing" jurors who are more than "capable of reviewing these same documents and drawing their own inferences."  *Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 912-13 (S.D. Cal. 2019).

Nor should the jury be subjected to Vinella's opinion about the preventability of the Outages because it is based on a disputed interpretation of Adam Wolff's deposition testimony.  (Vinella Rep. ¶ 60(d).)  Mr. Wolff will be able to testify as to his own statements and be subject to cross examination at trial.  Vinella's interpretation is wholly unnecessary.  Indeed, Vinella admitted that his understanding of Wolff's testimony was based merely on his attempt at "interpreting" what Wolff was "implying," which is clearly outside of the bounds of expert testimony.  (Ex. P ("Vinella Tr.") 85:12-21.)  *See Stone Brewing Co., LLC v. MillerCoors LLC*, 2020 WL 907060, at \*4 (S.D. Cal. Feb. 25, 2020) ("[T]he opinions of [expert] witnesses on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.") (quoting *In re Rezulin*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)).  Vinella's selective quotation of Wolff's testimony highlights the wisdom of this rule:  although Vinella quotes a short section of Wolff's testimony to suggest that the March 2-3 Outage was preventable, he omits the next portion, in which Wolff stated that he did not know how the Outage could have been prevented or what actions he could have taken to prevent it.  (Vinella Tr. 83:17-84:13.)

---

[2]    Citations to "Ex. __" refer to the exhibits attached to the accompanying Declaration of Brandon Fetzer.

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

### III. VINELLA'S OPINIONS CONCERNING "ROBINHOOD'S VISION OF THE COMPANY" SHOULD BE EXCLUDED.

Testimony relating to Section VI(B) of the Vinella Report – "Robinhood's Vision of the Company Was (and Is) Skewed Toward the Big Payoff Following an Initial Public Offering Rather Than on Providing Quality Services to Its Customers" – should be excluded because it is filled with assertions that Vinella is unqualified to make or that are unreliable because they were based on insufficient facts or data.

#### A. Vinella Is Wholly Unqualified to Offer an Opinion on Robinhood's Corporate Form.

Testimony regarding Vinella's belief that Defendants operate as a "single, integrated company" (Section VI(B)(1)) should be excluded because Defendants' corporate form is a legal question upon which expert testimony is inappropriate. *See Airbus DS Optronics GmbH v. Nivisys LLC*, 2017 WL 1197105, at *3 (D. Ariz. Mar. 31, 2017) (expert testimony regarding successor liability and alter ego inadmissible); *see also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.").

Vinella also is wholly unqualified to offer an opinion on this topic. Simply working at various companies throughout his career does not qualify him to provide his views on Robinhood's corporate form under the guise of expert testimony. *See CZ Servs., Inc. v. Express Scripts Holding Co.*, 2020 WL 4518978, at *4 (N.D. Cal. Aug. 5, 2020) (excluding expert's opinions about corporate structure because the expert's "background as a pharmacy executive does not qualify him to give testimony on issues of corporate structure and competition").

Nor is Vinella's opinion based on sufficient facts or data. His conclusion is based on nothing more than a review of publicly available information and Robinhood's website, which is plainly insufficient to offer any opinions on the topic. *See Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011) (affirming exclusion of expert declaration based on "little more than a quick internet search . . . and a few telephone calls").

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
38567\14637175.2                    20-cv-01626-JD

**B.      Vinella's Opinions About Robinhood's Business Objectives and Corporate Culture Are Unreliable and Should Be Excluded.**

Testimony regarding Section VI(B)(3) of the Vinella Report – "Robinhood's Corporate Culture Was (and Is) Not Aligned with the Interests of Its Customers" – should be excluded as unreliable and unhelpful because it is based on sweeping and unfounded generalizations, anecdotal evidence, and, apparently, mindreading. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind.") (internal citations omitted); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 939 (N.D. Cal. 2015) ("Reliable testimony must be grounded in the methods and procedures of science and signify something beyond 'subjective belief or unsupported speculation.'") (quoting *Daubert*, 509 U.S. at 590).  At least one court has previously excluded this type of improper intent and state-of-mind testimony from Vinella himself.  *See Krys v. Aaron*, 112 F. Supp. 3d 181, 204 (D.N.J. 2015) (excluding Vinella's testimony where it was based on "Defendants' state of mind and/or subjective intent").

**1.      Vinella's Opinions About the Supposed Goals of Robinhood and its Investors Are Unreliable and Should be Excluded.**

Vinella's opinions about Robinhood's purported business objectives and decisions are based on pure conjecture.  Vinella impermissibly speculates about the "view[s]" of Robinhood employees and investors and as to "Robinhood's management and staff's principal objective," concluding that Robinhood prioritized "a major payout after an IPO" over "safe and sound operations" to its customers.  (Vinella Rep. ¶ 72.)  *See Oracle*, 2018 WL 6511146, at *3 (excluding expert opinions about defendants' customers' motives and intent on the grounds that admitting them would impermissibly "substitut[e] the expert's judgment for the jury's").  Vinella admitted that these conclusions were merely based on public statements and documents he reviewed – materials that the jury can interpret without assistance.  (Vinella Tr. 99:10-100:9, 108:4-16.)  Vinella's statements about how venture capital investors might view Robinhood and what they might "prefer" Robinhood to do are similarly unhelpful and speculative.  (Vinella Rep. ¶¶ 74, 78.)

Vinella's assertion that Robinhood "might have faced" a "dilemma" between product

7

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

development and reliability and that it "chose the former" should also be excluded because it is pure speculation. (Vinella Rep. ¶ 79.) Vinella admitted during his deposition that he did not know whether Robinhood actually faced such a "dilemma." (Vinella Tr. 148:5-15.) His conclusion is based solely on broad generalizations about the activities of venture capitalists. (Vinella Rep. ¶¶ 78-79.)

### 2. Vinella's Opinions About Robinhood's Culture Are Unreliable and Should be Excluded.

Vinella's opinions about Robinhood's culture are impermissibly filled with sweeping generalizations based merely on (1) broad stereotypes about Silicon Valley; and (2) anecdotal evidence drawn from a handful of deposition transcripts, neither of which provides a reliable methodology for understanding a corporation's culture. (Vinella Rep. ¶¶ 72-83.) Vinella asserts that Robinhood had a "cowboy culture" (Vinella Rep. ¶ 74 & n.48) that led it to prioritize an initial public offering over stable systems, but his assertions about that culture are based on his personal views on Silicon Valley in general and his interpretation of Robinhood's media coverage. (Vinella Tr. 99:10-14 (stating that he relied "a lot on" CEO's public statements), 108:4-16 (stating that Robinhood's expectations in a public offering were "implied by Robinhood" and "portrayed in the media by Robinhood").) Such information cannot possibly provide a reliable basis for forming an opinion about Robinhood's culture. *See Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001), *amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (expert's "sweeping generalizations" about Korean companies and culture "derived from his limited experience and knowledge – plainly a skewed sample – were unreliable"). Indeed, Vinella acknowledged during his deposition that "cultural assessments" involve interviews, yet he did not conduct any, speak personally to anyone who works or worked at Robinhood, visit Robinhood's offices, or follow any discernible methodology in developing his opinion. (Vinella Tr. 131:13-132:5.)

The anecdotal evidence upon which he relies as a substitute for the typical process – in the form of a few deposition transcripts – provides an insufficient basis to form an expert opinion. *See Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 220 F. Supp. 2d 1054, 1061 (D. Ariz.

8

2002), *aff'd sub nom. Recreational Devs. of Phoenix v. City of Phoenix*, 77 F. App'x 983 (9th Cir. 2003) (excluding expert report as "devoid of any reliable methodology," "non-systematic," and "non-generalizable" where it was based on "random interviews"); *Mariscal v. Graco, Inc.*, 2014 WL 4245949, at *7 (N.D. Cal. Aug. 27, 2014) (explaining that courts may "exclude witness testimony that is based on unsupported assumptions and unsound extrapolation") (internal citations omitted); *Young v. Cree Inc.*, 2021 WL 292549, at *5-6, *10 (N.D. Cal. Jan. 28, 2021) (excluding expert opinion where it erroneously assumed that testing that revealed an issue with a handful of light bulbs could be extrapolated to other varying types of bulbs sold by defendant). Vinella's opinions about Robinhood's objectives and culture should be excluded.

### C. Vinella's Opinions as to Robinhood's Status as an Innovator and on its "Go It Alone Strategy" Are Unreliable and Should Be Excluded.

Testimony regarding Sections VI(B)(2) and (B)(4) – "Robinhood Is Not the Innovator that It Claims to Be" and "Robinhood Did Not Have to Adopt a 'Go It Alone' Technology Development Strategy" – should be excluded because it is not reliably based on sufficient facts or data. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Vinella's own deposition testimony makes clear that he lacks sufficient knowledge about Robinhood's technology or staffing to opine on these topics.

*First*, Vinella's belief that Defendants' systems are not innovative and "not materially different than those offered by their competitors" should be excluded because he admitted at his deposition that he has no idea about whether Robinhood's competitors utilize the same systems as Robinhood. (Vinella Rep. ¶ 71; Vinella Tr. 96:1-14.) He further acknowledged that he does not know whether Robinhood's competitors have experienced outages, let alone any reasons for those outages, since 2018. (Vinella Tr. 148:16-149:21.) Thus, the comparisons Vinella attempts to draw between Robinhood's systems and those of its competitors have no basis in fact. *See Fontem Ventures, B.V. v. NJOY, Inc.*, 2015 WL 12743861, at *8 (C.D. Cal. Oct. 22, 2015) (expert's "repeated deposition responses indicating his lack of knowledge regarding the accused products demonstrates that he does not have this requisite knowledge").

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD
38567\14637175.2

*Second*, Vinella's testimony that Robinhood employed a "go[] it alone" strategy and "buil[t] virtually all of its technology on its own" should also be excluded for lacking any factual basis. (Vinella Rep. ¶¶ 84-85.) Vinella acknowledged during his deposition that Robinhood did not build all of its technology from scratch and that Robinhood indeed employed third-party software. (Vinella Tr. 164:18-22, 166:8-12,168:21-169:2.) Vinella's conclusion is clearly undermined by the evidence, including his own testimony, and should therefore be excluded. *See Lassalle v. McNeilus Truck & Mfg., Inc.*, 2017 WL 3115141, at *5 (N.D. Cal. July 21, 2017) (excluding expert report as unreliable in part because of "factual errors" and "mischaracterizations"); *Est. of Gonzales v. Hickman*, 2007 WL 3237727, at *3 n.34 (C.D. Cal. May 30, 2007) (noting that expert testimony is inadmissible "when the facts upon which the expert bases his testimony contradict the evidence") (internal citations omitted).

Vinella uses this unsupported conclusion as the basis for the claim that because Robinhood supposedly built its systems "from scratch," it "divert[ed] resources that could be used to remedy the many problems with Robinhood's existing technology." (Vinella Rep. ¶ 84.) Vinella does not claim to have any information about the resources available to Robinhood or how such resources were allocated. To the extent that Robinhood built technology itself, any suggestion that doing so diverted resources or somehow degraded Robinhood's infrastructure is speculative and unreliable.

*Third*, Vinella did not have sufficient facts or data to conclude that Robinhood's engineering department was not adequately staffed. While Vinella suggested that, instead of "going it alone," "Robinhood could have hired a reasonable number of staff" and "Robinhood could have employed consultants," he admitted during his deposition that he does not know how many engineers Robinhood employs or whether Robinhood uses consultants. (Vinella Rep. ¶ 85(c)-(d); Vinella Tr. 171:5-6, 173:14-18.) Such testimony demonstrates that Vinella did not have sufficient data to draw reliable conclusions about the engineering department's staffing or use of consultants.

Ultimately, because there is "too great an analytical gap between the data and the opinion proffered," Vinella's opinions about Robinhood's technology strategy and the staffing of its engineering department should be excluded. *Joiner*, 522 U.S. at 146.

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
38567\14637175.2                      20-cv-01626-JD

## IV.     VINELLA'S OPINIONS AS TO ROBINHOOD'S MANAGEMENT AND STAFF'S EXPERIENCE SHOULD BE EXCLUDED.

Testimony regarding Section VI(C) of the Vinella Report – "Robinhood's Management and Staff Lacked (and Continues to Lack) the Necessary Experience, Knowledge, and Skill to Operate an Online Retail Brokerage" – should be excluded because Vinella's views are not based on a reliable methodology or sufficient facts and data. *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Vinella admitted during his deposition that he did not know "what the qualifications of the existing Robinhood engineers are or not." (Vinella Tr. 137:14-18.) Vinella's limited review of some LinkedIn profiles, a handful of documents produced during discovery and other publicly available information does not provide a sufficient basis to opine on the adequacy of the experience of Robinhood's employees or their job performance. *See Thompson v. Dignity Health*, 364 F. Supp. 3d 1046, 1054 (D. Ariz. 2019), *aff'd and remanded on other grounds*, 823 F. App'x 527 (9th Cir. 2020) (excluding expert testimony about a medical resident program where the expert "did not review any records regarding [the hospital's] neurology residency program or its standards, aside from an online search of its residents"). Vinella has never met or spoken with anyone at Robinhood about the nature of their prior experience and training or their job performance. He did not conduct a comprehensive survey or representative sampling of Robinhood's engineers. His assumption that the limited Robinhood employees whose LinkedIn profiles he reviewed who had not previously worked at a brick-and-mortar brokerage were necessarily unqualified at the time of the Outages – without even attempting to evaluate their actual job experiences, training or other qualifications – is utterly unreliable.

Vinella's reliance on snippets of deposition testimony to offer broad pronouncements about management's qualifications is similarly flawed. For example, Vinella concludes that "virtually the entire Robinhood management team lack[s] the experience and knowledge necessary to operate a brokerage" based on cherry-picked deposition testimony from RHF's COO, David Dusseault, because Dusseault supposedly failed to recall certain regulatory investigations.

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD
38567\14637175.2

(Vinella Rep. ¶ 94.)  Dusseault's misinterpretation of poorly worded deposition questions regarding those investigations (which have a specific definition in the brokerage industry) does not provide adequate grounds for any expert opinion let alone one about the entirety of management, particularly where Vinella acknowledges that Dusseault later clarified his answer.  (Vinella Rep. ¶ 93(b) n.65.)

## V.    VINELLA'S OPINION THAT THE OUTAGES COULD HAVE BEEN PREVENTED SHOULD BE EXCLUDED.

Testimony regarding Section VI(D) of the Vinella Report – "The Outages Could (and Most Likely Would) Have Been Prevented Had Robinhood Followed Generally Accepted Brokerage Industry Customs, Practices, and Standards of Care" – should be excluded because it consists of nothing more than impermissible legal conclusions and unfounded speculation.  While testimony as to the applicable industry standard may be permissible, Vinella's opinion that Robinhood's technology is "simply not up to even the most minimal industry standard" is not (Vinella Rep. ¶ 129), because it impermissibly "render[s] findings on the issue of whether [Robinhood's] actual conduct was in compliance with industry standards."  *S.E.C. v. Daifotis*, 2012 WL 2051193, at \*4 (N.D. Cal. June 7, 2012) (granting motion to exclude expert testimony regarding whether defendant's conduct was consistent with industry practice); *Krys*, 112 F. Supp. 3d at 203 (excluding Vinella's opinion where he "explicitly reache[d] an ultimate legal conclusion concerning the severity and extent of Defendants' alleged deficiency" as compared to the industry standard).

Vinella's supposed bases for reaching this impermissible legal conclusion are also unreliable and deeply flawed.  *First*, Vinella should be barred from offering an opinion as to the foreseeability and predictability of the Outages because he "was not asked to investigate the causes of the technology outages," has not "looked at [Robinhood's] technology in any depth," relied only on "limited descriptions" of Robinhood's technology in "deposition testimony" and "didn't actually see" certain information about their causes.  (Vinella Tr. 81:4-11; 96:15-20; 151:23-152:9.)  Someone who does not know what caused the Outages could not possibly be in a position to opine on their foreseeability.

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA

*Second*, Vinella's opinion that the Outages were caused in part by "a poor corporate culture" is unreliable for the same reasons discussed in Section III(B)(2) of this brief.  Vinella lacks any reliable basis for opining on Robinhood's corporate culture, let alone for determining that that culture somehow "caused" the Outages, which is a legal determination.  Moreover, his conclusions are based solely on anecdotal evidence – a handful of deposition transcripts and limited documents – which do not provide sufficient grounds to form a general opinion about an entire company's culture.  *Recreational Devs. of Phoenix, Inc.*, 220 F. Supp. 2d at 1061 ("[A]necdotal evidence derived from random interviews with swingers and club owners is, by definition, non-systematic and non-generalizable.").  Indeed, nearly all of Vinella's testimony regarding Robinhood's corporate culture – as a "cowboy culture," "egotistical," "very chaotic," "childish," and "arrogant" – is drawn from the deposition testimony of just two former Robinhood employees.  (Vinella Rep. ¶¶ 74 n. 48, 110-11, 115, 119(b)-(c).)

*Third*, Vinella's view that "Woefully Inadequate Resiliency, Business Continuity Planning, and Disaster Recovery" contributed to the Outages should be excluded, as it rests on conclusions about the meaning of, and Robinhood's supposed non-compliance with, FINRA rules, topics which exceed the bounds of Vinella's expertise.  Vinella is not a lawyer, he has never worked at or been registered with FINRA and thus lacks the qualifications to opine on Robinhood's compliance with FINRA rules.  (Vinella Rep. ¶¶ 125-27; Vinella Tr. 56:19-20, 34:13-14.)  *See McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1127 n.28 (D. Or. 2010) (expert orthopedic surgeons "patently unqualified" to testify as to FDA regulations and requirements).

*Fourth*, Vinella's opinion that there was "Shockingly Poor Technology Management and Delivery" is based on improper guesswork.  For example, Vinella's views on Robinhood management's supposed "disregard for industry norms" and the merits of Robinhood's "business strategy" are not the proper subjects of expert testimony as they impermissibly "substitut[e] the expert's judgment for the jury's" regarding Robinhood's intent and motives.  (Vinella Rep. ¶¶ 128, 132.)  *Oracle*, 2018 WL 6511146, at *3.  In addition, his continued opinions regarding Robinhood employees' supposed lack of "basic experience and skills" rest on an unreliable foundation, as discussed in Section IV of this brief.  (Vinella Rep. ¶ 131.)

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
38567\14637175.2                                    20-cv-01626-JD

Vinella's testimony regarding the preventability of the Outages is riddled with impermissible legal conclusions, speculation, and opinions founded on an unreliable basis, and should be excluded.

## VI.      VINELLA'S OPINIONS REGARDING THE CONSEQUENCES OF THE OUTAGES SHOULD BE EXCLUDED.

Testimony regarding the consequences of the Outages on Robinhood's customers (Section VI(E)) should be excluded because it is unhelpful to the jury.  The jury needs no help from Vinella in determining whether the Outages were "severe," and this portion of his report merely quotes from internal Robinhood documents, which the jury can review and interpret on its own.  (Vinella Rep. ¶¶ 133-34.)  *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2020 WL 2553181, at *7 (S.D. Cal. May 20, 2020), *aff'd,* 9 F.4th 1102 (9th Cir. 2021) (excluding expert testimony which "simply provid[ed] a narrative of [plaintiffs'] theory of the case"); *Johns v. Bayer Corp.*, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding expert opinion that was "nothing more than a synopsis" of the facts).

Nor is Vinella's testimony that customers were financially and emotionally harmed permissible or helpful to the jury.  (Vinella Rep. ¶¶ 135-39.)  Whether the Outages caused an injury is a legal question.  Moreover, Vinella is neither an economist nor a psychologist, and he has no more basis than a jury to draw such conclusions.  *See Michaels v. Taco Bell Corp.*, 2012 WL 4507953, at *6 (D. Or. Sept. 27, 2012) (expert testimony that a slippery floor posed a risk of harm to customers was "not needed to assist the jury"); *Garity v. APWU-AFL-CIO*, 2017 WL 3496464, at *3 (D. Nev. Aug. 15, 2017) (excluding expert opinion that workplace bullying could reasonably be expected to cause mental harm because "[t]he average juror would not need an expert on bullying to evaluate [plaintiff's] alleged emotional distress in this case").

## VII.     VINELLA'S NARRATION OF THE FACTS SHOULD BE EXCLUDED.

Testimony relating to Section IV of Vinella's Report – "Background of Robinhood and the March 2020 Outages" – should be excluded because that section "simply rehashes . . . evidence about which [Vinella] has no personal knowledge."  *Bayer Corp.*, 2013 WL 1498965, at *28; *see Aya Healthcare Servs.*, 2020 WL 2553181, at *6 ("[E]xpert testimony cannot be presented to the

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

jury solely for the purpose of constructing a factual narrative based upon record evidence.").
While an expert "may rely upon the facts or data of others in formulating an expert opinion, 'an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.'" *Bayer Corp.*, 2013 WL 1498965, at \*28 (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005)).  To the extent the cited information bears any relevance to Plaintiffs' claims, it is "properly presented through percipient witnesses and documentary evidence," not expert testimony.  *Aya*, 2020 WL 2553181, at \*6 (quoting *In re Rezulin*, 309 F. Supp. 2d at 551).

## VIII.   VINELLA'S REMEDIATION PLAN IS UNRELIABLE AND SHOULD BE EXCLUDED.

Vinella's remediation plan should be excluded because he did not "actually look[] at [Robinhood's] technology in any depth" and, aside from publicly available information, does not "know about" how Robinhood operates today.  (Vinella Tr. 96:19-20, 113:2-9.)  Without such knowledge, the remediation plan is irrelevant, unsupported and unhelpful to the jury.  *See Samuels,* 656 F.3d at 953; *Spin Master, Ltd. v. Zobmondo Entm't*, *LLC*, 2012 WL 8134012, at \*22 (C.D. Cal. Apr. 27, 2012) (excluding expert opinion because "[f]our internet URLs [did] not come close to supporting [the expert's] sweeping conclusion").

## CONCLUSION

For the reasons set forth herein, the Court should exclude testimony regarding Sections III, IV, VI, and VII and Exhibit D of the Vinella Report pursuant to Federal Rule of Evidence 702.

DATED:  February 18, 2022                    **FARELLA BRAUN + MARTEL LLP**

*/s/ Karen P. Kimmey*
Karen P. Kimmey (State Bar No. 173284)
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
kkimmey@fbm.com

38567\14637175.2

**DEBEVOISE & PLIMPTON LLP**

*/s/ Maeve O'Connor*
Maeve O'Connor (appearance pro hac vice)
Elliot Greenfield (appearance pro hac vice)
Brandon Fetzer (appearance pro hac vice)
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

*Attorneys for Defendants Robinhood Financial LLC,*
*Robinhood Securities, LLC and Robinhood Markets, Inc.*

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Karen P. Kimmey, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 18, 2022, in San Francisco, California.

*/s/ Karen P. Kimmey*
Karen P. Kimmey

17

DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PETER U. VINELLA
20-cv-01626-JD

38567\14637175.2