**COTCHETT, PITRE & MCCARTHY, LLP**
Anne Marie Murphy (SBN 202540)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
Julia Q. Peng (SBN 318396)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
*amurphy@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*tredenbarger@cpmlegal.com*
*jpeng@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (SBN 239322)
Kathleen A. Herkenhoff (SBN 168562)
Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*mgeorge@kaplanfox.com*
*kherkenhoff@kaplanfox.com*
*lking@kaplanfox.com*

Interim Co-Lead Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Robinhood Outage Litigation | Master File No. 3:20-cv-01626-JD |
| | <u>CLASS ACTION</u> |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:   September 22, 2022 |
| | Time:   10:00 a.m. |
| | Judge:  Hon. James Donato |
| | Ctrm:   11, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 22, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, United States District Judge for the Northern District of California, at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, CA 94102, Plaintiffs will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"):

(i)      preliminarily approving the proposed Class Action Settlement Agreement and Release dated August 4, 2022 (attached as Exhibit A to the Joint Declaration of Anne Marie Murphy and Matthew B. George in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Joint Decl."), filed concurrently herewith);

(ii)     finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied;

(iii)    approving the form and manner of notice to the Settlement Class;

(iv)    approving the selection of the Settlement Administrator;

(v)     appointing Cotchett, Pitre & McCarthy ("CPM") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Co-Lead Class Counsel for purposes of the settlement;

(vi)    appointing Plaintiffs Daniel Beckman, Emma Jones, Mahdi Heidari Moghadam, Howard Morey, Colin Prendergast, Raghu Rao, Michael Riggs, and Jason Steinberg as Class Representatives for purpose of the settlement; and

(vii)   scheduling a Fairness Hearing before the Court.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration, the Settlement Agreement, the Declaration of Cameron R. Azari, Esq. on Notice Plan and Notices ("Azari Decl."), Declaration of Scott Walster ("Walster Decl."), all exhibits attached thereto, the pleadings and records on file in

this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

<b><u>STATEMENT OF ISSUES TO BE DECIDED</u></b>

1.   Whether the Court should grant conditional certification of the Settlement Class; and

2.   Whether the Court should grant preliminary approval of the Settlement.

Respectfully submitted,

Dated:  August 5, 2022          /s/ Anne Marie Murphy
                                _____
                                **COTCHETT, PITRE & MCCARTHY, LLP**
                                Anne Marie Murphy (SBN 202540)
                                Mark C. Molumphy (SBN 168009)
                                Tyson C. Redenbarger (SBN 294424)
                                Julia Q. Peng (SBN 318396)
                                San Francisco Airport Office Center
                                840 Malcolm Road, Suite 200
                                Burlingame, CA 94010
                                Telephone: (650) 697-6000
                                Facsimile: (650) 697-0577
                                *amurphy@cpmlegal.com*
                                *mmolumphy@cpmlegal.com*
                                *tredenbarger@cpmlegal.com*
                                *jpeng@cpmlegal.com*

Dated:  August 5, 2022          /s/ Matthew B. George
                                _____
                                **KAPLAN FOX & KILSHEIMER LLP**
                                Matthew B. George (SBN 239322)
                                Kathleen A. Herkenhoff (SBN 168562)
                                Laurence D. King (SBN 206423)
                                1999 Harrison Street, Suite 1560
                                Oakland, CA 94612
                                Telephone: 415-772-4700
                                Facsimile: 415-772-4707
                                *mgeorge@kaplanfox.com*
                                *kherkenhoff@kaplanfox.com*
                                *lking@kaplanfox.com*

                                *Interim Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.  INTRODUCTION .............................................................................................................1

II.  BACKGROUND ..............................................................................................................1

    A.  The Litigation and Class Counsel's Efforts ........................................................1

    B.  Fact and Expert Discovery ...................................................................................3

III.  PROPOSED SETTLEMENT ...........................................................................................4

    A.  The Settlement Class and Release ........................................................................4

    B.  The Settlement's Monetary Benefits ...................................................................5

    C.  The Settlement's Notice Plan ..............................................................................5

    D.  Service Awards .....................................................................................................6

    E.  Attorneys' Fees and Expenses .............................................................................6

    F.  Settlement Administrator ......................................................................................6

IV.  ARGUMENT ....................................................................................................................7

    A.  The Court Should Grant Preliminary Approval of the Settlement Because It is Fair, Reasonable, and Adequate .........................................................................7

        i.  The Proposed Class Representatives Adequately Represent the Class ........8

        ii.  The Parties Negotiated the Settlement at Arm's Length ..............................8

        iii.  The Advanced Stage of Litigation and Completed Discovery Support the Settlement .............................................................................................9

    B.  The Settlement Satisfies the Northern District's Procedural Guidance for Class Action Settlements .............................................................................................10

        i.  Guidance 1(a) and 1(b):  Differences between Class Definitions, Claims .10

        ii.  Guidance 1(c):  Settlement Value v. Potential Recovery at Trial ..............11

        iii.  Guideline 1(d): Other Cases Affected by the Settlement ..........................13

        iv.  Guidance 1(e):  The Proposed Plan of Allocation for the Settlement Fund 13

v.      Guidance 1(f):  Estimate of Number of Claims ............................ 15

vi.     Guidance 1(g):  Reversions ................................................... 15

vii.    Guidance 3:  Notice .............................................................. 16

viii.   Guidance 4 and 5:  Requests for Exclusion and Objections ...... 16

ix.     Guidance 6:  Attorneys' Fees and Expenses ............................ 16

x.      Guidance 7:  Service Awards ................................................ 17

xi.     Guidance 8:  Cy Pres ........................................................... 18

xii.    Guidance 10:  CAFA Notice ................................................. 18

xiii.   Guidance 11:  Comparable Outcomes with Past Distributions ... 18

C.   The Court Should Conditionally Certify the Class for Settlement Purposes .......... 19

i.      This Settlement Meets the Prerequisites of Subdivision (a) of Rule 23 ..... 20

ii.     Numerosity Rule 23(a)(1) ..................................................... 20

iii.    Commonality ....................................................................... 20

iv.     Typicality ........................................................................... 20

v.      Adequacy of Representation ................................................. 21

vi.     This Settlement Meets the Requirements of Subdivision (b)(3) of Rule 23 ............................................................................ 22

vii.    Common Liability Questions Predominate Over Individual Damages Questions .............................................................. 22

viii.   Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy .................................. 23

D.   The Court Should Appoint CPM and Kaplan Fox as Co-Lead Class Counsel for Purposes of Settlement .................................................................... 23

E.   The Court Should Appoint Plaintiffs as Class Representatives for Purposes of Settlement ........................................................................................ 23

V.   PROPOSED SCHEDULE FOR PROCEEDINGS ............................................ 24

VI.  CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*
2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................................22

*Accord Noll et al. v. eBay, Inc.*
309 F.R.D. 593 (N.D. Cal. 2015) ................................................16

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ................................................19, 20, 22, 23

*Bellinghausen v. Tractor Supply Co.*
306 F.R.D. 245 (N.D. Cal. 2015) ................................................17

*Briseno v. Henderson*
998 F.3d 1014 (9th Cir. 2021) ................................................7, 9

*compare Roes, 1-2 v. SFBSC Mgmt., LLC*
944 F.3d 1035 (9th Cir. 2019) ................................................8

*Gen. Tel. Co. of Southwest v. Falcon*
457 U.S. 147 (1982) ................................................20

*Hampton v. Aqua Metals, Inc.*
2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ................................................7, 10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011(9th Cir. 1998) ................................................20, 21, 22

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992) ................................................21

*In re Anthem, Inc. Data Breach Litig.*
327 F.R.D. 299 (N.D. Cal. 2018) ................................................22

*In re Apple Inc. Device Performance Litig.*
2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*
654 F.3d 935 (9th Cir. 2011) ................................................7, 8, 9

*In re Celera Corp. Sec. Litig.*
2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ................................................19

*In re Consumer Privacy Cases*
175 Cal. App. 4th 545 (2009) ................................................17

*In re January 2021 Short Squeeze Trading*
2022 WL 255350 (S.D. Fla. Jan. 27, 2022) ................................................2

*In re January 2021 Short Squeeze Trading Litigation*
2022 WL 255350 (S.D. Fla. Jan. 27, 2022) ............................................................... 12

*In re LDK Solar Sec. Litig.*
2010 WL 3001384 (N.D. Cal. July 29, 2010) ............................................................ 19

*In re Linkedin User Privacy Litig.*
309 F.R.D. 573 (N.D. Cal. 2015) .............................................................................. 18

*In re Netflix Privacy Litig.*
2012 WL 2598819 (N.D. Cal. July 5, 2012) .............................................................. 10

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 19

*In re Online DVD-Rental Antitrust Litig.*
779 F.3d 934 (9th Cir. 2015) ................................................................................. 7, 23

*In re Portal Software Sec. Litig.*
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................................. 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*
2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .............................................................. 9

*In re Zynga Inc. Sec. Litig.*
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ............................................................ 19

*Just Film, Inc. v. Buono*
847 F.3d 1108 (9th Cir. 2017) .................................................................................. 23

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) .................................................................................... 20

*Meek v. SkyWest, Inc.*
562 F. Supp. 3d 488 (N.D. Cal. 2021) ....................................................................... 22

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014) .................................................................................... 21

*Phillips Co. v. Shutts*
472 U.S. 797 (1985) .................................................................................................. 23

*Radcliffe v. Experian Info. Solutions, Inc.*
715 F.3d 1157 (9th Cir. 2013) .................................................................................. 18

*Rodriguez v. Hayes*
591 F.3d 1105 (9th Cir. 2010) .................................................................................. 20

*Rosado v. Ebay Inc.*
2016 WL 3401987 (N.D. Cal. June 21, 2016) ...................................................... 18, 22

*Russell v. Kohl's Dept. Stores, Inc.*
2016 WL 6694958 (C.D. Cal. Apr. 11, 2016) ........................................................... 16

*Sandoval v. Roadlink USA Pac., Inc.*
2011 WL 5443777 (C.D. Cal. Oct. 9, 2011) ............................................................. 20

*Saucillo v. Peck*
  25 F.4th 1118 (9th Cir. 2022) ...........................................................................9

*Schneider v. Chipotle Mexican Grill, Inc.*
  2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ....................................................10

*Smith v. CRST Van Expedited, Inc.*
  2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ....................................................17

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ...........................................................................21

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016) .........................................................................................22

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) .........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .........................................................................................20

*Williamson v. McAfee, Inc.*
  2016 WL 4524307 (N.D. Cal. Aug. 30, 2016) .................................................16

*Wolin v. Jaguar Land Rover N. Am. LLC*
  617 F.3d 1168 (9th Cir. 2010) .........................................................................20

**Statutes**

28 U.S.C. § 1715 ........................................................................................................18

**Rules**

Fed. R. Civ. P. Rule 23 ......................................................................................19, 20

Fed. R. Civ. P. Rule 23(a) ...........................................................................................21

Fed. R. Civ. P. Rule 23(b)(3) ................................................................................22, 23

Fed. R. Civ. P. Rule 23(c) ...........................................................................................16

Fed. R. Civ. P. Rule 23(e)(1)(B) ................................................................................16

Fed R. Civ. P. Rule 23(e)(2) .........................................................................................7

Fed. R. Civ. P. Rule 23(a)(4) .......................................................................................21

Fed. R. Civ. P. Rule 23(b)(3) .......................................................................................22

Fed. R. Civ. P. Rule 23(c)(2)(B) .................................................................................16

Fed. R. Civ. P. Rule 23(e)(2)(A) ...................................................................................8

Fed. R. Civ. P. Rule 23(e)(5) .......................................................................................16

Fed. R. Civ. P. Rule 23(2)(c)(iii) ..................................................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After two years of contentious litigation, followed by months of settlement negotiations, Plaintiffs request preliminary approval of a $9.9 million non-reversionary cash settlement on behalf of approximately 150,000 Robinhood investors who experienced losses associated with the March 2020 Outages of Robinhood's trading platform.  The Settlement provides for direct distribution of payments to Settlement Class Members, without requiring claims forms.  Settlement Class Members will be apprised of their estimated recovery from this Settlement in their individualized Long Form Notice.

The Settlement is the product of well-informed, arms'-length settlement negotiations— between experienced counsel facilitated by an experienced mediator.  It arrives at a fully informed, critical juncture in the litigation, after the completion of discovery and extensive motions, but before the Plaintiffs and Settlement Class Members must face the risks of pending class certification, *Daubert* challenges, and summary judgment proceedings.  The Settlement presents a strong recovery and delivers tangible and immediate compensation to the Settlement Class, particularly considering the substantial risks protracted litigation would present.  The Court should grant preliminary approval.

## II.   BACKGROUND

### A.   The Litigation and Class Counsel's Efforts

Between March 2 and 3, 2020, Robinhood experienced an Outage of its securities trading app and website that began just after Monday's market open and extended well into Tuesday, rendering systems nonfunctional or inaccessible to Robinhood's millions of customers.  On March 9, users again found themselves unable to access their accounts or transact on the markets due to an outage of Robinhood's systems throughout the morning.  Beginning March 5, 2020, a series of putative class actions were filed against Robinhood in state and federal court asserting claims arising from the Outages.  Joint Decl. ¶¶ 4-5.  Over a dozen subsequent related actions were filed in, removed to, or transferred to this District, and they were eventually consolidated on July 14, 2020. ECF No. 59.

After appointment of interim co-lead class counsel, ECF No. 65, Plaintiffs filed a consolidated amended complaint ("Complaint") on August 21, 2020.  ECF No. 74.  On October 5, 2020, Robinhood moved to dismiss the complaint, strike the Plaintiffs' class allegations, and stay discovery.  ECF Nos. 76-77.  On November 5, 2020, the Court denied Robinhood's Motion to Stay. At the February 18, 2021, Motion to Dismiss hearing, the Court gave its findings on the record, largely denying Robinhood's Motion with the exception of dismissing Defendant Robinhood Markets, Inc., without prejudice.  ECF No. 95.  At the Court's direction to select a mediator, the parties chose David Geronemus of JAMS.  ECF No. 100.  The parties attended a mediation with Mr. Geronemus on July 27, 2021, although the matter did not settle.

On October 22, 2021, Plaintiffs filed a motion for class certification, supported by over 50 documentary exhibits and deposition excerpts, the Declarations of Plaintiffs, and their expert reports. ECF No. 138-40.  Robinhood opposed Plaintiffs' Motion on December 3, 2021, and also filed a *Daubert* motion to exclude the testimony and report of Plaintiffs' damages expert, Scott E. Walster of Global Economics Group.  ECF Nos. 145-46.  Each motion was fully briefed and heard by the Court in-person on February 24, 2022.  At the hearing, the Court had multiple questions about Plaintiffs' damages theories and requested a "hot tub" hearing featuring the parties' respective economist experts that was set for June 9, 2022.  ECF Nos. 161, 167-68.

On February 18, 2022, prior to the class certification hearing, Robinhood filed a Motion for Summary Judgment on all of Plaintiffs' claims, relying heavily on the terms of Robinhood's Customer Agreement and a recent federal court decision in a separate multi-district litigation against Robinhood that dismissed those Plaintiffs' claims in *In re January 2021 Short Squeeze Trading Litigation*, No. 21-02989-MDL, 2022 WL 255350 (S.D. Fla. Jan. 27, 2022).  ECF No. 160. Robinhood filed a *Daubert* Motion to Exclude the opinions and testimony of Plaintiffs' brokerage operations expert, Peter Vinella.  ECF No. 159.  At the class certification hearing, the Court stayed briefing on those Motions pending the "hot tub" hearing with the parties' economists.

While these Motions were pending, the parties continued efforts to resolve the matter, facilitated by Mr. Geronemus, over the course of many months.  Joint Decl. ¶¶ 28-29.  On May 10, 2022, the parties reached a settlement in principle that was then commemorated into a written

memorandum of understanding and a notice of settlement was filed with the Court on May 26, 2022. *Id*. at ¶ 29.  The Parties engaged in several rounds of negotiations before finalizing the terms of the Settlement Agreement now submitted for the Court's approval.

### B. Fact and Expert Discovery

Discovery in this case was thorough and robust.  The parties engaged in extensive negotiations over the production of Robinhood's documents and customer account and trading information.  Joint Decl. ¶¶ 12-13.  Robinhood produced over 50,000 documents and Plaintiffs took ten depositions of key Robinhood executives and engineers. *Id*. at ¶¶ 14-16.  Given that the Outages prevented Robinhood's systems from being able to receive and execute most orders, the bulk of the account information available included: (1) account and trading history information for the months preceding the Outages; and (2) some limited trade information before and during the Outages as well as trading activity that occurred once Robinhood's systems were back online.  In consultation with Plaintiffs' damages expert, Plaintiffs negotiated a sampling protocol that eventually led to the production of account and trading information for approximately 40,000 Robinhood active users. *Id*. at ¶ 13.

Robinhood took extensive discovery of the Plaintiffs, serving document requests and interrogatories and deposing nine of them.  *Id*. at ¶ 18.  Additionally, Robinhood requested inspections of Plaintiffs' cell phones/devices that were used to access and/or trade on Robinhood's app, which all Plaintiffs provided through data extractions. *Id*.  Even with a compressed discovery schedule, the parties completed discovery prior to the April 7, 2021 cutoff by completing multiple depositions simultaneously.  *Id*. at ¶ 19.

The Parties exchanged initial expert reports on June 25, 2021, with Plaintiffs producing three experts on regulatory issues, securities brokerage operations, and Plaintiffs' proposed damages models.  *Id*. at ¶ 22.  Robinhood submitted an initial expert report and then submitted three rebuttal reports challenging each of Plaintiffs' experts' opinions.  The Parties engaged in expert discovery and deposed each expert.  *Id*. at ¶¶ 23-24.

### III.   **PROPOSED SETTLEMENT**

#### A. **The Settlement Class and Release**

The proposed Settlement Class Members are a subset of Robinhood customers in March of 2020 who fall within one or more of three categories and were originally proposed as the "VWAP Subclass," the "SPY Option Subclass," and the "Failed Trade Subclass" in Plaintiffs' Class Certification Motion. The Class Members are identified by Plaintiffs' damages expert based on the Customer Trading Information, using the "Ex Post" methodologies described in the Expert Report of Scott E. Walster ("Walster Report"). Walster Decl. ¶ 4. Based on the sampled data produced by Robinhood, Plaintiffs anticipate that there will be approximately 150,000 Settlement Class Members incurring approximately $20.4 million in losses under Plaintiffs' damages methodologies. Joint Decl. ¶ 36; Walster Decl. ¶ 4. Given that sampling was used to determine these estimates, Plaintiffs submit these figures as close estimates but anticipate that the final numbers may differ. *Id*.

Settlement Class Members have one or more Qualifying Trades in the following groups:

1. **VWAP Loss Trades** includes any person who closed one or more position(s) on March 3, 2020, at a loss relative to the Volume Weighted Average Price "(VWAP)" of those positions during the March 2 and 3, 2020 Outages.

2. **SPY Options Trades** includes any person who held a SPDR S&P 500 ("SPY") option position expiring on March 2, 2020, and experienced a loss relative to the VWAP of those options during the March 2, 2020 Outage.

3. **Failed Marketable Trades** includes any person who experienced a Failed Equity Trade that became marketable during the March 2 and 3 Outages at a loss relative to the price at the end of the March 2 and 3 Outages and/or the transaction price obtained through March 4, 2020; or who experienced a Failed Equity Trade that became marketable during the March 9 Outage at a loss relative to the price at the end of the March 9 Outage and/or the transaction price obtained through March 10, 2020.

Joint Decl. ¶ 35; Walster Decl. ¶ 4. All Settlement Class Members will be identified through Robinhood's Customer Trading Information and Settlement Payment will be determined by Plaintiffs' damages expert pursuant to the Plan of Allocation. Walster Decl. ¶¶ 5-6. Importantly,

Settlement Class Members will **not** have to file a claim to obtain their Settlement Payment.  SA § 2; Joint Decl. ¶ 31.

**B.   The Settlement's Monetary Benefits**

The Settlement provides substantial monetary relief in the form of a non-reversionary $9.9 million Settlement Fund that will be fully distributed to Class Members according to the proposed Plan of Allocation.  With a recovery of $9.9 million on the $20.4 million in estimated losses, Class Members will recover just under 50% of their calculated losses (before deductions for Notice Administration, Attorneys' Fees and Costs).  Joint Decl. ¶ 43; Walster Decl. ¶ 4.

**C.   The Settlement's Notice Plan**

The Notice Plan includes sending the Long Form Notice via mail *and* email to all Class Members using the Settlement Class Contact Information.  Because Robinhood is a financial firm that conducts business electronically, current mailing and email addresses should be available for virtually all Settlement Class Members, ensuring direct notice will reach nearly everyone.  The Notice Plan also establishes a Settlement Website, www.RobinhoodOutagesClassAction.com, where Settlement Class Members can access the Settlement Agreement, the operative complaint, the Attorneys' Fees and Expense Motion, and other important information.  SA § 4.1; Azari Decl. ¶¶ 17-22.  In addition to providing general information regarding the settlement, the Long Form Notice is tailored to inform each Settlement Class Member of their estimated *pro rata* Settlement Payment and include the symbol of the qualifying trade(s), the estimated loss under each of the three categories, and the deduction for any credits or payments already made under Robinhood's Goodwill program.  SA, Ex. 1.  The Long Form Notice also includes the Plan of Allocation, which informs the Settlement Class of the methodology for the Settlement Payment calculations.  Joint Decl. ¶¶ 37-38.

Notice will also be disseminated via a social media campaign specifically designed to reach Class Members by placing ads in their social media channels that direct them to the Settlement Website.  Azari Decl. ¶¶ 23-29; SA § 4.1(c).  Additionally, a toll-free telephone number monitored by live agents, email address, and physical mailing address will be made available for Class Members to contact the Settlement Administrator or Class Counsel directly.  SA § 4.3; Azari Decl.

¶¶ 30-31.  The costs of Notice will be paid out of the Settlement Fund.  *Id*. § 3.4.  The Notice Plan is the best practicable notice under the circumstances and meets all due process requirements.  Azari Decl. ¶ 10.

### D.  Service Awards

Plaintiffs will seek Service Awards for their work on behalf of the Settlement Class. Plaintiffs intend to request no more than $2,500 per Plaintiff in this case, which amounts to $37,500 for all Service Awards.  Joint Decl. ¶ 53.  Each Plaintiff has dutifully performed their duties in this case, including retaining counsel, providing documents and information to counsel for investigatory and discovery purposes, and timely responding to inquiries from counsel.  *Id*.  Per Northern District Guidelines, Plaintiffs will submit further evidence supporting proposed Service Awards at the final approval stage.

### E.  Attorneys' Fees and Expenses

The Settlement Agreement permits Plaintiffs to seek an award of Attorneys' Fees and Expenses.  Plaintiffs intend to file a Motion for Attorneys' Fees and Expenses in connection with final approval proceedings that will seek no more than 30% of the Settlement Fund (or no more than $2,970,000) in Attorneys' Fees and up to $1,120,000 in unreimbursed expenses.  Joint Decl. ¶¶ 45-52.

### F.  Settlement Administrator

Plaintiffs engaged in a competitive bid process to select the proposed Settlement Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").  Plaintiffs prepared a written RFP that was submitted to seven experienced class action notice providers.  Plaintiffs ultimately selected Epiq, who presented one of the two most cost-effective bids that also implemented the notice procedures that would be appropriate in this matter.  As the Settlement Administrator, Epiq will provide notice, administer the claims process, and provide other services necessary to implement the Settlement.  SA § 3; *see generally* Azari Decl.  The Settlement Administration Expenses shall not exceed $400,000 (Joint Decl. ¶ 55) and will be paid out of the Settlement Fund.  SA § 2.1(d).

IV.   **ARGUMENT**

A.   **The Court Should Grant Preliminary Approval of the Settlement Because It is Fair, Reasonable, and Adequate**

The Court may approve settlements shown to be fair, reasonable, and adequate.  Fed. R. Civ. Proc. Rule 23(e)(2).  To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47.  The Ninth Circuit has identified three indicia of possible collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)

"Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *7 (N.D. Cal. Oct. 5, 2021).

The Settlement deserves approval because the Class was adequately represented, the Settlement was negotiated at arm's length based on a complete record of fact and expert discovery,

the relief is adequate, and the proposal treats Class Members equitably relative to each other.  Under the heightened fairness inquiry applied to settlements prior to class certification, the Settlement contains no signs of collusion.  The Settlement Agreement does not provide Class Counsel with a disproportionate distribution, there is no "clear sailing" arrangement, and there is no reversion of unclaimed funds to Robinhood.

### i.   The Proposed Class Representatives Adequately Represent the Class

Plaintiffs respectfully ask this Court to provisionally designate Daniel Beckman, Emma Jones, Mahdi Heidari Moghadam, Howard Morey, Colin Prendergast, Raghu Rao, Michael Riggs, and Jason Steinberg as Class Representatives for purpose of this settlement.  They are members of the class they seek to represent, they have intimate knowledge of this case, they understand their duties as a class representative, and they have no conflicts of interest with other Class Members. Rule 23(e)(2)(A).   The remaining Plaintiffs in this case – Gwaltney, Kuri, Leith, Mahrouyan, Russell, Ward, and Xia –  are not members of the Settlement Class and are dismissing their claims without prejudice but have preserved their rights to pursue their claims against Robinhood in their individual capacity.  SA § 7.1.

### ii.   The Parties Negotiated the Settlement at Arm's Length

None of the signs of collusion identified by the Ninth Circuit are present here.  *See In re Bluetooth*, 654 F.3d at 947.  Counsel is not seeking a disproportionate distribution of the Settlement (seeking no more than 30%); the Settlement does not contain a "clear sailing provision".  and there is no reversion of any Settlement Funds— rather the Settlement makes every effort to distribute any residual funds to the Class.  Joint Decl. ¶¶ 30, 45; *see also* SA § 2; *compare Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1060 (9th Cir. 2019) (reversal of the district court's approval of the settlement based on the existence of a clear sailing agreement, the disproportionate cash distribution to attorneys' fees, and reversionary funds.)

Moreover, Class Counsel engaged in extensive, adverse negotiations with Robinhood, and fully considered and evaluated the fairness of the Settlement.  The protracted and hard-fought negotiations included the assistance of an experienced mediator, David Geronemus of JAMS.  At his direction, Plaintiffs and Defendants submitted comprehensive mediation briefs and attended a

full-day mediation.  Joint Decl. ¶ 28.  After nearly a year of negotiations, the Parties ultimately reached an agreement.  Throughout the Action and settlement negotiations, Robinhood has been vigorously represented by Debevoise & Plimpton LLP and Farella Braun + Martel LLP.  Such indicia of non-collusive negotiations (and terms) further establishes, under heightened scrutiny, that the Settlement is fair.  *See In re Bluetooth.*, 654 F.3d at 946-47, and *Briseno*, 998 F.3d at 1023 ("[i]n reviewing settlements struck before class certification, district courts must apply these so-called *Bluetooth* factors to smoke out potential collusion.")  *See also Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022).

### iii.   The Advanced Stage of Litigation and Completed Discovery Support the Settlement

In a class action setting, courts look for indications that the parties carefully investigated the claims before reaching a resolution, including propounding and reviewing discovery.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 09-00261 SBA, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement."); *see also In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007). As discussed above, Class Counsel engaged in extensive investigation, research, and analysis of the Settlement Class's claims, which resulted in the Court upholding the FAC in its entirety other than dismissing defendant Robinhood Markets, Inc.  ECF No. 95.  Class Counsel thereafter aggressively pursued discovery through multiple requests for production of documents, intensive meet and confers, and taking and defending twenty-four depositions.  Robinhood produced over 50,000 documents of fact-related material for review.  In addition, Class Counsel consulted with experts, engaged in *Daubert* motions, and served subpoenas on several non-parties.  This discovery allowed Class Counsel to adequately evaluate the merits of Plaintiff's claims and Robinhood's defenses.

**B.  The Settlement Satisfies the Northern District's Procedural Guidance for Class Action Settlements**

### i.   Guidance 1(a) and 1(b):  Differences between Class Definitions, Claims

The proposed Settlement Class is the subset of approximately 150,000 Robinhood customers in March of 2020 who fall within one or more of three categories and were originally proposed as the "VWAP Subclass," the "SPY Option Subclass," and the "Failed Trade Subclass" in Plaintiffs' Class Certification Motion.  ECF No. 138 at 23.  *See also* Joint Decl. ¶ 34.  Although Plaintiffs previously sought to certify a broader class of over six million Robinhood customers, ECF No. 138, Courts routinely approve such changes.  *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *2 (N.D. Cal. Oct. 5, 2021) (granting preliminary approval to class action settlement where the class definition in the settlement agreement is different from the one in the amended complaint); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2012 WL 2598819, at *1 (N.D. Cal. July 5, 2012) (different settlement class definition than that in the complaint); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG, 2020 WL 511953, at *5-6 (N.D. Cal. Jan. 31, 2020) (approving modified settlement class definition from classes certified).The proposed Settlement Class is defined as follows:

> [A]ll Robinhood accountholders in the United States who: (i) closed a position on March 3, 2020, at a loss relative to the Volume Weighted Average Price ("VWAP") during the March 2 and 3, 2020 Outages; (ii) held SPDR S&P 500 options expiring on March 2, 2020 and experienced a loss relative to the VWAP during the March 2, 2020 Outage; (iii) who experienced a Failed Equity Trade during the March 2 and 3 Outages at a loss relative to the price at the end of the March 2 and 3 Outages and/or the transaction price obtained through March 4, 2020; or (iv) who experienced a Failed Equity Trade during the March 9 Outage at a loss relative to the price at the end of the March 9 Outage and/or the transaction price obtained through March 10, 2020.  Excluded from the Settlement Class are Defendants and their legal representatives, heirs, successors or assigns.  Also excluded from the Settlement Class are Persons who have entered into settlement agreements with Robinhood, outside of the Goodwill Program, that include a release of claims related to the Outages.

SA § 1.32.

Plaintiffs narrow the scope of the proposed class for settlement purposes after considering a number of important factors.  Because of the severity of the Outages resulting in the failure of Robinhood's trading platform, Robinhood does not possess trading data for most accountholders or

documentation of the actions they attempted to undertake during the Outages.  Joint Decl. ¶ 40.  At class certification, Plaintiffs' theory of recovery for the broader class was based on a "Discount for Lack of Marketability" (or "DLOM") analysis under the theory that Plaintiffs incurred monetary losses associated with the lack of ability to sell or change positions.  Though used in other legal contexts, the DLOM model had never been employed in litigation for an unprecedented Outage such as this.  *Id.*  While Plaintiffs still submit that the DLOM model is an appropriate way to measure one theory of loss associated with the Outages, Robinhood, its economics expert Allen Ferrell, and the Court raised questions about whether there may be legal issues such as Article III standing that would render the analysis unsuitable to support class certification.  *Id.*

The revised and narrowed Settlement Class is defined based on the limited trading information available, making class membership an objective determination, and permits their proposed losses and estimated Settlements Payments to be determined efficiently using the models already developed in the course of the litigation.  Joint Decl. ¶ 43; Walster Decl., ¶¶ 4-6, Ex. 2. Under these methods, Plaintiffs are able to identify, calculate, and notice Settlement Class Members with the precise data used to determine their proposed losses attributable to the Outages.  This smaller Settlement Class has exhibited common trading patterns that are objectively identifiable and supported by many of the Plaintiffs' actual experiences.  Joint Decl. ¶ 43.

Importantly, Robinhood accountholders excluded from the Settlement are **not** releasing any claims in this settlement against Robinhood in connection with the Outages.  All of those individuals can still file their own claim if they choose to do so, such as via a FINRA arbitration, which we are informed and understand that some Robinhood accountholders have been pursuing.

The claims to be released are congruent with the claims asserted in the Complaint on behalf of the Settlement Class.

### ii.   Guidance 1(c):  Settlement Value v. Potential Recovery at Trial

With a recovery of $9.9 million on the $20.4 million in estimated losses, Plaintiffs will recover just under 50% of their calculated losses (before deductions for Notice Administration, Service Awards, and Attorneys' Fees and Expenses).  Plaintiffs submit that a 50% recovery in a complex case involving an unprecedented Outage is a significant recovery that will meaningfully

1   compensate Settlement Class Members for their proposed losses.  The Settlement further allows

2   Settlement Class Member that have initiated other legal proceedings against Robinhood or is

3   unhappy with the Settlement Payment, to opt-out and preserve their rights.  There is no opt-out

4   threshold by which the Settlement will fail if it is exceeded.  Joint Decl. ¶ 43; *see generally,* SA.

5          In the alternative, there are significant legal issues that were not typical and that presented

6   real risks to Plaintiffs to continue litigating the Action.  First, the scope and magnitude of the Outages

7   is unprecedented.  There is no putative class action that has laid a blueprint for litigation and

8   resolution, which differentiates this case from those arising from typical consumer or securities fraud

9   cases predicated on a failure to disclose.  Joint Decl. ¶ 58.  Second, given that the Outages prevented

10  documentation for most of the trading records, Robinhood has argued extensively that its own

11  alleged misconduct precluded Plaintiffs' ability to determine issues of Article III standing and

12  damages on a class-wide basis.  *Id.*  The Court raised similar concerns to Plaintiffs, particularly at

13  the hearing on Plaintiffs' Motion for Class Certification.  *Id.*  Third, Robinhood filed for summary

14  judgment alleging that its operative customer agreement exculpated it from any claims alleged in

15  this case, an argument that was successful at obtaining dismissal of other Robinhood investors'

16  claims in a putative class action concurrently litigated in multidistrict litigation in Florida.  *See In re*

17  *January 2021 Short Squeeze Trading Litigation*, 2022 WL 255350 (S.D. Fla. Jan. 27, 2022).  Fourth,

18  this case raised a number of legal questions of first impression (that are inherently risky), such as

19  whether Robinhood had common law or regulatory obligations to maintain contingency plans for

20  traders on an online-only securities trading platform and whether Plaintiffs' theories of liability

21  under California law would withstand Robinhood's contrary arguments.  Joint Decl. ¶ 43.  For

22  example, does Robinhood owe its customers a fiduciary duty to maintain an operable online

23  platform?  Does the economic loss doctrine bar Plaintiffs' common law claims?  Does the customer

24  agreement exculpate Robinhood from liability?

25         After careful consideration of these issues and weighing the risks of proceeding with the

26  Action, Class Counsel determined that the Settlement Agreement, providing a $9.9 million non-

27  reversionary fund, was the best course of action.  Given the serious risks involved in continuing the

28  case, chief among them—obtaining class certification, defending the inevitable Rule 23(f) petition

1   if class certification was granted, defeating summary judgment, defeating multiple *Daubert* motions,

2   and prevailing at trial—all in a relatively untrodden area of the law.   And, even if Plaintiffs

3   successfully proved their case at trial, the amount of recovery, if any, could vary widely depending

4   on other factors, including the Court's discretion.   Crucially, even if anything were recovered, it

5   would take years to secure, as Robinhood undoubtedly would appeal any adverse judgment.   In

6   comparison, the Settlement provides a guaranteed, immediate, and substantial cash recovery of $9.9

7   million.

8        ###   iii.        Guideline 1(d): Other Cases Affected by the Settlement

9        On April 16, 2020, Stanley Withouski filed a putative class action in the Superior Court of

10  California, County of San Mateo under the caption *Withouski v. Robinhood Financial LLC et al*, No.

11  20-CIV-01730 (the "*Withouski* Action"), alleging liability based on the same theories of alleged

12  conduct by Robinhood as alleged in this Action.   Mr. Withouski sought to represent a class of

13  Robinhood users residing in California.    After this Court remanded the Withouski Action to state

14  court, ECF No. 78, Class Counsel coordinated with Mr. Withouski and his counsel to stay that case

15  and provided Mr. Withouski's counsel opportunities for involvement in this Action.   Joint Decl. ¶ 9.

16  On December 17, 2020, the state court approved the stipulation between Mr. Withouski and

17  Robinhood to stay that case pending resolution of this Action.   Mr. Withouski's counsel performed

18  work in the Federal Consolidated Action under the direction of Interim Lead Class Counsel.   Joint

19  Decl. ¶ 9.   Mr. Withouski's counsel joined Class Counsel in participating in arms' length settlement

20  discussions, including the mediation session before Mr. Geronemus on July 27, 2021, and numerous

21  other individual and joint conversations with Mr. Geronemus and Robinhood.   Mr. Withouski is a

22  named party in the Settlement Agreement.   As part of the Settlement, Mr. Withouski agreed to an

23  efficient global resolution of his case.   A copy of his request for dismissal in the state court is

24  included in the Settlement Agreement as Exhibit 5.

25       ###   iv.        Guidance 1(e):  The Proposed Plan of Allocation for the Settlement Fund

26       The proposed Plan of Allocation is Exhibit 2 to the Walster Declaration and is fully set forth

27  in the Long Form Notice and summarized here.   Class Members are eligible for payment if they

28  experienced a loss pertaining to a Qualifying Trade described in the Plan of Allocation during the

Outages. *See* SA, Ex. 1; Walster Decl. Ex. 2.  Class Members will receive direct payment based on a *pro rata* adjustment.  *Id*.  Class Members have the option to select digital forms of payment such as Paypal, Venmo, or digital payment card.  SA § 2.3(c); Azari Decl. ¶ 32.  The default payment method will be by check.  *Id.*

To determine each Settlement Class Members' Settlement Payment, Plaintiffs' expert, Scott Walster of Global Economics Group, will use the Customer Trading Information to calculate Settlement Payments in accordance with the Plan of Allocation.  SA, Ex. 4.  Where the Settlement Class Members' eligibility satisfies more than one category, they will only receive the highest payment they're entitled to.  *See* SA, Ex. 1; Walster Decl. Ex. 2.  All Settlement Payments will be offset by any payments made to the Settlement Class Member paid by Robinhood as a result of its Goodwill Program pertaining to the March 2020 Outages.  *Id.*  The offset may extinguish some Settlement Class Members' Settlement Payment.  *Id.*  All Settlement Payments will be reduced *pro rata* relative to the estimated Net Settlement Fund.  *Id.*

For the **VWAP Loss Trades** for those who closed all or a portion of a position on March 3, 2020, the VWAP(s) for the corresponding security(s) on March 2-3, 2020 will be determined from available market data.  The Settlement Class Member's loss for each security is calculated as the difference between the price of the trade and the VWAP multiplied by the number of shares traded or the number of underlying shares represented by the option contract(s) traded.  *See* SA, Ex. 1; Walster Decl. Ex. 2.

For the **SPY Options Trades** for those who held a SPDR S&P 500 ("SPY") option Position expiring on March 2, 2020, the loss for each option is calculated as the value of the investment based on the VWAP during the March 2, 2020 Outage less any gain resulting from the difference between the strike price and the underlying SPY price for in-the-money options at expiration on March 2, 2020.  *See* SA, Ex. 1; Walster Decl. Ex. 2.

For the **Failed Marketable Trades** for those who experienced a Failed Equity Trade of a marketable order during the March 2 and 3 Outages the loss is calculated as the difference between the price obtained when executing the transaction once the Outage ended through March 4, 2020 and the price of the failed transaction once it became marketable multiplied by the number of shares

traded or the number of underlying shares represented by the option contract(s) traded.   For Settlement Class Members who experienced a Failed Equity Trade of a marketable order during the March 9 Outage the loss is calculated as the difference between the price obtained when executing the transaction once the Outage ended through March 10, 2020 and the price of the failed transaction once it became marketable multiplied by the number of shares traded or the number of underlying shares represented by the option contract(s) traded.  If a new price for the failed transaction was not obtained through March 4, 2020 or March 10, 2020, respectively, the loss is determined as the difference between the price of the security once the corresponding Outage ended and the price of the failed transaction multiplied by the number of shares traded or the number of underlying shares represented by the option contract(s) traded.  *See* SA, Ex. 1; Walster Decl. Ex. 2.

In the event that minute-by-minute market pricing data is not available for a particular security, including over-the-counter securities ("OTC Securities"), the Settlement Payment shall be determined using the daily VWAP price for March 2, 2020.  *See* SA, Ex. 1; Walster Decl. Ex. 2.

The Settlement is designed so that any residual funds are distributed to Class Members if economically feasible.  *Id.* ¶ 2.3(f).  If not so feasible, however, any residual funds will be distributed to the selected *cy pres* recipient, Howard University School of Law Investor Justice.  SA § 1.13, 2.3(g); *see also* Joint Decl. ¶ 56.

### v.   Guidance 1(f):  Estimate of Number of Claims

There will not be a claim form.  Class Counsel estimates there will be approximately 150,000 Class Members.  Joint Decl. ¶ 36.  Class Members will receive their *pro rata* share of the Settlement Fund either through digital payment or by check.  Any uncashed funds after 90 days will be re-distributed to the Settlement Class or allocated to the *Cy Pres* Recipient if it is not economically feasible for a second distribution to the Settlement Class.  SA § 2.3(g).

### vi.   Guidance 1(g):  Reversions

Under no circumstances will any portion of the Settlement Fund revert back to Robinhood. SA § 2.1(c); *see also* Joint Decl. ¶ 30.

### vii.    Guidance 3:  Notice

Rule 23(c)(2)(B) requires that settlement notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").

The Notice Plan has been thoughtfully designed to reach Class Members and is the best notice practicable.  Settlement Class Members will receive notice of the settlement through mail and email.  Plaintiffs anticipate a near complete direct notice campaign as Robinhood provides financial accounts for Settlement Class Members and should have current contact information for them except perhaps those that have closed accounts.  Azari Decl. ¶¶ 12, 18-22, 34.

Settlement Class Members will further be notified of the Settlement via ads that link to the Settlement Website directly into their social media channels.  Azari Decl. ¶¶ 23-26.  There will also be a Settlement Website and toll-free phone number to provide all the information Settlement Class Members possibly might require to make an informed decision regarding the lawsuit.  *Id.* at ¶¶ 29-31.  The Notice program therefore satisfies the requirements of Rule 23. *Accord Noll et al. v. eBay, Inc.*, 309 F.R.D. 593, 604-5 (N.D. Cal. 2015).   Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23.  *See id.*; *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's Dept. Stores, Inc.*, No. ED CV 15-1143 RGK, 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).

### viii.    Guidance 4 and 5:  Requests for Exclusion and Objections

The proposed Notice complies with Rule 23(e)(5) in that it discusses the rights of Settlement Class Members.  The proposed Notice includes information on a Settlement Class Member's right to:  (1) request exclusion and the manner for submitting such a request (SA § 5.2) and (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection (SA § 5.1).

### ix.    Guidance 6:  Attorneys' Fees and Expenses

As set forth in the proposed Notice, Class Counsel anticipate seeking attorneys' fees up to 30% of the Settlement Fund (i.e., $2,970,000).  As of June 30, 2022, Class Counsel and Executive

- 16 -

Committee members report a lodestar of approximately $5,136,662.75 in hours incurred after
consolidation.  Joint Decl. ¶ 47.  The lodestar represents a 0.58 multiplier.  This is well below the
normal range awarded in class actions.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6
(9th Cir. 2002 (noting multipliers of between 1.0 and 4.0 are "frequently awarded"); *Smith v. CRST
Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14,
2013) ("Under the percentage method, California has recognized that most fee awards based on
either a lodestar or percentage calculation are 33 percent.") (citing *In re Consumer Privacy Cases*,
175 Cal. App. 4th 545, 556 n.13 (2009)).  Pursuant to the Settlement, any Fee and Expense Award
to Class Counsel will be paid from the Settlement Fund within five (5) days after entry of the Court's
order providing for an award of attorneys' fees and/or expenses.  *See* SA § 9.1.a.; *see also* Fed. R.
Civ. P. 23(2)(c)(iii).

Class Counsel anticipate seeking reimbursement for out-of-pocket expenses up to
$1,120,000.  As of June 30, 2022, Class Counsel and Executive Committee members report
$970,234.31 in expenses, the bulk of which are expert witness fees, deposition costs, and ESI
vendors.  Joint Decl. ¶ 50.  Class Counsel anticipates up to $100,000 in additional costs to be paid
to Scott E. Walster for his work to determine the Settlement Payments.  Walster Decl. ¶ 6.  The
balance of the expenses include, among others, court fees, service of process, mediation costs, online
legal and factual research, minimal travel costs, database expenses, and messenger, courier, and
overnight mail expenses.  Joint Decl. ¶ 52.  Class Counsel will detail their work, hours, lodestar and
expenses in their fee and expense motion to be filed 35 days prior to the Objection Deadline.

### x.  Guidance 7:  Service Awards

Class Counsel intend to seek a Service Payment of $2,500 for the fifteen Plaintiffs in the
Action.  SA § 9.2.  Service Awards "have long been approved in the Ninth Circuit."  *In re Apple Inc.
Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *11 (N.D. Cal. Mar. 17,
2021).

The proposed Service Awards requested here are reasonable.  "Incentive awards typically
range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D.
Cal. 2015) (collecting cases).  Courts in this District have found that a $5,000 incentive award is

presumptively reasonable.  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. eBay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016).  And, because the Settlement is not conditioned on the Court's approval of any Service Award, the Settlement does not grant preferential treatment to Class Representatives or Plaintiffs.  SA § 9.3.  The Service Awards include Plaintiffs who are not part of the Settlement Class.  However, their efforts were key to the Parties settling this case.  Several of these Plaintiffs took part in depositions.  Joint Decl. ¶ 18.  All participated in responding to discovery requests from Robinhood and document production.  Joint Decl. ¶ 18.

Plaintiffs' interests do not conflict with or diverge from the interests of the Settlement Class.  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1161 (9th Cir. 2013).  Accordingly, the Court should preliminarily approve the request for Service Awards.

### xi.   Guidance 8:  Cy Pres

Based on the manner in which payments will be made, including potentially a *pro rata* increase of payments for each Class Member, the Parties do not anticipate any residual funds remaining in the otherwise non-reversionary Class Settlement Amount.  In the event residual funds do remain after payment of Settlement Payments to Settlement Class Members, Settlement Administrative Expenses, Taxes, Fee and Expense Award, and Service Payments, they will be distributed to the Non-Profit *Cy Pres* Recipients. SA § 2.3(g).  Plaintiffs propose Howard University School of Law Investor Justice and Education Clinic ("IJEC") as the Non-Profit *Cy Pres* Recipient.  The IJEC provides education and legal services to investors as well as training to law students and their work relates directly to the subject matter of the Action and benefits Class Members.  Class Counsel have no relationship with the Non-Profit *Cy Pres* Recipient.

### xii.   Guidance 10:  CAFA Notice

Robinhood will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing.  SA § 4.7.

### xiii.   Guidance 11:  Comparable Outcomes with Past Distributions

Class Counsel submits that the Settlement here compares favorably to these and other class action settlements seeking recovery for investors in securities cases.  *See e.g. In re Zynga Inc. Sec.*

*Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) (Preliminary approval of settlement where Class members received 10 percent of their total estimated losses, which was deemed to be "above the typical recovery in securities litigation"); *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) (Class members were estimated to obtain 17% of their estimated damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (the court, in preliminarily approving a settlement where Plaintiffs received just over 9% of the maximum potential recovery asserted by either party, held that "while this percentage may seem small compared to the potential maximum, that alone is not sufficient reason to reject the Settlement"); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) (the court approved settlement preliminarily despite plaintiffs only recovering 5% of their estimated damages before fee and costs). Below is a chart summarizing these cases:

| Case Name | Settlement Fund | Average Percent Recovery of Potential Damages |
|---|---|---|
| *In re Zynga Inc. Sec. Litig.,* No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) | $23 million | 10% |
| *In re Celera Corp. Sec. Litig.,* No. 5:10-CV-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) | $24 million | 17% |
| *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) | $13.75 million | 9% |
| *In re LDK Solar Sec. Litig.,* No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010*)* | $16 million | 5% |

## C.  <u>The Court Should Conditionally Certify the Class for Settlement Purposes</u>

Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'"  *Sandoval v. Roadlink USA Pac., Inc*., No. EDCV 10-00973, 2011 WL

5443777, at *2 (C.D. Cal. Oct. 9, 2011) (quoting *Amchem*, 521 U.S. at 621).  At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class."  Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment.  All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### i.   This Settlement Meets the Prerequisites of Subdivision (a) of Rule 23

### ii.   Numerosity Rule 23(a)(1)

The Settlement Class contains approximately 150,000 members.  Joint Decl. ¶ 36.

### iii.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).  This requires that the "claims must depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  Commonality is satisfied by "existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.  All questions of fact and law need not be common to satisfy the rule. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010).

For purposes of Rule 23(a)(2), even a single common question is satisfactory. *Wal-Mart*, 564 U.S. at 359; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden," which "only requires a single significant question of law or fact").  At a minimum, Robinhood's platform experienced Outages on March 2-3, 2020 and March 9, 2020, causing harm to its accountholders.

### iv.   Typicality

Typicality ensures that "the interest[s] of the named representative[s] align with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  The typicality requirement is "permissive" and requires only that the representative's claims "are

reasonably coextensive with those of the absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation omitted). Class Representatives are typical of the Settlement Class they seek to represent. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Each alleges that he or she "is a customer of Robinhood" and "attempted to trade" during the Outages. As a result of the Outages, Class Representatives[1] suffered losses. SAC ¶¶ 86-90; 98-102; 122-148; 153-158. Class Representatives' and Class Members' claims arise from the same nucleus of facts, pertain to a common defendant, and are based on the same legal theories. As such, Class Representatives are typical of other Class Members.

### v.   Adequacy of Representation

The Class Representatives are adequate representatives of the class with claims that readily satisfy the typicality standards of Rule 23. Fed. R. Civ. P. 23(a). Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The Ninth Circuit set a two-prong test for this requirement: "(1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Each of the Class Representatives has submitted a declaration attesting to their experiences with the Outages and their work performed on the case, which has included the production of documents, responding to interrogatories, and staying current on case related developments. *See* ECF No. 138-4. Several Class Representatives also sat for depositions and subjected their personal electronic devices for the collection of data. *See, e.g.*, ECF No. 138-4, A-1, A-3; A-4, A-6; A-7; A-8, A-9, A-10, A-11, A-13.

Each of the Class Representatives experienced a calculable loss under the Plan of Allocation for the Settlement Class Members at the time of the Outages, rendering them adequate representatives of the Class. Similarly, proposed Class Counsel of CPM and Kaplan Fox have demonstrated their adequacy by vigorously litigating this case on behalf of the Settlement Class

---

[1] Daniel Beckman, Emma Jones, Mahdi Heidari Moghadam, Howard Morey, Colin Prendergast, Raghu Rao, Michael Riggs, and Jason Steinberg.

1  against well-resourced defendants and highly competent opposing counsel and they have a strong

2  track record of success in prior matters.

3  ###### vi.   This Settlement Meets the Requirements of Subdivision (b)(3) of Rule 23

4  Class Representatives seek conditional certification under Rule 23(b)(3), which provides that

5  a class action can be maintained where: (1) the questions of law and fact common to members of the

6  class predominate over any questions affecting only individuals; and (2) the class action mechanism

7  is superior to the other available methods for the fair and efficient adjudication of the controversy.

8  Fed. R. Civ. P. 23(b)(3); *eBay*, 309 F.R.D. at 604.

9  ###### vii.   Common Liability Questions Predominate Over Individual Damages

10  ###### Questions

11  "Rule 23(b)(3) focuses on the relationship between the common and individual issues."

12  *Hanlon*, 150 F.3d at 1022.  Predominance "tests whether proposed classes are sufficiently cohesive

13  to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24 (1997).  "Rule 23(b)(3)

14  permits certification when one or more of the central issues in the action are common to the class

15  and can be said to predominate ... even though other important matters will have to be tried

16  separately, such as damages or some affirmative defenses peculiar to some individual class

17  members." *Meek v. SkyWest, Inc.*, 562 F. Supp. 3d 488, 495 (N.D. Cal. 2021) (citing *Tyson Foods,*

18  *Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (internal quotations omitted).

19  Here, every Settlement Class Member alleged that they were subject to the same Outages

20  and Robinhood's conduct that caused the harms suffered by Settlement Class Members regarding

21  Robinhood's negligence and gross negligence (gross negligence is not necessarily a separate claim

22  but rather the degree of negligence based on egregiousness of the conduct), Robinhood's breach of

23  its fiduciary duties to the Class, Robinhood's breach of its contractual obligations under the operative

24  Customer Agreement of February 5, 2020 ("Customer Agreement"), and Plaintiffs' restitutionary

25  claims.  These common questions can be resolved for all members of the proposed Settlement Class

26  in a single adjudication.  *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No.

27  3:16-CV-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018); *In re Anthem, Inc. Data Breach*

28  *Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).2018).

**viii.    Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy**

Where, as here, a court is deciding the certification question in a settlement context, it need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620.  Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Robinhood.  *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available.").  Resolution of the predominant issues of fact and law through individual actions is impracticable:  the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly.  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). Fed. R. Civ. P. 23(b)(3).

**D.    The Court Should Appoint CPM and Kaplan Fox as Co-Lead Class Counsel for Purposes of Settlement**

Class Counsel were previously appointed interim co-lead class counsel.  ECF No. 65.  Considering counsel's work in this Action, their collective expertise and experience in handling similar actions, and the resources they have committed to representing the class, they should be appointed as Class Counsel for the proposed settlement class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

**E.    The Court Should Appoint Plaintiffs as Class Representatives for Purposes of Settlement**

The Court should appoint the specified Plaintiffs as Settlement Class Representatives because they have no conflicts with the class and are represented by qualified counsel who will vigorously prosecute the class's interests.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943.

## V.   PROPOSED SCHEDULE FOR PROCEEDINGS

The Parties propose the following timeline for events following this Court's Order preliminarily approving the settlement:

| Event / Deadline | Proposed Time for Compliance |
| --- | --- |
| Settlement Administrator to complete Notice Plan ("Notice Date") | Ninety (90) days after entry of the Preliminary Approval Order.  SA § 1.16. |
| Objection and Exclusion (Opt-Out) Deadline | Sixty (60) days after the Notice Date.  SA § 1.17. |
| Deadline to file Motion for Final Approval, Motion for Service Award, Motion for Approval of the Plan of Allocation, and Motion for Attorneys' Fees and Expenses | Thirty-Five (35) days prior to the Objection and Exclusion Deadline.  SA §§ 9.1-9.2. |
| Deadline to object to Motions for Service Award and for Attorneys' Fees and Expenses | Sixty (60) days after the Notice Date. |
| Deadline to file respond to Objections to the Motion for Final Approval of the Settlement, Motion for Approval of the Plan of Allocation, and Motion for Attorneys' Fees and Expenses and Service Awards | Thirty (30) days following the Objection and Exclusion Deadline. |
| Final Hearing | The Court's discretion, but no sooner than sixty (60) after the Objection and Exclusion Deadline |

## VI.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request the Court certify a Class for settlement purposes, preliminarily approve the proposed Settlement, approve Notice and the selection of the Settlement Administrator, and set a hearing for final approval.


DATED:                                        Respectfully submitted,


                                              COTCHETT, PITRE & McCARTHY, LLP

                                              */s/ Anne Marie Murphy*
                                              Anne Marie Murphy (SBN 202540)
                                              Mark C. Molumphy (SBN 168009)
                                              Tyson C. Redenbarger (SBN 294424)
                                              Julia Peng (SBN 318396)
                                              San Francisco Airport Office Center
                                              840 Malcolm Road, Suite 200
                                              Burlingame, CA 94010
                                              Telephone: (650) 697-6000

Facsimile: (650) 697-0577
*amurphy@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*tredenbarger@cpmlegal.com*
*jpeng@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**

*/s/Matthew B. George*
Matthew B. George (SBN 239322)
Kathleen A. Herkenhoff (SBN 168562)
Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*mgeorge@kaplanfox.com*
*kherkenhoff@kaplanfox.com*
*lking@kaplanfox.com*

*Interim Co-Lead Counsel for Plaintiffs*

NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement; Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding signatures, I, Anne Marie Murphy attest that concurrence in the filing of this document has been obtained.

DATED: August 5, 2022

*/s/Anne Marie Murphy*
Anne Marie Murphy