**COTCHETT, PITRE & MCCARTHY, LLP**
Anne Marie Murphy (SBN 202540)
Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
*amurphy@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*tredenbarger@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (SBN 239322)
Kathleen A. Herkenhoff (SBN 168562)
Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*mgeorge@kaplanfox.com*
*kherkenhoff@kaplanfox.com*
*lking@kaplanfox.com*

Interim Co-Lead Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Robinhood Outage Litigation | Master File No. 3:20-cv-01626-JD |
| | <u>CLASS ACTION</u> |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:    June 15, 2023 |
| | Time:    10:00 a.m. |
| | Judge:  Hon. James Donato |
| | Ctrm:   11, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 15, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, United States District Judge for the Northern District of California, at the San Francisco Courthouse, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, CA 94102, Plaintiffs will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure:

(i)     finally approving the proposed Class Action Settlement Agreement and Release dated August 4, 2022 (attached as Exhibit 1 to the Joint Declaration of Anne Marie Murphy and Matthew B. George in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Joint Decl."), filed concurrently herewith);

(ii)    finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are found satisfied;

(iii)   approving the form and manner of notice to the Settlement Class;

(iv)    approving the selection of the Settlement Administrator;

(v)     appointing Cotchett, Pitre & McCarthy ("CPM") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Co-Lead Class Counsel; and

(vi)    appointing Plaintiffs Daniel Beckman, Emma Jones, Mahdi Heidari Moghadam, Howard Morey, Colin Prendergast, Raghu Rao, Michael Riggs, and Jason Steinberg as Class Representatives.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration, the Settlement Agreement, the Declaration of Cameron R. Azari, Esq. Regarding the Implementation of Notice Plan ("Azari Decl."), all exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

1

## STATEMENT OF ISSUES TO BE DECIDED

2

1.     Whether the Court should grant conditional certification of the Settlement Class; and

3

2.     Whether the Court should grant final approval of the Settlement.

4

Respectfully submitted,

5

Dated:  March 27, 2023                    */s/ Anne Marie Murphy*

6

**COTCHETT, PITRE & McCARTHY, LLP**
Anne Marie Murphy (SBN 202540)

7

Mark C. Molumphy (SBN 168009)
Tyson C. Redenbarger (SBN 294424)

8

San Francisco Airport Office Center
840 Malcolm Road, Suite 200

9

Burlingame, CA 94010
Telephone: (650) 697-6000

10

Facsimile: (650) 697-0577

11

*amurphy@cpmlegal.com*
*mmolumphy@cpmlegal.com*

12

*tredenbarger@cpmlegal.com*

13

Dated:  March 27, 2023                    */s/ Matthew B. George*

14

**KAPLAN FOX & KILSHEIMER LLP**
Matthew B. George (SBN 239322)

15

Kathleen A. Herkenhoff (SBN 168562)
Laurence D. King (SBN 206423)

16

1999 Harrison Street, Suite 1560
Oakland, CA 94612

17

Telephone: 415-772-4700
Facsimile: 415-772-4707

18

*mgeorge@kaplanfox.com*
*kherkenhoff@kaplanfox.com*

19

*lking@kaplanfox.com*

20

*Interim Co-Lead Counsel for Plaintiffs*

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION ...............................................................................................................1

II.     BACKGROUND .................................................................................................................1

    A.    The Litigation and Class Counsel's Efforts ............................................................1

III.    PROPOSED SETTLEMENT ..............................................................................................4

    A.    The Settlement Class and Release ............................................................................4

    B.    The Settlement's Monetary Benefits .......................................................................5

    C.    The Settlement's Notice Plan ...................................................................................5

    D.    Service Awards .........................................................................................................6

    E.    Attorneys' Fees and Expenses .................................................................................6

    F.    Settlement Administrator ..........................................................................................7

IV.     ARGUMENT .......................................................................................................................7

    A.    Class Notice Complied With the Court's Preliminary Approval Order, Rule 23(C) and (E), and Due Process ...................................................................................7

    B.    The Court Should Confirm Its Certification of the Settlement Class .......................8

    C.    Final Approval is Appropriate Because the Proposed Settlement is Fair, Reasonable, and Adequate ........................................................................................9

        i.    The Adequacy of Class Representatives and Class Counsel ...................................11

        ii.   The Parties Negotiated the Settlement at Arm's Length ........................................12

        iii.  The Amount Offered in Settlement Supports Approval ..........................................13

        iv.   The Proposed Treatment of Class Members Relative to Each Other is Fair Under the Plan of Allocation ................................................................................15

        v.    The Class Members' Reaction to the Settlement ....................................................16

        vi.   The Strength of Plaintiffs' Case .............................................................................17

        vii.  The Risks of Continued Litigation .........................................................................17

        viii. The Risks of Maintaining Class Action Status Through Trial ................................18

        ix.   The Advanced Stage of Litigation and Completed Discovery Support the Settlement ...............................................................................................................18

x.      The Experience and Views of Counsel ................................................................ 19

xi.     No Government Participant Was Present ............................................................. 19

xii.    The Request for Attorneys' Fees, Expenses, and Service Awards is Fair and
        Reasonable ......................................................................................................... 19

xiii.   *Cy Pres* Payments are Premature and Can Be Deferred .................................... 21

V.   CONCLUSION .................................................................................................................. 21

NOTICE OF MOTION; MOTION FOR FINAL APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. DMG Mori USA, Inc.*,
    No. 18-CV-02373-JD, 2022 WL 18027883  (N.D. Cal. Dec. 30, 2022) ....................................7

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ..............................................................................................20

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ........................................................................................... 10, 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ....................................................................................................10

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ...................................................................................................13

*Criswell v. Boudreaux*,
    No. 120-CV-01048-DAD-SAB, 2021 WL 5811887 (E.D. Cal. Dec. 7, 2021) ..........................9

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
    No. C 06–3903 THE, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .........................................18

*Hampton v. Aqua Metals, Inc.*,
    No. 17-CV-07142-HSG, 2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) .............................. 10, 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................................................................9

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............................................................................9

*In re Apple Inc. Device Performance Litig.*,
    No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ................................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................. 10, 12

*In re Celera Corp. Sec. Litig.*,
    No. 5:10-CV-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ................................15

*In re Facebook Biometric Info. Privacy Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ................................................................... 10, 12, 13, 15

*In re January 2021 Short Squeeze Trading Litig.*,
    584 F.Supp.3d 1161 (S.D. Fla. 2022) ........................................................................................14

*In re LDK Solar Sec. Litig.*,
    No. C 07-5182 WHA, 2010 WL 3001384 (N.D. Cal. July 29, 2010) ......................................15

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................................20

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 15, 19

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .......................................................................................11

*In re Portal Software Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 6248426  (N.D. Cal. Oct. 25, 2016)...................18

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171  (N.D. Cal. Oct. 27, 2015)..........................14

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..........................................................................................9

*Linda Parker Pennington v. Tetra Tech EC, Inc.*,
  No. 18-CV-05330-JD, 2022 WL 899843 (N.D. Cal. Mar. 28, 2022)...........................8, 9

*Musgrove v. Jackson Nurse Prof'ls, LLC*,
  No. CV 17-6565 FMO (SSx), 2022 WL 2092656 (C.D. Cal. Jan. 11, 2022)...................9

*Noll et al. v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) .....................................................................................8

*Norcia v. Samsung Telecommunications Am., LLC*,
  No. 14-CV-00582-JD, 2021 WL 3053018 (N.D. Cal. July 20, 2021).........................7, 8

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir.1982) ..........................................................................................17

*Radcliffe v. Experian Info. Solutions, Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ................................................................................20, 21

*Rodriguez v. W. Publ'g Corp.*,
  563 F. 3d 948 (9th Cir. 2009) ...............................................................13, 17, 18, 19

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ......................................................................................12

*Rosado v. Ebay Inc.*,
  No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ......................20

*Ross v. Trex Co., Inc.*,
  No. 09–cv–00670–JSW, 2013 WL 6622919 (N.D. Cal. Dec. 16, 2013)....................12, 13

*Russell v. Kohl's Dept. Stores, Inc.*,
  No. ED CV 15-1143 RGK, 2016 WL 6694958 (C.D. Cal. Apr. 11, 2016) ......................8

*Sarkisov v. StoneMor Partners L.P.*,
  No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015)...........................13

*Saucillo v. Peck*,
25 F.4th 1118 (9th Cir. 2022) ................................................................................ 12

*Smith v. CRST Van Expedited, Inc.*,
No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ..................... 19, 20

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. Jan. 5, 2016) ................................................................. 9

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .............................................................................. 19

*Williamson v. McAfee, Inc.*,
No. 5:14-cv-00158-EJD, 2016 WL 4524307 (N.D. Cal. Aug. 30, 2016) ......................... 8

**Rules**

Federal Rules of Civil Procedure
  Rule 23 ......................................................................................................... 7, 8
  Rule 23(a) .................................................................................................... 8
  Rule 23(b)(3) ................................................................................................ 8
  Rule 23(c)(2)(B) ............................................................................................ 7
  Rule 23(e)(1) ............................................................................................... 7, 9
  Rule 23(e)(2) ................................................................................................ 9
  Rule 23(e)(2)(A) ............................................................................................ 11
  Rule 23(g)(1) ................................................................................................ 12
  Rule 23(g)(3) ................................................................................................ 12
  Rule 23(2)(c)(iii) ........................................................................................... 20

**Other Authorities**

4 Newberg on Class Actions (5th ed.)
  § 13:10 ....................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After more than two years of contentious litigation, followed by months of settlement negotiations, Plaintiffs request final approval of a $9.9 million non-reversionary cash settlement on behalf of approximately 146,000 Robinhood investors who experienced losses associated with the March 2020 Outages of Robinhood's trading platform.  Since the Court granted preliminary approval on December 2, 2020 (ECF No. 186), Plaintiffs have obtained the data necessary to calculate proposed settlement payments, determined those payments, and issued notice by U.S. Mail via postcard, email, and targeted digital notice online.  Settlement Class Members have been apprised of their estimated recovery from this Settlement in their individualized Long Form Notice that was distributed by email.  If approved, the Settlement provides for direct distribution of payments to Settlement Class Members without requiring any claims forms.

The Settlement is the product of well-informed, arms'-length settlement negotiations— between experienced counsel facilitated by an experienced mediator.  It arrived at a fully informed, critical juncture in the litigation, after the completion of fact and expert discovery and extensive motions, but before the Plaintiffs and Settlement Class Members faced the risks of pending class certification, *Daubert* challenges, and summary judgment proceedings.  The Settlement presents a strong recovery and delivers tangible and immediate compensation to the Settlement Class, particularly considering the substantial risks protracted litigation would present.  The Court should grant final approval.

## II.    BACKGROUND

### A.  The Litigation and Class Counsel's Efforts

While a more detailed history of the litigation is contained in the Joint Declaration, Plaintiffs provide the following summary of relevant background.  Between March 2 and 3, 2020, Robinhood experienced an Outage of its securities trading app and website that began just after Monday's market open and extended well into Tuesday, rendering systems nonfunctional or inaccessible to Robinhood's millions of customers.  On March 9, users again found themselves unable to access their accounts or transact on the markets due to an outage of Robinhood's systems throughout the

morning.  Beginning March 5, 2020, a series of putative class actions were filed against Robinhood in state and federal court asserting claims arising from the Outages.  Joint Decl. ¶¶ 4-5.  Over a dozen subsequent related actions were filed in, removed to, or transferred to this District, and they were eventually consolidated on July 14, 2020.  ECF No. 59.

After appointment of interim co-lead class counsel, ECF No. 65, Plaintiffs filed a consolidated amended complaint ("Complaint") on August 21, 2020.  ECF No. 74.  On October 5, 2020, Robinhood moved to dismiss the complaint, strike the Plaintiffs' class allegations, and stay discovery.  ECF Nos. 76-77.  On November 5, 2020, the Court denied Robinhood's Motion to Stay. At the February 18, 2021, Motion to Dismiss hearing, the Court gave its findings on the record, largely denying Robinhood's Motion with the exception of dismissing Defendant Robinhood Markets, Inc., without prejudice.  ECF No. 95.  At the Court's direction to select a mediator, the parties chose David Geronemus of JAMS.  ECF No. 100.

Discovery in this case was thorough and robust.  The parties engaged in extensive negotiations over the production of Robinhood's documents and customer account and trading information.  Joint Decl. ¶¶ 13-14.  Robinhood produced over 50,000 documents and Plaintiffs took ten depositions of key Robinhood executives and engineers.  *Id.* at ¶¶ 15-17.  Given that the Outages prevented Robinhood's systems from being able to receive and execute most orders, the bulk of the account information available included: (1) account and trading history information for the months preceding the Outages; and (2) some limited trade information before and during the Outages as well as trading activity that occurred once Robinhood's systems were back online.  In consultation with Plaintiffs' damages expert, Plaintiffs negotiated a sampling protocol that eventually led to the production of account and trading information for approximately 40,000 Robinhood active users. *Id.* at ¶ 14.

Robinhood took extensive discovery of the Plaintiffs, serving document requests and interrogatories and deposing nine of them.  *Id.* at ¶ 19.  Additionally, Robinhood requested inspections of Plaintiffs' cell phones/devices that were used to access and/or trade on Robinhood's app, which Plaintiffs provided through data extractions.  *Id.*  Even with a compressed discovery

schedule, the parties completed discovery prior to the April 7, 2021 cutoff by completing multiple depositions simultaneously.  *Id*. at ¶ 20.

The Parties exchanged initial expert reports on June 25, 2021, with Plaintiffs producing three experts on regulatory issues, securities brokerage operations, and Plaintiffs' proposed damages models.  *Id*. at ¶ 23.  Robinhood submitted an initial expert report and then submitted three rebuttal reports challenging each of Plaintiffs' experts' opinions.  The Parties deposed each expert.  *Id*. at ¶¶ 24-25.

The parties attended a mediation with Mr. Geronemus on July 27, 2021, although the matter did not settle.  On October 22, 2021, Plaintiffs filed a motion for class certification, supported by over 50 documentary exhibits and deposition excerpts, the Declarations of Plaintiffs, and their expert reports.  ECF No. 138-40.  Robinhood opposed Plaintiffs' Motion on December 3, 2021, and also filed a *Daubert* motion to exclude the testimony and report of Plaintiffs' damages expert, Scott E. Walster of Global Economics Group.  ECF Nos. 145-46.  Each motion was fully briefed and heard by the Court in-person on February 24, 2022.  At the hearing, the Court had multiple questions about Plaintiffs' damages theories and requested a "hot tub" hearing featuring the parties' respective economist experts that was set for June 9, 2022.  ECF Nos. 161, 167-68.

On February 18, 2022, prior to the class certification hearing, Robinhood filed a Motion for Summary Judgment on all of Plaintiffs' claims, relying heavily on the terms of Robinhood's Customer Agreement and a recent federal court decision in a separate multi-district litigation against Robinhood that dismissed those Plaintiffs' claims in *In re January 2021 Short Squeeze Trading Litig.*, 584 F.Supp.3d 1161 (S.D. Fla. 2022), *appeal filed*, *Juncadella v. Robinhood Fin. LLC*, No. 22-10669 (11th Cir. Mar. 02, 2022).  ECF No. 160.  Robinhood filed a *Daubert* Motion to Exclude the opinions and testimony of Plaintiffs' brokerage operations expert, Peter Vinella.  ECF No. 159. At the class certification hearing, the Court stayed briefing on those Motions pending the "hot tub" hearing with the parties' economists.

While these Motions were pending, the parties continued efforts to resolve the matter, facilitated by Mr. Geronemus, over the course of many months.  Joint Decl. ¶¶ 29-30.  On May 10, 2022, the parties reached a settlement in principle that was then commemorated into a written

memorandum of understanding and a notice of settlement was filed with the Court on May 26, 2022. *Id*. at ¶ 30.  The Parties engaged in several rounds of negotiations before finalizing the terms of the Settlement Agreement now submitted for the Court's approval.  After the preliminary approval hearing on September 8, 2022, the Court requested some additional information and modifications to the notice and payment distribution plans, and Plaintiffs filed a supplemental brief addressing those issues on October 7, 2022.  ECF No. 185.  On December 2, 2022, the Court preliminarily approved the Settlement. ECF No. 186 (the "Preliminary Approval Order").

## III.   PROPOSED SETTLEMENT

### A.  The Settlement Class and Release

The proposed Settlement Class Members are a subset of Robinhood customers in March of 2020 who fall within one or more of three categories and were originally proposed as the "VWAP Subclass," the "SPY Option Subclass," and the "Failed Trade Subclass" in Plaintiffs' Class Certification Motion.  The Class Members are identified by Plaintiffs' damages expert based on the Customer Trading Information, using the "Ex Post" methodologies described in the Expert Report of Scott E. Walster ("Walster Report").  ECF No. 173-3 (Walster Decl. ¶ 4).  Based on the data produced by Robinhood during the litigation, Plaintiffs identified approximately 150,000 Settlement Class Members incurring approximately $20.4 million in losses under Plaintiffs' damages methodologies.  Joint Decl. ¶ 37; ECF No. 173-3 (Walster Decl. ¶ 4).  After preliminary approval was granted, Plaintiffs' expert analyzed the data and was remarkably close to the sampled.  Plaintiffs ultimately identified 146,418 Settlement Class Members who incurred $20,555,558.36 in losses. Joint Decl., ¶ 37; Declaration of Scott Walster, ¶ 7.

Settlement Class Members have one or more Qualifying Trades in the following groups:

1.  **VWAP Loss Trades** includes any person who closed one or more position(s) on March 3, 2020, at a loss relative to the Volume Weighted Average Price "(VWAP)" of those positions during the March 2 and 3, 2020 Outages.

2.  **SPY Options Trades** includes any person who held a SPDR S&P 500 ("SPY") option position expiring on March 2, 2020, and experienced a loss relative to the VWAP of those options during the March 2, 2020 Outage.

3. **Failed Marketable Trades** includes any person who experienced a Failed Equity Trade that became marketable during the March 2 and 3 Outages at a loss relative to the price at the end of the March 2 and 3 Outages and/or the transaction price obtained through March 4, 2020; or who experienced a Failed Equity Trade that became marketable during the March 9 Outage at a loss relative to the price at the end of the March 9 Outage and/or the transaction price obtained through March 10, 2020.

Joint Decl. ¶ 36; Walster Decl. ¶ 4.  Since preliminary approval, all Settlement Class Members have been identified through Robinhood's Customer Trading Information and their estimated Settlement Payment has been determined by Plaintiffs' damages expert pursuant to the Plan of Allocation. Walster Decl., ¶ 7.  Importantly, Settlement Class Members will **<u>not</u>** have to file a claim to obtain their Settlement Payment and the payment will be automatically credited to their Robinhood account if it is still active.  SA § 2; Joint Decl. ¶ 32.  Alternatively, Settlement Class Members may elect to receive their payment digitally to another account such as Paypal or Venmo, or by check.  *Id.*

**B.  <u>The Settlement's Monetary Benefits</u>**

The Settlement provides substantial monetary relief in the form of a non-reversionary $9.9 million Settlement Fund that will be fully distributed to Class Members according to the proposed Plan of Allocation.  With a recovery of $9.9 million on the $20.5 million in estimated losses, Class Members will recover just under 50% of their calculated losses (before deductions for Notice Administration, Attorneys' Fees and Costs).  Joint Decl. ¶ 44; Walster Decl. ¶ 7.

**C.  <u>The Settlement's Notice Plan</u>**

Since preliminary approval was granted, Plaintiffs' revised Notice Plan approved by the Court has been implemented beginning on March 2, 2023.  Azari Dec., ¶ 7.  Chief components of the Notice Plan includes sending the Long Form Notice via email *and* a postcard notice via U.S. Mail to all Class Members using the Settlement Class Contact Information.  *Id.*, ¶¶ 14-17.  The Notice Plan also established a Settlement Website, www.RobinhoodOutagesClassAction.com, where Settlement Class Members can access the Settlement Agreement, the Plan of Allocation, the Consolidated Complaint, the concurrently filed Attorneys' Fees and Expense Motion, obtain further information via phone or email, and can make changes to how they choose to receive their settlement

1  payment.  SA § 4.1; Azari Decl. ¶ 26.  Importantly, in addition to providing general information

2  regarding the settlement, the Long Form Notice is tailored to inform each Settlement Class Member

3  of their estimated *pro rata* Settlement Payment and include the symbol of the qualifying trade(s),

4  the estimated loss under each of the three categories, and the deduction for any credits or payments

5  already made under Robinhood's Goodwill program.  SA, Ex. 1.  The Long Form Notice also

6  includes the Plan of Allocation, which informs the Settlement Class of the methodology for the

7  Settlement Payment calculations.  Joint Decl. ¶¶ 38-39.

8      The Notice Plan also includes a currently running digital notice campaign via Google,

9  Facebook, and Instagram that specifically designed to reach Class Members by using their email

10  addresses and placing ads in their social media channels that direct them to the Settlement Website.

11  Azari Decl. ¶¶ 21-25; SA § 4.1(c).  Additionally, a toll-free telephone number monitored by live

12  agents, an email address, and physical mailing address is available for Class Members to contact the

13  Settlement Administrator or Class Counsel directly.  SA § 4.3; Azari Decl. ¶¶ 28-30.  Although the

14  Notice Plan is only three weeks underway, Settlement Class Members have been using the website

15  and contacting Class Counsel with questions.  The costs of Notice will be paid out of the Settlement

16  Fund.  *Id.* § 3.4.  The Notice Plan is the best practicable notice under the circumstances and meets

17  all due process requirements.  Azari Decl. ¶¶ 34-38.

18      **D.  <u>Service Awards</u>**

19      Concurrently with this filing, Plaintiffs will seek Service Awards for their work on behalf of

20  the Settlement Class.  Plaintiffs intend to request $2,500 per Plaintiff in this case, which amounts to

21  $37,500 for all Service Awards.  Joint Decl. ¶ 56.  Each Plaintiff has dutifully performed their duties

22  in this case, including retaining counsel, providing documents and information to counsel for

23  investigatory and discovery purposes, and timely responding to inquiries from counsel.  *Id.*  Per

24  Northern District Guidelines, Plaintiffs are filing declarations supporting proposed Service Awards.

25      **E.  <u>Attorneys' Fees and Expenses</u>**

26      The Settlement Agreement permits Plaintiffs to seek an award of Attorneys' Fees and

27  Expenses.  Concurrently with this filing, Plaintiffs will file a Motion for Attorneys' Fees and

28  Expenses in connection with final approval proceedings that will seek no more than 30% of the

1  Settlement Fund (or no more than $2,970,000) in Attorneys' Fees and up to $1,102,432.84 in

2  unreimbursed expenses.  Joint Decl. ¶ 46.

3      **F.  Settlement Administrator**

4          Plaintiffs engaged in a competitive bid process to select the proposed Settlement

5  Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").  Plaintiffs prepared a written

6  RFP that was submitted to seven experienced class action notice providers.  Plaintiffs ultimately

7  selected Epiq, who presented one of the two most cost-effective bids that also implemented the notice

8  procedures that would be appropriate in this matter.  SA § 3; *see generally* Azari Decl.  The

9  Settlement Administration Expenses shall not exceed $225,000 (Joint Decl. ¶ 58) and will be paid

10 out of the Settlement Fund.  SA § 2.1(d).

11 **IV.   ARGUMENT**

12     **A.  Class Notice Complied With the Court's Preliminary Approval Order, Rule 23(C)**

13         **and (E), and Due Process**

14         "Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims of a certified

15 class may be settled only with the Court's approval. Rule 23(e) outlines the procedures that apply to

16 the proposed class settlement, including the requirement to direct notice in a reasonable manner to

17 all class members who would be bound by the proposal." *Arnold v. DMG Mori USA, Inc.*, No. 18-

18 CV-02373-JD, 2022 WL 18027883, at *1 (N.D. Cal. Dec. 30, 2022) (citing Fed. R. Civ. P. 23(e)(1));

19 *see also Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2021 WL

20 3053018, at *1 (N.D. Cal. July 20, 2021). Adequate notice sets forth the nature of the action, defines

21 the class to be certified, the class claims and defenses at issue, while also explaining to class members

22 that they may enter an appearance through counsel if so desired, request exclusion from the

23 settlement class, and that any judgment will be binding on all class members. *See* Fed. R. Civ. P.

24 23(c)(2)(B).

25         At Preliminary Approval, the Court approved the proposed Notice Plan, finding "that its

26 dissemination substantially in the manner and form set forth in the Settlement Agreement meets the

27 requirements of Federal Rule of Civil Procedure 23  and due process, constitutes the best notice

28 practicable under the circumstances, and shall constitute due and sufficient notice to all Persons

entitled thereto of the pendency of the Action." Preliminary Approval Order at 4.  Now that Plaintiffs have effectuated the Notice Plan, they have satisfied the requirements of Rule 23.  *Accord Noll et al. v. eBay, Inc.*, 309 F.R.D. 593, 604-5 (N.D. Cal. 2015).  Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23.  *See id.*; *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's Dept. Stores, Inc.*, No. ED CV 15-1143 RGK, 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).

## B. The Court Should Confirm Its Certification of the Settlement Class

This Court has already ruled that certification of the claims in this matter are appropriate for class treatment and reaffirmed this conclusion in the Preliminary Approval Order.  Nothing has changed since the Preliminary Approval Order that would alter the Court's certification of a settlement class.  All requirements of Rule 23(a) and 23(b)(3) remain satisfied.  As discussed in the Preliminary Approval Order, the Court conditionally certified a class of:

> "[a]ll Robinhood accountholders in the United States who: (i) closed a position on March 3, 2020, at a loss relative to the Volume Weighted Average Price ("VWAP") during the March 2 and 3, 2020 Outages; (ii) held SPDR S&P 500 options expiring on March 2, 2020 and experienced a loss relative to the VWAP during the March 2, 2020 Outage; (iii) who experienced a Failed Equity Trade during the March 2 and 3 Outages at a loss relative to the price at the end of the March 2 and 3 Outages and/or the transaction price obtained through March 4, 2020; or (iv) who experienced a Failed Equity Trade during the March 9 Outage at a loss relative to the price at the end of the March 9 Outage and/or the transaction price obtained through March 10, 2020."

Preliminary Approval Order at 2.

Accordingly, the Court should again confirm certification of the proposed settlement class under Rule 23(a) and Rule 23(b)(3).  *Norcia*, 2021 WL 3053018, at *2 (finally approving class definition because "[n]othing material has changed on this score since preliminary approval."); *Linda Parker Pennington v. Tetra Tech EC, Inc.*, No. 18-CV-05330-JD, 2022 WL 899843, at *4 (N.D. Cal. Mar. 28, 2022) ("Before turning to the application of these factors here, the Court confirms the certification of the proposed settlement class under Rules 23(a) and 23(b)(3) of the

1  Federal Rules of Civil Procedure. Nothing material has changed on this score since preliminary
2  approval.").

3  **C.   Final Approval is Appropriate Because the Proposed Settlement is Fair, Reasonable,**
4  **and Adequate**

5  "Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the claims of a certified
6  class may be settled only with the Court's approval." *Linda Parker Pennington*, 2022 WL 899843,
7  at *3 (citing Fed. R. Civ. P. 23(e)(1)). "At the final approval stage, the primary inquiry is whether
8  the proposed settlement 'is fundamentally fair, adequate and reasonable.'"  *Criswell v. Boudreaux*,
9  No. 120-CV-01048-DAD-SAB, 2021 WL 5811887, at *4 (E.D. Cal. Dec. 7, 2021) (quoting *Lane v.*
10  *Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012), and citing *Hanlon v. Chrysler Corp.*, 150 F.3d
11  1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.
12  338 (2011)).  However, the importance of preliminary settlement approval—which was based here
13  on a strong record and after a hearing—weighs heavily in the final settlement approval calculus.  *See*
14  *generally* Preliminary Approval Order; *see also Musgrove v. Jackson Nurse Prof'ls, LLC*, No. CV
15  17-6565 FMO (SSx), 2022 WL 2092656, at *4 (C.D. Cal. Jan. 11, 2022) ("[a]lthough '[c]loser
16  scrutiny is reserved for the final approval hearing[,]' . . . 'the showing at the preliminary approval
17  stage—given the amount of time, money, and resources involved in, for example sending out . . .
18  class notice[ ]—should be good enough for final approval.'" (quoting respectively, *Harris v. Vector*
19  *Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011), and *Spann v. J.C. Penney Corp.*,
20  314 F.R.D. 312, 310 (C.D. Cal. Jan. 5, 2016), and citing 4 Newberg on Class Actions § 13:10 (5th
21  ed.)).

22  Under Rule 23(e)(2), the Court may approve a proposal that would bind class members only
23  after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

24  (A)   the class representatives and class counsel have adequately represented
    the class;
25  (B)   the proposal was negotiated at arm's length;
26  (C)   the relief provided for the class is adequate, taking into account:
        (i)   the costs, risks, and delay of trial and appeal;
27        (ii)   the effectiveness of any proposed method of distributing relief to
            the class, including the method of processing class-member
            claims;
28        (iii)   the terms of any proposed award of attorney's fees, including

timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 623–24 (N.D. Cal. 2021), *appeal dismissed,* No. 21-15555, 2021 WL 2660668 (9th Cir. June 22, 2021), *and aff'd,* No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022).

Additionally, to assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth* at 946.  The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 947 (quotations and citation omitted).  The Ninth Circuit has identified three indicia of possible collusion:

(1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)

"Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Hampton v. Aqua*

*Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *7 (N.D. Cal. Oct. 5, 2021) (citation omitted).

As detailed below, the Settlement deserves approval because the Class was adequately represented, the Settlement was negotiated at arm's length based on a complete record of fact and expert discovery, the relief is adequate, and the proposal treats Class Members equitably relative to each other.  Under the heightened fairness inquiry applied to settlements prior to class certification, the Settlement contains no signs of collusion.  The Settlement Agreement does not provide Class Counsel with a disproportionate distribution, there is no "clear sailing" arrangement, and there is no reversion of unclaimed funds to Robinhood.

### i.    The Adequacy of Class Representatives and Class Counsel

Plaintiffs respectfully ask this Court to finally approve the designation of Daniel Beckman, Emma Jones, Mahdi Heidari Moghadam, Howard Morey, Colin Prendergast, Raghu Rao, Michael Riggs, and Jason Steinberg as Class Representatives for purpose of this settlement.  They are members of the class they seek to represent, they have intimate knowledge of this case, they understand their duties as a class representative, and they have no conflicts of interest with other Class Members. Rule 23(e)(2)(A).   The remaining Plaintiffs in this case – Gwaltney, Kuri, Leith, Mahrouyan, Russell, Ward, and Xia – are not members of the Settlement Class and are dismissing their claims without prejudice but have preserved their rights to pursue their claims against Robinhood in their individual capacity.  SA § 7.1.  The Court should appoint the specified Plaintiffs as Settlement Class Representatives because they have no conflicts with the class and are represented by qualified counsel who will vigorously prosecute the class's interests.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

Likewise, and as this Court stated in its Preliminary Approval Order, CPM and Kaplan Fox should be confirmed as Co-Lead Class Counsel for purposes of settlement.  *See* Preliminary Approval Order at 2; *see also* ECF No. 65 (Class Counsel were previously appointed interim co-lead class counsel).  Rule 23(e)(2)(A) requires that Plaintiffs and Class Counsel "have adequately represented the class." The long history of the litigation, the mediation process, and the strong results obtained demonstrate that the Class was well represented.  Plaintiffs and their counsel have

1  vigorously prosecuted this action on behalf of Settlement Class Members and will continue to

2  adequately protect the interests of the Settlement Class.  *See generally* Joint Decl.  Considering

3  counsel's work in this Action, their collective expertise and experience in handling similar actions,

4  and the resources they have committed to representing the class, they should be appointed as Class

5  Counsel for the proposed settlement class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

6  Because "[n]othing has changed" with regard to the Class Representatives or Class Counsel

7  since Preliminary Approval, the Court should finally approve these requests.  *In re Facebook*, 522

8  F. Supp. 3d at 625.

9  ## ii.    The Parties Negotiated the Settlement at Arm's Length

10  None of the signs of potential collusion identified by the Ninth Circuit are present here.  *See*

11  *In re Bluetooth*, 654 F.3d at 947.  Counsel is not seeking a disproportionate distribution of the

12  Settlement (seeking no more than 30% for attorneys' fees); the Settlement does not contain a "clear

13  sailing provision;" and there is no reversion of any Settlement Funds.  Joint Decl. ¶¶ 31, 46; *see also*

14  SA § 2; *compare Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1060 (9th Cir. 2019) (reversal of

15  the district court's approval of the settlement based on the existence of a clear sailing agreement, the

16  disproportionate cash distribution to attorneys' fees, and reversionary funds.)

17  Moreover, Class Counsel engaged in extensive, adverse negotiations with Robinhood, and

18  fully considered and evaluated the fairness of the Settlement.  The protracted and hard-fought

19  negotiations included the assistance of an experienced mediator, David Geronemus of JAMS.  At

20  his direction, Plaintiffs and Defendants submitted comprehensive mediation briefs and attended a

21  full-day mediation.  Joint Decl. ¶ 29.  After nearly a year of negotiations, the Parties ultimately

22  reached an agreement.  Throughout the Action and settlement negotiations, Robinhood has been

23  vigorously represented by Debevoise & Plimpton LLP and Farella Braun + Martel LLP.  Such

24  indicia of non-collusive negotiations (and terms) further establishes, under heightened scrutiny, that

25  the Settlement is fair.  *See In re Bluetooth*, 654 F.3d at 946-47, and *Briseño,* 998 F.3d at 1023 ("[i]n

26  reviewing settlements struck before class certification, district courts must apply these so-called

27  *Bluetooth* factors to smoke out potential collusion.");  *see also Saucillo v. Peck*, 25 F.4th 1118, 1130

28  (9th Cir. 2022); *Ross v. Trex Co., Inc*., No. 09–cv–00670–JSW, 2013 WL 6622919, at *3 (N.D. Cal.

Dec. 16, 2013) ("[T]here is no fraud or collusion underlying this Settlement, and it was reached after good faith, arms'-length negotiations, warranting a presumption in favor of approval.") (citation omitted); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]).

### iii.    The Amount Offered in Settlement Supports Approval

As stated by this Court, the primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169, at *3 (N.D. Cal. Mar. 18, 2015) (citations omitted). "For obvious reasons, the adequacy of relief provided for the class typically is the make-or-break factor in the final approval of a class settlement." *In re Facebook*, 522 F. Supp. 3d 617 at 626. With a recovery of $9.9 million on the $20.5 million in estimated losses, Plaintiffs will recover just under 50% of their calculated losses (before deductions for Notice Administration, Service Awards, and Attorneys' Fees and Expenses). Plaintiffs submit that a nearly 50% recovery in a complex case involving an unprecedented Outage is a significant recovery that will meaningfully compensate Settlement Class Members for their proposed losses. The Settlement further allows Settlement Class Members that have initiated other legal proceedings against Robinhood or are unhappy with the Settlement Payment, to opt-out and preserve their rights. There is no opt-out threshold by which the Settlement will fail if it is exceeded. Joint Decl. ¶ 44; *see generally,* SA.

In the alternative, there are significant legal issues that were not typical and that presented real risks to Plaintiffs to continue litigating the Action. First, the scope and magnitude of the Outages is unprecedented. There is no putative class action that has laid a blueprint for litigation and resolution, which differentiates this case from those arising from typical consumer or securities fraud cases predicated on a failure to disclose. Joint Decl. ¶ 62. Second, given that the Outages prevented documentation for most of the trading records, Robinhood has argued extensively that its own

alleged misconduct precluded Plaintiffs' ability to determine issues of Article III standing and damages on a class-wide basis. *Id.* The Court raised similar concerns to Plaintiffs, particularly at the hearing on Plaintiffs' Motion for Class Certification. *Id.* Third, Robinhood filed for summary judgment alleging that its operative customer agreement exculpated it from any claims alleged in this case, an argument that was successful at obtaining dismissal of other Robinhood investors' claims in a putative class action concurrently litigated in multidistrict litigation in Florida. *See In re January 2021 Short Squeeze Trading*, 584 F.Supp.3d 1161. Fourth, this case raised a number of legal questions of first impression (that are inherently risky), such as whether Robinhood had common law or regulatory obligations to maintain contingency plans for traders on an online-only securities trading platform and whether Plaintiffs' theories of liability under California law would withstand Robinhood's contrary arguments. Joint Decl. ¶ 62. For example, does Robinhood owe its customers a fiduciary duty to maintain an operable online platform? Does the economic loss doctrine bar Plaintiffs' common law claims? Does the customer agreement exculpate Robinhood from liability?

After careful consideration of these issues and weighing the risks of proceeding with the Action, Class Counsel determined that the Settlement Agreement, providing a $9.9 million non-reversionary fund, was the best course of action. Given the serious risks involved in continuing the case, chief among them—obtaining class certification, defending the inevitable Rule 23(f) petition if class certification was granted, defeating summary judgment, defeating multiple *Daubert* motions, and prevailing at trial—all in a relatively untrodden area of the law. And, even if Plaintiffs successfully proved their case at trial, the amount of recovery, if any, could vary widely depending on other factors, including the Court's discretion. Crucially, even if anything were recovered, it would take years to secure, as Robinhood undoubtedly would appeal any adverse judgment. In comparison, the Settlement provides a guaranteed, immediate, and substantial cash recovery of $9.9 million.

Furthermore, Class Counsel submits that the Settlement here compares favorably to these and other class action settlements seeking recovery for investors in securities cases. *See e.g. In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *11 (N.D. Cal. Oct. 27, 2015)

(approval of settlement granted where Class members received 10 percent of their total estimated losses, which was deemed to be "above the typical recovery in securities litigation"); *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (Class members were estimated to obtain 17% of their estimated damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (the court, in preliminarily approving a settlement where Plaintiffs received just over 9% of the maximum potential recovery asserted by either party, held that "while this percentage may seem small compared to the potential maximum, that alone is not sufficient reason to reject the Settlement"); *In re LDK Solar Sec. Litig.*, No. C 07-5182 WHA, 2010 WL 3001384, at *2-3 (N.D. Cal. July 29, 2010) (the court approved settlement preliminarily despite plaintiffs only recovering 5% of their estimated damages before fee and costs).

### iv. The Proposed Treatment of Class Members Relative to Each Other is Fair Under the Plan of Allocation

As set forth in the proposed Plan of Allocation, Class Members are eligible for payment if they experienced a loss pertaining to a Qualifying Trade during the Outages. *See* SA, Ex. 1.  Class Members will receive direct payment based on a *pro rata* adjustment.  *Id*.  No segment of Class Members is treated more favorably than any other.  Accordingly, each Class Member with a "valid claim will receive a pro rata share of the common fund, less court-approved fees, expenses and other payouts[]" and thus "[t]his factor weighs in favor of final approval." *In re Facebook*, 522 F. Supp. 3d at 629.

To determine each Settlement Class Members' Settlement Payment, Plaintiffs' expert, Scott Walster of Global Economics Group, used the Customer Trading Information to calculate Settlement Payments in accordance with the Plan of Allocation.  *See* Walster Decl. ¶¶ 6-7.  All Settlement Payments are offset by any modest payments made to the Settlement Class Member paid by Robinhood as a result of its Goodwill Program pertaining to the March 2020 Outages.  *Id*.

For the **VWAP Loss Trades** for those who closed all or a portion of a position on March 3, 2020, the VWAP(s) for the corresponding security(s) on March 2-3, 2020 is determined from available market data.  The Settlement Class Member's loss for each security is calculated as the difference between the price of the trade and the VWAP multiplied by the number of shares traded

1   or the number of underlying shares represented by the option contract(s) traded.  *See* SA, Ex. 1;

2   Walster Decl. Ex. 1.

3          For the **SPY Options Trades** for those who held a SPDR S&P 500 ("SPY") option Position

4   expiring on March 2, 2020, the loss for each option is calculated as the value of the investment based

5   on the VWAP during the March 2, 2020 Outage less any gain resulting from the difference between

6   the strike price and the underlying SPY price for in-the-money options at expiration on March 2,

7   2020.  *See* SA, Ex. 1; Walster Decl. Ex. 1.

8          For the **Failed Marketable Trades** for those who experienced a Failed Equity Trade of a

9   marketable order during the March 2 and 3 Outages the loss is calculated as the difference between

10  the price obtained when executing the transaction once the Outage ended through March 4, 2020

11  and the price of the failed transaction once it became marketable multiplied by the number of shares

12  traded or the number of underlying shares represented by the option contract(s) traded.  For

13  Settlement Class Members who experienced a Failed Equity Trade of a marketable order during the

14  March 9 Outage the loss is calculated as the difference between the price obtained when executing

15  the transaction once the Outage ended through March 10, 2020 and the price of the failed transaction

16  once it became marketable multiplied by the number of shares traded or the number of underlying

17  shares represented by the option contract(s) traded.  If a new price for the failed transaction was not

18  obtained through March 4, 2020 or March 10, 2020, respectively, the loss is determined as the

19  difference between the price of the security once the corresponding Outage ended and the price of

20  the failed transaction multiplied by the number of shares traded or the number of underlying shares

21  represented by the option contract(s) traded.  *See* SA, Ex. 1; Walster Decl. Ex. 1.  The Settlement is

22  also designed so that any residual funds are distributed to Class Members if economically feasible.

23  *Id.* ¶ 2.3(f).

24                    **v.   The Class Members' Reaction to the Settlement**

25          Given that notice was just distributed three weeks prior to this filing, Plaintiffs will more

26  fully address this in the reply papers prior to the hearing.  To date, 7 opt-outs have been received by

27  the Notice Administrator and 1 objection has been filed although Class Counsel have also received

28  positive feedback from Class Members.  Azari Decl., ¶ 31; Joint Decl., ¶ 33.

### vi.     The Strength of Plaintiffs' Case

Here, as set forth in the Joint Declaration, Class Counsel engaged in lengthy arm's-length negotiations and were thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  Joint Decl. ¶¶ 29-30.  Although Plaintiffs and Class Counsel had confidence in their claims, they also recognize that they would face risks on class certification, summary judgment, and trial.  Robinhood vigorously denies Plaintiffs' allegations, and at the time of Settlement, had made clear that it would continue to pursue its motion for summary judgement.  In addition, cross *Daubert*-motions were pending, Robinhood would no doubt present an aggressive defense at trial, and there was no assurance that the Class would prevail – or even if they did, that they would be able to obtain an award of damages significantly more than achieved here absent such risks.  Thus, the proposed Settlement provides the Class with an good opportunity to obtain significant relief at this stage in the litigation. The Settlement also abrogates the risks that might prevent them from obtaining any relief.

### vii.    The Risks of Continued Litigation

Based upon the procedural posture of the case and pre-trial preparations, the terms and conditions of this Settlement are fair, reasonable, and adequate to the Class and in their best interests given the risks of continued litigation.   Approval of a class settlement is warranted when the settlement helps to avoid continued litigation that would delay or deprive the class of relief, and would "save [] the time, expense, and inevitable risk of litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983); *see also Rodriguez*, 563 F.3d at 966 (favoring settlement where "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years"). If Plaintiffs do not settle their claims against Robinhood, Plaintiffs will face a number of obstacles in litigating this case through class certification, trial, and judgment.

All of the pertinent facts, discovery, and documents had been vetted by the time the Settlement was reached.  Given the posture of the case, the Settlement is appropriate because it guarantees a substantial monetary recovery now without the risks of trial, loss and potential appeals. Thus, while Plaintiffs believe that the claims have merit, Plaintiffs concluded that there was a risk

that the proposed Settlement Class could recover less than the Settlement, or nothing at all, if the Action continued. The assessment of these very real risks to the proposed Settlement weigh in favor of approval.

### viii.    The Risks of Maintaining Class Action Status Through Trial

As referenced above, proceeding in this litigation in the absence of settlement poses various risks such as having class certification denied, experts excluded, summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc*., No. C 06–3903 THE, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even assuming that Plaintiffs were able to survive summary judgment, they would face the risk of establishing liability at trial. It is virtually impossible to predict with any certainty which interpretation of the facts would be credited, and ultimately, accepted by the Court or the jury. The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. Moreover, even if Plaintiffs prevailed at trial, in light of the possible damage theories that could be presented by both sides, Class Members may be awarded significantly less than is offered to them under this Settlement. Regardless of outcome, Robinhood could also move to decertify any certified class, or appeal any decision in favor of Plaintiffs.  By settling, Plaintiffs and the Class avoid those risks, as well as the delays, costs, and risks of the appellate process.

### ix.    The Advanced Stage of Litigation and Completed Discovery Support the Settlement

In a class action setting, courts look for indications that the parties carefully investigated the claims before reaching a resolution, including propounding and reviewing discovery.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., MDL No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement."); *see also In re Portal Software Sec. Litig*., No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007). As discussed above, Class Counsel engaged in extensive

- 18 -

investigation, research, and analysis of the Settlement Class's claims, which resulted in the Court upholding the Consolidated Complaint in its entirety other than dismissing defendant Robinhood Markets, Inc.  ECF No. 95.  Class Counsel thereafter aggressively pursued discovery through multiple requests for production of documents, intensive meet and confers, and taking and defending twenty-four depositions.  Robinhood produced over 50,000 documents of fact-related material for review.  In addition, Class Counsel consulted with numerous consultants and experts, engaged in *Daubert* motions, and served subpoenas on several non-parties.  This discovery allowed Class Counsel to adequately evaluate the merits of Plaintiff's claims and Robinhood's defenses.

### x.   The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs, Inc*., 559 F. Supp. 2d at 1043 (citation omitted). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, as stated above and in Plaintiffs' previous motions, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. Joint Decl., ¶ 61.  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

### xi.   No Government Participant Was Present

To date, no governmental entity has intervened or voiced any objection to the Settlement.

### xii.   The Request for Attorneys' Fees, Expenses, and Service Awards is Fair and Reasonable

As set forth in the proposed Notice and accompanying Motion, Class Counsel are seeking attorneys' fees up to 30% of the Settlement Fund (i.e., $2,970,000).  As of June 30, 2022, Class Counsel and Executive Committee members report a lodestar of approximately $5,450,870 in hours incurred after consolidation.  Joint Decl. ¶ 48.  The lodestar represents a 0.54 multiplier.  This is well below the normal range awarded in class actions.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting multipliers of between 1.0 and 4.0 are "frequently awarded"); *Smith*

1   *v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan.

2   14, 2013).  Pursuant to the Settlement, any Fee and Expense Award to Class Counsel will be paid

3   from the Settlement Fund within five (5) days after entry of the Court's order providing for an award

4   of attorneys' fees and/or expenses.  *See* SA § 9.1.a.; *see also* Fed. R. Civ. P. 23(2)(c)(iii).

5        Class Counsel anticipate seeking reimbursement for out-of-pocket expenses up to

6   $1,102,432.84.  Class Counsel and Executive Committee members report $993,248.27 in expenses,

7   the bulk of which are expert witness fees, deposition costs, and ESI vendors.  Joint Decl. ¶ 55.  Class

8   Counsel anticipates up to $110,735.62 in additional unpaid invoices, mostly for the work to

9   determine the settlement payments and Plaintiffs' ESI vendor Scott E. Walster for his work to

10  determine the Settlement Payments.  *Id*.  The balance of the expenses include, among others, court

11  fees, service of process, mediation costs, online legal and factual research, minimal travel costs,

12  database expenses, and messenger, courier, and overnight mail expenses.  *See* Declaration of Steve

13  Lopez (filed concurrently with the fee and expense motion).

14       In addition, Class Counsel intend to seek a Service Payment of $2,500 for the fifteen Plaintiffs

15  in the Action.  SA § 9.2.  Service Awards "have long been approved in the Ninth Circuit."  *In re*

16  *Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *11 (N.D.

17  Cal. Mar. 17, 2021).  The proposed Service Awards requested here are reasonable. "Incentive awards

18  typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267

19  (N.D. Cal. 2015) (collecting cases).  Courts in this District have found that a $5,000 incentive award

20  is presumptively reasonable.  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal.

21  2015); *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21,

22  2016).  And, because the Settlement is not conditioned on the Court's approval of any Service

23  Award, the Settlement does not grant preferential treatment to Class Representatives or Plaintiffs.

24  SA § 9.3.  The Service Awards include Plaintiffs who are not part of the Settlement Class.  However,

25  their efforts were key to the Parties settling this case.  Several of these Plaintiffs took part in

26  depositions.  Joint Decl. ¶ 19.  All participated in responding to discovery requests from Robinhood

27  and document production.  *Id*.  Plaintiffs' interests do not conflict with or diverge from the interests

28  of the Settlement Class, and thus the Court should determine the request is fair.  *Radcliffe v. Experian*

*Info. Solutions, Inc.*, 715 F.3d 1157, 1161 (9th Cir. 2013).

### xiii.   *Cy Pres* Payments are Premature and Can Be Deferred

Based on the manner in which automatic payments will be made, the Parties do not anticipate substantial residual funds remaining in the otherwise non-reversionary Class Settlement Amount.  In the event residual funds do remain after payment of Settlement Payments to Settlement Class Members, Settlement Administrative Expenses, Taxes, Fee and Expense Award, and Service Payments, the settlement provides that they be distributed to the Non-Profit *Cy Pres* Recipients.  SA § 2.3(g).  While Plaintiffs originally proposed the Howard University School of Law Investor Justice and Education Clinic ("IJEC") as the Non-Profit *Cy Pres* Recipient, per the Court's request at preliminary approval, Plaintiffs can table whether a *cy pres* distribution will be necessary in connection with the post-settlement accounting reports once it is determined how much, if any, residual funds are left.  Accordingly, Plaintiffs will seek leave to make any *cy pres* distributions at a later date, if necessary.

## V.   **CONCLUSION**

For the reasons discussed herein, Plaintiffs respectfully request the Court certify a Class for settlement purposes, and finally approve the proposed Settlement and Plan of Allocation.


DATED:  March 27, 2023                          Respectfully submitted,

                                                **COTCHETT, PITRE & MCCARTHY,
                                                LLP**

                                                */s/ Anne Marie Murphy*
                                                Anne Marie Murphy (SBN 202540)
                                                Mark C. Molumphy (SBN 168009)
                                                Tyson C. Redenbarger (SBN 294424)
                                                San Francisco Airport Office Center
                                                840 Malcolm Road, Suite 200
                                                Burlingame, CA 94010
                                                Telephone: (650) 697-6000
                                                Facsimile: (650) 697-0577
                                                *amurphy@cpmlegal.com*
                                                *mmolumphy@cpmlegal.com*
                                                *tredenbarger@cpmlegal.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**

*/s/ Matthew B. George*
Matthew B. George (SBN 239322)
Kathleen A. Herkenhoff (SBN 168562)
Laurence D. King (SBN 206423)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*mgeorge@kaplanfox.com*
*kherkenhoff@kaplanfox.com*
*lking@kaplanfox.com*

*Interim Co-Lead Counsel for Plaintiffs*

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement; Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding signatures, I, Matthew B. George, attest that concurrence in the filing of this document has been obtained.

DATED: March 27. 2023

*/s/ Matthew B. George*
Matthew B. George